FILED 24 APR 16 11:34 USDC-ORM

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**MEDFORD DIVISION**

| | |
|---|---|
| In re the Matter of J.P. and E.P.: | Civil Action No. 1:24-CV-00648-AA |
| ARNAUD PARIS, | |
|           **Petitioner,** | **PETITION FOR RETURN OF CHILDREN UNDER THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION AND REQUEST FOR SHOW CAUSE ORDER** |
| and | |
| HEIDI MARIE BROWN, | |
|           **Respondent.** | |

COMES NOW THE PETITIONER, Arnaud Paris, and makes the following Petition for Return of Children AND Request for Show Cause Order.

## I.    <u>INTRODUCTION</u>

1.    This petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention"), and the International Child Abduction Remedies Act

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted* in 51 Fed. Reg. 10493 (1986)

**PETITION FOR RETURN OF CHILDREN –**
**Page 1 of 14**
Case No. _____

(hereinafter "ICARA").[2]   The Convention came into effect in both the United States of America and France on December 1, 1990.

2.      The objects of the Convention are as follows: (1) to secure the immediate return of a child wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.[3]

## II.    JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a)[4] and because this case involves the removal and retention of children under the age of sixteen from their habitual residence of France to the United States of America.[5]

4.      Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the children and Respondent reside in this judicial

---

[2]   Hague Conv. Art. 1; 22 U.S.C. § 9001 *et seq.* (1995).   ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances.   *See Distler v. Distler*, 26 F.Supp. 2d 723, 727 (D.N.J. 1998).

[3]   As has been stated by other courts addressing Hague cases; the Convention therefore authorized a federal district court to determine the merits of the abduction claim but does not allow it to consider the merits of any underlying custody dispute.   *Morris v. Morris*, 55 F. Supp 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no power to pass on the merits of Custody"); *see also Currier v. Currier*, 845 F. Supp. 916 (D. N.H. 1994) *citing* Friedrich v. Friedrich, 983 F.2d 1396, 1399 (6th Cir. 1993); *Meredith v. Meredith*, 759 F. Supp. 1432 (D. Ariz. 1991).   This court's role is not to make traditional custody decisions but to determine in what jurisdiction the child should be physically located so that the proper jurisdiction can make those custody decisions.   *Loos v. Manuel*, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4]   A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute.   The Hague Convention is intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted).

[5]   *Toren v. Toren*, 191 F. 3d 23 (1999).

**PETITION FOR RETURN OF CHILDREN –**
**Page 2 of 14**
Case No. _____

district.

### III.    STATUS OF PETITIONER AND CHILDREN

5.      The Petitioner, Arnaud Paris ("Paris") was born in France and is a French and American citizen.   The Respondent, Heidi Marie Brown ("Brown") was born in the United States and is an American citizen.   Paris and Brown are unmarried and began cohabitating in June 2013.   Paris and Brown are the parents of E.P. and J.P.   E.P. was born in the United States.   She is a French citizen and American citizen.   J.P. was born in the United States. She is a French citizen and American citizen.

6.      E.P. and J.P. are both now seven (9) years old.   The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or her habitual residence[6] in breach of rights of custody of a petitioner, which the petitioner had

---

[6] Neither the Hague Convention nor ICARA defines the term "habitual residence." *Mozes v. Mozes,* 239 F.3d 1067, 1071 (9th Cir. 2001).   And that omission was intentional.   *Holder v. Holder,* 392 F.3d 1009, 1015 (9th Cir. 2004).   "The Convention's explanatory report confirms what the Convention's text suggests. The report informs that habitual residence is a concept 'well-established ... in the Hague Conference.' The report refers to a child's habitual residence in fact-focused terms: 'the family and social environment in which [the child's] life has developed.'   What makes a child's residence 'habitual' is therefore 'some degree of integration by the child in a social and family environment.'   No single fact, however, is dispositive across all cases. ... The inquiry into a child's habitual residence is a fact-intensive determination that cannot be reduced to a predetermined formula and necessarily varies with the circumstances of each case.   ...The treaty's negotiation and drafting history corroborates that a child's habitual residence depends on the specific circumstances of the particular case.   The Convention's explanatory report states that the Hague Conference regarded habitual residence as 'a question of pure fact, differing in that respect from domicile.'   The Conference deliberately chose 'habitual residence' for its factual character, making it the foundation for the Convention's return remedy in lieu of formal legal concepts like domicile and nationality. That choice is instructive. The signatory nations sought to afford courts charged with determining a child's habitual residence 'maximum flexibility' to respond to the particular circumstances of each case. The aim: to ensure that custody is adjudicated in what is presumptively the most appropriate forum—the country where the child is at home." *Monasky v. Taglieri,* 589 U.S. ___, 140 S.Ct. 719, 726-28, 206 L.Ed.2d 9 (2020).

**PETITION FOR RETURN OF CHILDREN –**
**Page 3 of 14**
Case No. _____

been exercising at the time of the wrongful removal[7] or wrongful retention[8] of the child, or would have been exercising if the removal had not occurred.

7.      Brown was spending her visitation time with the kids in France per the French judgment during the spring vacation from April 5th to April 13th. Brown came to France to see the girls with her mother, Margareth Brown Olson, and she had planned to spend their vacation time with the girls during that week in the South of France at the Holiday Inn in the city of Perpignan near the Spanish boarder.

8.      The security footage from the hotel shows that on Monday April 8th, Brown, her mother and the children left the Holiday Inn at 9.30am leaving behind the girls' luggage in the bedrooms to make it look like they were still staying there and started a fugitive-like escape out of Europe through Spain which put Brown and her mother in full violation of the restraining order that required that the children stay in France during her visitation time, which is a crime in the French Criminal Code.

9.      It is believed that they went through an illegal way to then leave Europe

---

[7] "Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention." *Lops* at 935; "[t]he removal of a child from the country of his or her habitual residence is 'wrongful' under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal." *Friedrich v. Friedrich*, 78 F.3d 1060, 1064 (6th Cir. 1996); see *Prevot v. Prevot*, 59 F.3d 556 (6th Cir. 1995); Convention, art. 3.

[8] "Wrongful retention" occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention. Convention, art. 3; *Feder*, 63 F.3d at 225; *Wanninger v. Wanninger*, 850 F. Supp. 78, 80-81 (D. Mass. 1994).

**PETITION FOR RETURN OF CHILDREN –**
**Page 4 of 14**
Case No. _____

avoiding passport control of the children that would have normally resulted in an alert that the children were not to leave France nor Europe under the French restraining order. Their escape route most likely was to reach Morocco by boat from Spain and from there the boarded a plane to the US avoiding the European passport alert system.

10.    In order, to prevent the children from raising an alert during that escape, Brown prevented any communication to happen with Paris since Saturday April 6th and even left behind all the smart devices including the apple watch from the children (which was their only direct line of communication with their father) and their luggage in the hotel room to make sure they couldn't be located during their escape from France and Europe.

11.    On Thursday April 11th Brown failed to participate to an online French mediation with Paris and in the afternoon, she called the Holiday Inn in Perpignan to indicate them that they wouldn't finish their stay and that they were returning to the US and that the children luggage were to be shipped back directly to them in the US.

12.    Brown literally took her 78-year old mother and her twin 9-year old daughters on a fugitive run from Europe actively trying to avoid border controls and most likely crossing the European boarder through a contraband point. This entire plan was craftly designed and most likely required the help of several accomplices which shows the level of preparation that Brown must have put into her illegal and criminal escape from Europe and kidnapping of the children.

13.    On Saturday April 13th Paris received an email from Brown informing him that

she had taken the kids back to the US confirming that she had committed a full-fledged

kidnapping with a criminal illegal escape plan in total violation of the restraining order that

she had told a French judge the week before in Paris she would never dare to violate...

14.     E.P. and J.P were habitually residing in France, within the meaning of Article 3

of the Convention, since August 2019 until their removal from France on or about April 08th,

2024. They had spent a temporary school year in Oregon from July 2022 to July 2023 per an

agreement made between the parties on July 19th 2022 in France.

15.     Paris has requested the return of E.P. and J.P. to France pursuant to his

Application for the Return of Abducted Children, a copy of which is attached hereto as

***Exhibit 04***.   The Application for Return was filed with the French Central Authority on

April 15th, 2024.

16.     E.P. and J.P. will be sixteen (16) years of age in 2031.   At the time

immediately before the wrongful removal of the children from France and wrongful retention

of the children in the US, both had habitually resided in France within the meaning of Article

3 of the Convention. They were living in France under the French judgment rendered by the

Paris Family Court on April 21st 2023 giving full custody to Father in France and visitation

time to Mother each vacation. They were also under a restraining order decided by the

judgment of August 25th 2023 in the Paris court preventing that Brown takes them out France

as she had clearly indicated that she wouldn't respect the French judgment from April 21st

2023, a copy of which is attached hereto as ***Exhibit 02.***

17.    Both children attended preschool in Paris, France commencing the 2017-2018 school year as a result of the parties' many months' long stays in Paris prior to moving permanently to France. Since September 2019 both children were fully attending school in Paris until the summer of 2022. After their temporary 2022-2023 school year in Oregon both children had returned to their respective French schools in Paris in September 2023 and they were kidnapped from France by Brown in the middle of their school year 2023-2024 that doesn't end till July 6th 2024, sacrificing literally their entire school year if they can't return immediately to France.

18.    Both were completely settled and integrated into France's life and culture. Both are medically insured in France and regularly seen by their pediatrician, orthodentist and dentist. At the time of Paris' application to the Central Authority of France, E.P. and J.P. are believed to be located in the Contracting State of the United States based on Brown's last communication to Paris from April 13th 2024 (a copy of which is attached hereto as ***Exhibit 03***.)

19.    The authorities are actively trying to locate them and the European police authorities are coordinating themselves to try to identify where and how Brown escaped France and Europe illegally with her 78-year old mother and the children.

20.    The children were on the European passport alert program and if Brown had tried to cross any boarder from Europe she would have triggered an alert. Which means that Brown deliberately and intentionally crossed a border illegally at a non-authorized unsafe

passage point and involved her own mother and the children in this crazy escape with her, possibly risking everybody's life.

21.    Brown isn't responding to any communication since and has refused to establish communication between Paris and children while he has been extremely worried about their state of mind and safety since he found out Brown took them on this illegal and criminal escape run out from France and Europe to the US.

22.    It was Paris' birthday on April 14th the day after he received the email from Brown in which she informed him of her kidnapping of their children and Paris didn't receive any communication from his children on the day of his birthday...

23.    . It is to be noted that during the visitation of Brown with the children in Paris during the Christmas break early January 2024, Brown had taken them to the US Embassy to have new US passports made for them. This started to create some strong concern in the children's mind about what was the purpose of these US passports. Brown assured them, along with Paris' lawyer and the French authorities, that she wasn't going to use these passports to take the children away from France illegally in full violation of the French restraining order and that it was simply for having a form of identification.

24.    The children shared with Paris and the AuPair who helps taking care of them this year that they had been making regular nightmares since February about their mother kidnapping them to the US using this newly made passports and taking them by force away from France...

**PETITION FOR RETURN OF CHILDREN –**
**Page 8 of 14**
Case No. _____

## IV.    REMOVAL AND WRONGFUL RETENTION OF CHILDREN BY RESPONDENT

25.    Paris has full custody under French judgment of April 21st 2023, a copy of which is attached hereto as ***Exhibit 01***.

26.    The illegal removal from France in complete violation of the French restraining order to not take the children out of France that Brown was fully aware of and assured a French judge in the Paris court 6 days before she would not violate is therefore in violation of the French Civil Code the French Criminal Code and is a wrongful removal within the meaning of Articles 3 and 5 of the Convention. Brown is now believed to be wrongfully retaining the children somewhere in the United States of America, but the authorities are still trying to determine her exact location with the children.

27.    It is to be noted that a violation of the French restraining order preventing any parent from removing the children from the French territory is a crime per the French Criminal Code. Which Brown did knowingly, even involving her own mother, and she also did a "child subtraction" (kidnapping in the French Criminal Code) in violation of the French Judgment from April 21st 2023, which is another crime aggravated by the fact that we still don't know where the children are to this day.

## V.    ATTORNEYS FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND 22 U.S.C. § 9007

28.    Paris is incurring substantial expenses as a result of Brown's wrongful removal

and wrongful retention of E.P. and J.P.   Paris will submit a copy of all expenditures as soon

as practicable and possible and will amend these costs from time to time, according to proof

and in light of further expenditure required because of this wrongful removal and retention.

29.     Paris respectfully requests that this Court award all legal costs and fees

incurred to date as required by 22 U.S.C. § 9007, reserving jurisdiction over further expenses.

## VI.   DECLARATION PURSUANT TO UNIFORM CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT, ORS § 109.767

30.     The details regarding E.P. and J.P. that are required to be provided pursuant to

ORS § 109.767 are as follows:

31.     The present forced location of E.P. and J.P. is believed to be Ashland, Oregon.

32.     Since birth, E.P. and J.P. have lived with Paris and Brown in Oregon,

California, and France.

33.     Paris has filed proceedings in France before Mother filed also in Oregon for a

custodial determination of E.P. and J.P.   Brown has been personally served with those

proceedings and was also served with the French judgment of April 21st, 2023 granting

custody of the children to Father in France that was also obtained first before any custodial

determination was obtained in Oregon. It was also registered in Oregon and was rejected

without due process. Mother appealed of that Judgment in France.

34.     Paris obtained a second French Judgment on August 25th 2023 establishing a

restraining order to prevent the children from leaving France considering that Mother was a

high risk of kidnapping the children to the US, and Mother was also notified about this

Judgment, she appealed it. Father registered the French Judgment from August 25th 2023 in Oregon as well and Mother was served with it.

35.    On December 28th 2023, Brown obtained a judgment in the Jackson County court granting her custody of the children in Oregon in which Paris wasn't allowed to participate and defend himself, it was therefore obtained without due process. This judgment is therefore not valid in any other court including in the State of Oregon because it was obtained without due process and a French judgment had already been deciding about custody of the children in France.

36.    Paris does not know of any person or institution not a party to the proceedings who has physical custody of E.P. and J.P. or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with E.P. and J.P.

## VII.    PROVISIONAL REMEDIES[9]

37.    In the event Paris is unable to locate Brown for service himself, Paris requests that the Court issue a show cause order and direct that the order be served immediately by United States Marshals on Brown and that she be brought before this court forthwith.[10] Section 5(b) (Provisional Remedies) of ICARA provides, *inter alia*, that, in a proceeding under Section 4(b) for the return of a child, "No court exercising Jurisdiction … may … order

---

[9] This Court "[i]n furtherance of the objectives…the Convention…may take or cause to be taken measures under Federal or State law,   as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition" 22 U.S.C. § 9004.

[10] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the Convention.   See *Fawcett v. McRoberts*, 168 F. Supp.2d 595, 597 (W.D. Va. 2001).

**PETITION FOR RETURN OF CHILDREN –**
**Page 11 of 14**
Case No. _____

a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. § 9004.   In this case, the State law referred to in Section 5(b) is that of Oregon.   In Oregon, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes.   ORS § 109.171 *et seq* (and see specifically ORS § 109.714).   Oregon law addresses the appearance of the parties and the child in such cases under ORS § 109.771.   That section authorizes this Court to order the appearance of the child and custodian or custodians *together*.   *Id.*   This Court therefore has the authority to order the immediate appearance of Brown either with or without the children.

38.    Paris requests, for the well-being of E.P. and J.P., that he be given immediate access to the children pending further hearing in this Court.   He remains ready and anxious to exercise continuous unsupervised communication with them prior to the conclusion of this matter and asks that they each be given an apple watch with parental control under Father's supervision to ensure that Mother isn't interfering with that communication and that a proper cell plan be activated by Mother on each of these watches (limited to communication only with Father).

39.    Pending further hearing in this Court, it is requested that this Court issue an immediate order prohibiting the removal of E.P. and J.P. from the jurisdiction of this Court, taking into safe-keeping by the Clerk all of the children's and Brown's travel documents and

setting an expedited hearing on the Petition for Return of E.P. and J.P. to France.[11]

## VIII.  RELIEF REQUESTED

40.     **WHEREFORE,** Paris respectfully requests the following relief:

a.      an Order directing the prompt entry of E.P.'s and J.P.'s names into the National Police Computer System (N.C.I.C.) missing person section;

b.      an Order directing the prompt return of E.P. and J.P. to their habitual residence of France;

c.      the issuance of an Order directing that Brown be brought into this Court by any United States Marshal, federal officer or police officer;

d.      the issuance of an immediate Order prohibiting the removal of E.P. and J.P. from the jurisdiction of this Court and requiring Brown to deposit E.P.'s and J.P.'s and Brown's travel documents (e.g. passports) with the Clerk of the Court;

e.      an Order commanding Brown to appear in this Court to show cause why E.P. and J.P. have been kept from their father in contravention of French law;

f.      an Order directing Brown to pay Paris' legal costs and fees; and

g.      any such further relief as justice and its cause may require.

## IX.     NOTICE OF HEARING

41.     Pursuant to 22 U.S.C. § 9003(c), Brown will be given notice of any hearing in

---

[11] Such a Petition may also be treated as an application for a Writ of Habeas Corpus itself.  *Zajaczkowski v. Zajaczkowski*, 932 F.Supp.128, 132 (D.Md. 1996) ("[T]he Court will treat the [Convention] petition as an application for a writ of habeas corpus…pursuant to 28 U.S.C.A. § 2243").; see also In re McCullough, 4 F. Supp. 2d 411 (1998).

**PETITION FOR RETURN OF CHILDREN –**
**Page 13 of 14**
Case No. _____

accordance with RCW § 26.27.081.[12]


DATED this 15th day of April, 2024, in Paris, France

Submitted by:
Arnaud PARIS, Pro Per

13 rue Ferdinand Duval
75004 Paris, FRANCE
+33.6.88.28.36.41


## VERIFICATION

I, Arnaud Paris, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNED AND DATED this 15th day of April, 2024, in Paris, France.


Arnaud Paris

---

[12] The Convention itself does not specify any specific notice requirements.  ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings.  22 U.S.C. § 9003(c).   In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings.  *Klam v. Klam*, 797 F. Supp. 202, 205 (E.D.N.Y. 1992).  The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made.  The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice.   In Oregon, the relevant statute is found in this State's UCCJEA in ORS § 109.724.  The Notice section provides, in pertinent part, that notice and an opportunity to be heard shall be given in a manner reasonably calculated to give actual notice. *Id.*

**PETITION FOR RETURN OF CHILDREN –**
**Page 14 of 14**
Case No. _____