# EXHIBIT 01



**TRIBUNAL
JUDICIAIRE
DE PARIS**



POLE FAMILLE

AFFAIRES
FAMILIALES

JAF section 2 cab 5

**JUGEMENT
rendu le 21 avril 2023**

N° RG 22/38514 - N°
Portalis
352J-W-B7G-CYBZ3

**Article 1179 du Code de procédure civile**

N° MINUTE : 1

### DEMANDEUR

**Monsieur Arnaud PARIS**
13 RUE FERDINAND DUVAL
75004 PARIS

Comparant, assisté par Me Audrey GADOT, Avocat au barreau de Nanterre,
#530 et Me Terence RICHOUX, Avocat, #E0780

### DÉFENDERESSE

**Madame Heidi BROWN**
665 LEONARD STREET
ASHLAND - OREGON - ETATS UNIS

Représentée par Me Clémence BRASSENS - BAZALGETTE, Avocat, #G0276

### LE JUGE AUX AFFAIRES FAMILIALES

Karima BRAHIMI

### LE GREFFIER

Charlotte PERROT

**Page 1**

VU NE VARIETUR
Traduction conforme à
l'original en langue ..FR..
N° 2106

EXHIBIT 01 - PAGE 1 OF 25



## EXPOSÉ DU LITIGE

Des relations de Monsieur Arnaud PARIS et Madame Heidi BROWN sont issus deux enfants dont la filiation est légalement établie à l'égard des deux parents :
- Juliette PARIS née le 15 janvier 2015 à Ashland (Etat-Unis),
- Eva PARIS née le 15 janvier 2015 à Ashland (Etat-Unis).

Monsieur PARIS a déposé une requête devant le Juge aux Affaires Familiales du Tribunal Judiciaire de Paris, enregistrée au Greffe des affaires familiales le 06 octobre 2022.

Par ordonnance du 07 octobre 2022, Monsieur PARIS a été autorisé à assigner Madame BROWN à l'audience du 20 janvier 2023.

Par acte d'huissier du 10 octobre 2022, Monsieur PARIS a assigné Madame BROWN à l'audience du 20 janvier 2023.

A l'audience du 20 janvier 2023, Monsieur PARIS était présent et assisté par son conseil ; Madame BROWN était absente mais représentée par son conseil. Le conseil de Madame BROWN a sollicité le renvoi de l'affaire, le conseil de Monsieur PARIS ne s'est pas opposé à cette demande. Compte tenu de l'accord des parties, l'affaire a été renvoyée à l'audience du 31 mars 2023.

A l'audience du 31 mars 2023, Monsieur PARIS était présent et assisté par son conseil ; Madame BROWN était absente mais représentée par son conseil. La nouvelle demande de renvoi formulée par le conseil de Madame BROWN a été rejetée comme non justifiée.

Dans ses conclusions écrites soutenues à l'oral, auxquelles il convient de renvoyer, Monsieur PARIS sollicite :
- l'exercice conjoint de l'autorité parentale,
- de fixer la résidence des enfants à son domicile à Paris,
- d'octroyer à la mère des droits de visite et d'hébergement pendant les vacances scolaires, à charge pour elle de supporter les frais de trajets des enfants,
- de fixer le montant de la contribution de la mère à l'entretien et à l'éducation des enfants à la somme de 1000 euros par mois,
- de dire que les frais exceptionnels de santé non remboursés et les frais extrascolaires décidés en commun seront pris en charge par moitié par les parents,
- de condamner Madame BROWN aux dépens et à lui payer la somme de 3600 euros en application de l'article 700 du code de procédure civile
- de condamner Madame BROWN aux dépens conformément aux dispositions en application de l'article 699 du code de procédure civile..

Dans ses conclusions écrites soutenues à l'oral, auxquelles il convient de renvoyer, Madame BROWN demande :
* In limine mitis :
- de se déclarer incompétent pour connaître du présent litige au profit du tribunal de circuit de l'état de l'Oregon,
- A titre subsidiaire, de considérer qu'il existe une situation de litispendance et de se dessaisir au profit du tribunal de circuit de l'état de l'Oregon,
- A titre extrêmement subsidiaire de renvoyer l'affaire,
- de condamner Monsieur PARIS à lui payer la somme de 3000 euros en application de l'article 700 du code de procédure civile.

**Page 2**

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

EXHIBIT 01 - PAGE 2 OF 25



\* Au fond :
    - de fixer la résidence des enfants au domicile maternel aux Etats-Unis,
    - à défaut de maintenir la résidence alternée des enfants aux domiciles parentaux aux Etats-Unis,
    - d'ordonner le partage des frais des enfants.

Conformément aux dispositions de l'article 1072 du Code de procédure civile, vérification a été faite de l'existence ou non d'une procédure d'assistance éducative ouverte à l'égard des enfants mineurs.

Aucune demande d'audition des mineurs n'a été faite conformément à l'article 388-1 du Code civil.

La décision a été mise en délibéré au 21 avril 2023.

### MOTIFS DE LA DECISION

#### Sur la compétence du juge français et la loi applicable

Les éléments d'extranéité du dossier nécessitent de s'interroger sur la compétence internationale du juge français et sur la loi applicable.

#### Sur la compétence

##### 1°) Sur la responsabilité parentale :

*En application de l'article 7 du Règlement (UE) 2019/1111 du Conseil du 25 juin 2019, dit "Bruxelles II ter" Les juridictions d'un État membre sont compétentes en matière de responsabilité parentale à l'égard d'un enfant qui réside habituellement dans cet État membre au moment où la juridiction est saisie.*

*Tout d'abord, il convient de rappeler que le règlement Bruxelles II ter ne contient aucune disposition concernant son champ d'application dans l'espace. Les règles de compétence déterminées par le Règlement (UE) 2019/1111 du Conseil du 25 juin 2019 s'applique aux rapports entre juridictions relevant de plusieurs États membres, mais également aux rapports entre une juridiction d'un État membre et une juridiction d'un État tiers.*

*Ensuite, il est nécessaire de déterminer où se situe la résidence des enfants afin de déterminer si le juge français est compétent.*

*La résidence habituelle de l'enfant correspond au lieu où se situe le centre de la vie de l'enfant, lequel doit être déterminé au moment de l'introduction de la demande de responsabilité parentale sur la base d'un faisceau d'indices.*
*Ainsi, la détermination du lieu de la résidence habituelle d'un enfant doit se faire de façon tout à fait concrète au regard des circonstances précises de l'espèce : conditions et raisons du séjour de l'enfant, durée du séjour, âge de l'enfant, scolarisation, commune intention des parents de transférer cette résidence ainsi que les décisions prises en vue de l'intégration de l'enfant etc...*

*Il convient donc de rechercher où se situe l'intégration de l'enfant dans un environnement social et familial devant permettre de déterminer une proximité suffisante et non temporaire entre l'enfant et son milieu de vie.*

Page 3

VU NE VARIETUR
Traduction conforme à
l'original en langue  FR
N° 2106

EXHIBIT 01 - PAGE 3 OF 25



En l'espèce, au regard des pièces du dossier et des débats, il apparaît que depuis la naissance des deux filles, le couple et les enfants ont résidé alternativement en France et aux Etats-Unis ; que depuis la rentrée scolaire 2019, le couple et les enfants se sont installés en France et les deux filles ont été scolarisées en France, que courant avril 2022 des difficultés relationnelles sont apparues dans le couple et que les deux parents ne se sont plus accordés sur le lieu de résidence de la famille, Monsieur PARIS souhaitant rester en France et Madame BROWN souhaitant un retour aux Etats-Unis ; que néanmoins les parents se sont accordés le 19 juillet 2022 pour un départ de la famille aux Etats-Unis pour l'année scolaire 2022-2023, les deux filles du couple étant arrivées sur le territoire américain le 29 juillet 2022.

Ainsi, lors de la saisine de la juridiction française, soit le 06 octobre 2022, Juliette et Eva résidaient sur le territoire américain depuis seulement 2 mois ; auparavant, elles résidaient et étaient scolarisées en France pendant 3 ans pays dans lequel elle étaient socialement intégrées ; si les parents se sont accordés pour un retour aux Etats-Unis, cet accord concernait uniquement l'année scolaire 2022/2023 ainsi, il ne peut se déduire une commune intention des parents de transférer la résidence des enfants de manière pérenne aux États-Unis.

Par conséquent, compte tenu de ces éléments, il apparaît qu'au jour de la saisine de la juridiction française soit le 06 octobre 2022, Juliette et Eva avaient leur résidence habituelle en France.

Par conséquent la juge français est compétent pour statuer sur les demandes relatives à la responsabilité parentale.

### 2°) Sur les obligations alimentaires :

*L'article 3 b) du règlement (CE) n°4/2009 du 18 décembre 2008 relatif à la compétence, la loi applicable, la reconnaissance et l'exécution des décisions et la coopération en matière d'obligations alimentaires dispose que sont compétentes pour statuer en matière d'obligations alimentaires dans les États membres la juridiction du lieu où le créancier a sa résidence habituelle.*

En l'espèce, le créancier de l'obligation alimentaire ayant sa résidence habituelle en France, le juge français est compétent pour statuer sur la demande d'obligation alimentaire.

### Sur la loi applicable

### 1°) Sur la responsabilité parentale :

*Aux termes de l'article 15 de la convention de La Haye du 19 octobre 1996 relative à la compétence, la loi applicable, la reconnaissance et l'exécution des décisions en matière de protection des enfants, le juge compétent pour statuer sur la responsabilité parentale applique sa loi.*

En l'espèce, la compétence du juge français en matière de responsabilité parentale conduit à appliquer la loi française.

VU NE VARIETUR
Traduction conforme à
l'original en langue **FR**
N° **2106**

**Page 4**

EXHIBIT 01 - PAGE 4 OF 25



*2°) Sur les obligations alimentaires :*

*Aux termes de l'article 15 du règlement (CE) du Conseil n° 4/2009 du 18 décembre 2008, la loi applicable en matières d'obligations alimentaires est déterminée conformément au Protocole de La Haye du 23 novembre 2007 pour les États membres liés par cet instrument.*

*Aux termes de l'article 3 du Protocole de La Haye du 23 novembre 2007, sauf disposition contraire du Protocole, la loi de l'État de la résidence habituelle du créancier régit les obligations alimentaires ; en cas de changement de la résidence habituelle du créancier, la loi de l'État de la nouvelle résidence habituelle s'applique à partir du moment où le changement est survenu.*

En l'espèce, le créancier résidant en France, il convient de faire application de la loi française.

### Sur l'exception de litispendance

*Aux termes de l'article 100 du code de procédure civile, si un même litige est pendant devant deux juridictions de même degré également compétentes pour en connaître, la juridiction saisie en second lieu doit se dessaisir au profit de l'autre si l'une des parties le demande.*

Madame BROWN soulève l'irrecevabilité de la requête déposée par Monsieur PARIS fondée sur une exception de litispendance. Elle soulève la litispendance sur les questions de responsabilité parentale entre l'instance initiée devant le tribunal judiciaire de Paris par Monsieur PARIS et celle initiée par Madame BROWN aux Etats -Unis.

A ce titre, elle affirme que la juridiction française a été saisie en second et doit se dessaisir du litige au profit du juge américain.

En l'espèce, il ressort des pièces du dossier que Monsieur PARIS a saisi le juge aux affaires familiales de Paris le 06 octobre 2022 et que Madame BROWN a saisi le tribunal de circuit de l'Etat de l'Oregon le 07 octobre 2022.

Il n'est pas contesté par les parties qu'une instance à l'étranger est déjà engagée ou pendante et qu'il y a identité des parties, de litige et d'objet.

S'agissant du juge saisi en premier, il convient de rappeler que la saisine a lieu à la date à laquelle l'acte introductif d'instance ou un acte équivalent est déposé auprès de la juridiction.
En l'espèce, la requête de Monsieur PARIS a été déposée au greffe des affaires familiales du tribunal judiciaire de Paris le 06 octobre 2022.
Par conséquent, le juge français a été saisi en premier avant la saisine de la juridiction américaine le 07 octobre 2022.

Par conséquent, l'exception de litispendance soulevée par Madame BROWN sera rejetée.

VU NE VARIETUR
Traduction conforme à
l'original en langue. FR
N° 2106

**Page 5**

EXHIBIT 01 - PAGE 5 OF 25



## Sur l'exercice de l'autorité parentale

*Il résulte des articles 372 et suivants du Code civil que les père et mère exercent en commun l'autorité parentale, la séparation des parents étant sans incidence sur les règles de dévolution de l'exercice de cette autorité ; le juge peut toutefois confier l'exercice de l'autorité parentale à l'un des deux parents si l'intérêt de l'enfant le commande.*

*Aux termes de l'article 371-1 du Code civil, l'autorité parentale est un ensemble de droits et de devoirs ayant pour finalité l'intérêt de l'enfant. Elle appartient aux parents jusqu'à la majorité ou l'émancipation de l'enfant pour le protéger dans sa sécurité, sa santé et sa moralité, pour assurer son éducation et permettre son développement, dans le respect dû à sa personne. L'exercice en commun de l'autorité parentale implique le devoir de prendre ensemble, dans l'intérêt des enfants, toute décision relative notamment à leur éducation, leur scolarité, leur religion, leur moralité et leur sécurité et plus généralement le devoir d'aviser en temps utile l'autre parent de toute décision ou événement pouvant avoir une répercussion dans la vie des enfants et de nature à engager leur avenir.*

*Il sera rappelé que pour atteindre cet objectif, les parents doivent se respecter mutuellement et accomplir chacun les efforts nécessaires pour traduire leur responsabilité de façon positive dans la vie de leur enfant, notamment en respectant la place de l'autre parent et en maintenant un nécessaire dialogue entre eux.*

*La loi du 8 janvier 1993, puis la loi du 4 mars 2002, reprenant l'esprit de la Convention de New-York sur les droits de l'enfant du 20 novembre 1989, entrée en vigueur en France le 2 septembre 1990, ont posé le principe de l'exercice en commun de l'autorité parentale, l'exercice à titre exclusif par l'un des deux parents devant demeurer une exception.*

*Il résulte, par ailleurs, des dispositions de l'article 373-2-1 du Code Civil que si l'intérêt de l'enfant le commande, le juge peut confier l'exercice de l'autorité parentale à l'un des deux parents.*

*Il en est notamment ainsi lorsqu'en raison de l'impéritie de l'un des parents, de son désintérêt, de son impossibilité à le joindre ou de son obstruction systématique, l'intérêt de l'enfant à ne pas voir différées ou empêchées les décisions importantes qui le concernent, commande de confier à l'autre parent l'exercice exclusif de l'autorité parentale.*

En l'espèce, aucun élément ne justifie de remettre en cause l'exercice en commun de l'autorité parentale.

## Sur la résidence des enfants mineurs et les droits de visite et d'hébergement des parents à leur égard

*Il résulte des dispositions de l'article 373-2-6 du Code civil que le juge doit veiller spécialement à la sauvegarde des intérêts des enfants mineurs.*

*Pour déterminer le lieu de résidence de ces derniers en cas de séparation des parents, il convient de rechercher l'aptitude de chacun des parents à assumer ses devoirs et respecter les droits de l'autre, à assurer aux enfants un cadre de vie stable et sécurisant, à préserver la permanence de leurs références et de leurs liens sociaux, à favoriser leur épanouissement.*

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

Page 6

EXHIBIT 01 - PAGE 6 OF 25



*L'article 373-2-11 du Code civil dispose que lorsqu'il se prononce sur les modalités d'exercice de l'autorité parentale, le juge prend notamment en considération :*
*1° La pratique que les parents avaient précédemment suivie ou les accords qu'ils avaient pu antérieurement conclure;*
*2° Les sentiments exprimés par l'enfant mineur dans les conditions prévues à l'article 388-1;*
*3° L'aptitude de chacun des parents à assumer ses devoirs et respecter les droits de l'autre;*
*4° Le résultat des expertises éventuellement effectuées, tenant compte notamment de l'âge de l'enfant;*
*5° Les renseignements recueillis dans les éventuelles enquêtes sociales prévues à l'article 373-2-12;*
*6° Les pressions ou violences, à caractère physique ou psychologiques, exercées par l'un des parents sur la personne de l'autre.*

*Il ressort des articles 373-2 et suivants du Code civil qu'en cas de séparation des parents, chacun des père et mère doit maintenir des relations personnelles avec l'enfant et respecter les liens de celui-ci avec l'autre parent. L'exercice du droit de visite et d'hébergement ne peut être refusé à l'autre parent que pour des motifs graves. Lorsque la continuité et l'effectivité des liens de l'enfant avec ce parent l'exigent, le Juge aux Affaires Familiales peut organiser le droit de visite dans un espace de rencontre désigné à cet effet.*

En l'espèce, il apparait que Juliette et Eva ont résidé en France depuis l'année scolaire 2019/2020 soit 3 ans et ont été scolarisées à Paris depuis cette époque soit depuis l'âge de 4 ans ; qu'elles sont donc pleinement intégrées en France depuis l'âge de 4 ans ; qu'elles ont développé en France leurs habitudes de vie et leurs attaches sociales (scolarité, amis, activités extrascolaires) ; qu'il est justifié qu'elles ne sont pas radiées de la liste de leurs écoles respectives et qu'une place leur est gardée en cas de retour en France ; que les pièces transmises ne permettent aucunement de constater un accord des parents sur la résidence des enfants aux Etats-Unis à titre pérenne, étant rappelé que le couple rencontrait des difficultés relationnelles à compter d'avril 2022 et que l'accord du 19 juillet 2022 stipulait un retour en France à la rentrée scolaire 2023, puis un retour aux Etats-Unis à la rentrée scolaire 2024 puis une alternance chaque année entre la France et les Etats-Unis.

Par ailleurs, Juliette et Eva âgées de 8 ans ont écrit plusieurs lettres au juge français dans lesquelles elles ont demandé de revenir en France afin d'y retrouver leurs amis, leur activités. Il est également produit des messages (sms) dans lesquelles les deux fillettes indiquent vouloir rentrer en France et aller à l'école en France.

Les pièces du dossier ne permettent pas de remettre en cause les capacités parentales des deux parents ni les conditions d'accueil des deux parents.
Toutefois, l'intérêt des deux enfants de 8 ans commande de fixer leur résidence au domicile paternel en France, pays dans lequel elles ont développé leur vie et le centre de leurs intérêts, pays dans lequel elle ont exprimé le souhait de rentrer.

Afin de ne pas bouleverser leur année scolaire en cours, il convient de fixer leur résidence au domicile paternel en France à compter de la rentrée scolaire 2023/2024.

VU NE VARIETUR
Traduction conforme à
l'original en langue   F R
N° 2106

Page 7

EXHIBIT 01 - PAGE 7 OF 25



Compte tenu de l'éloignement géographique des domiciles parentaux, et en l'absence de proposition de la mère, il convient d'entériner la proposition du père quant aux droits de visite et d'hébergement de la mère qui exercera ses droits de visite et d'hébergement pendant les vacances scolaires, la première moitié des vacances scolaires les années paires et seconde moitié les années impaires.

L'équité commande de partager entre les parents les frais de trajets des enfants et la charge logistique des déplacements.

**Sur la contribution mensuelle à l'entretien et à l'éducation des enfants mineurs**

*Aux termes de l'article 371-2 du Code civil, chacun des parents contribue à l'entretien et à l'éducation des enfants à proportion de ses ressources, de celles de l'autre parent, ainsi que des besoins de l'enfant. Cette obligation ne cesse pas de plein droit lorsque l'enfant est majeur. L'article 373-2-2 du même code précise qu'en cas de séparation entre les parents, ou entre ceux-ci et l'enfant, la contribution à son entretien et à son éducation prend la forme d'une pension alimentaire versée, selon le cas, par l'un des parents à l'autre, ou à la personne à laquelle l'enfant a été confié. L'article 373-2-2 alinéa 3 du même code prévoit que cette pension peut en tout ou partie prendre la forme d'une prise en charge directe des frais exposés au profit de l'enfant.*

*Il sera rappelé que l'obligation des parents de subvenir aux besoins des enfants à charge ne cesse que s'ils démontrent être dans l'impossibilité matérielle de s'en acquitter.*

Monsieur PARIS déclare percevoir des revenus de 8000 euros par mois.
Son contrat de travail mentionne une rémunération annuelle brute de 120000 euros.
Il fait valoir les charges de la vie courante dont le remboursement d'un crédit immobilier à hauteur de 2000 euros par mois sans en justifier.

Madame BROWN ne produit aucun élément quant à ses charges et revenus actuels.
Toutefois, les pièces du dossier (offre d'emploi conditionnelle (pièce demandeur n° 10b), accord entre les parties par lettres officielles du 19 juillet 2022, requête de Madame BROWN (pièce défendeur n° 42) laissent apparaître que les parents semblent percevoir des revenus équivalents.

Compte tenu de ces éléments, il convient de fixer la contribution de la mère à l'entretien et à l'éducation des enfants à la somme de 500 euros par enfant et par mois et de dire que les frais exceptionnels (frais médicaux et paramédicaux non remboursés, voyages scolaires, séjours linguistiques, conduite accompagnée), décidés d'un commun accord, seront pris en charge par moitié par les parents.

Conformément aux dispositions de l'article 373-2-2 du code civil, le versement de la contribution à l'entretien et l'éducation des enfants par l'intermédiaire de l'organisme débiteur des prestations familiales au parent créancier sera écartée en raison de son incompatibilité avec la situation de l'une des parties, à savoir la résidence à l'étranger de Madame BROWN.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N°2106

**Page 8**

EXHIBIT 01 - PAGE 8 OF 25



<u>Sur les mesures accessoires</u>

La nature de l'affaire commande de voir prononcer l'exécution provisoire.

Compte tenu du caractère familial du présent litige, chacune des parties conservera la charge de ses propres dépens et l'équité commande de ne pas faire application de l'article 700 du code de procédure civile.

**PAR CES MOTIFS**

Karima BRAHIMI, Juge chargée des Affaires Familiales, statuant par jugement contradictoire, rendu en premier ressort après débats en Chambre du Conseil, par mise à disposition au greffe, susceptible d'appel,

**DECLARE** le juge français compétent et la loi française applicable,

**REJETTE** l'exception de litispendance soulevée par Madame BROWN,

**DIT** que l'autorité parentale sera exercée en commun à l'égard des enfants mineurs,

**RAPPELLE** que l'exercice en commun de l'autorité parentale implique le devoir de prendre ensemble, dans l'intérêt de l'enfant, toute décision relative notamment à son éducation, sa scolarité, sa religion, sa moralité et sa sécurité et plus généralement le devoir d'aviser en temps utile l'autre parent de toute décision ou événement pouvant avoir une répercussion dans la vie de l'enfant et de nature à engager son avenir,

**DIT** qu'à cet effet, les parents devront notamment :
- prendre ensemble les décisions importantes concernant la santé, l'orientation scolaire. l'éducation religieuse et le changement de résidence de l'enfant,
- s'informer réciproquement de l'organisation de la vie de l'enfant (vie scolaire, activités extra-scolaires, traitements médicaux...),
- communiquer en toutes circonstances l'adresse du lieu où se trouve l'enfant et le moyen de le joindre,
- respecter les liens de l'enfant avec son autre parent,

**RAPPELLE** que tout changement de résidence de l'un des parents, dès lors qu'il modifie les modalités d'exercice de l'autorité parentale, doit faire l'objet d'une information préalable et en temps utile de l'autre parent,

**FIXE** la résidence habituelle des enfants mineurs au domicile du père à compter de la rentrée scolaire 2023/2024,

**DIT** que la mère exercera ses droits de visite et d'hébergement à l'égard des enfants mineurs, sauf meilleur accord entre les parents :
- pendant les vacances scolaires, la première moitié des vacances scolaires les années paires et seconde moitié les années impaires,
à charge pour les parents de partager les frais de trajets et la charge des déplacements (logistique) entre la France et les Etats-Unis,

**DIT** que la moitié des vacances est décomptée à partir du 1er jour de la date officielle des vacances de l'académie dont dépend l'établissement scolaire fréquenté par les enfants,

Page 9

**VU NE VARIETUR**
Traduction conforme à
l'original en langue FR
N° 2106

EXHIBIT 01 - PAGE 9 OF 25



**FIXE** à compter de la rentrée scolaire 2023/2024 le montant de la contribution de la mère pour l'entretien et l'éducation des enfants à la somme de 500 euros par enfant et par mois, soit 1000 euros par mois, et CONDAMNE, en tant que de besoin, Madame BROWN à la payer à Monsieur PARIS, avant le 5 de chaque mois et douze mois sur douze,

**DIT** que cette contribution sera réévaluée le 1er janvier de chaque année par le débiteur en fonction de la variation de l'indice mensuel des prix à la consommation des ménages urbains (hors tabac) dont le chef est ouvrier ou employé publié par l'INSEE (tel.09.72.72.20.00, internet : insee.fr), l'indice de base étant le dernier publié lors de la réévaluation,

**DIT** que cette contribution sera due au-delà de la majorité ou jusqu'à la fin des études poursuivies par l'enfant dont il devra être justifié chaque année ou jusqu'à ce que l'enfant exerce une activité rémunérée non occasionnelle lui permettant de subvenir lui-même à ses besoins,

**RAPPELLE** que la réévaluation de la contribution se fait de plein droit, sans mise en demeure préalable, et qu'il appartient au débiteur d'effectuer ce calcul par exemple à l'aide des conseils donnés sur les sites : http://www.service-public.fr/calcul-pension ou http://www.insee.fr/fr/themes/calcul-pension.asp,

**PRECISE** que conformément aux dispositions de l'article 465-1du Code de procédure civile, en cas de défaillance dans le règlement des pensions alimentaires :
    1) Le créancier peut obtenir le paiement forcé en utilisant à son choix une ou plusieurs des voies d'exécution suivantes:
    - saisie-attribution entre les mains d'une tierce personne, qui doit une somme d'argent au débiteur alimentaire,
    - autres saisies,
    - paiement direct par l'employeur,
    - recouvrement public par l'intermédiaire du Procureur de la République,
    2) Le débiteur défaillant encourt les peines prévues par les articles 227-3 et 227-9 du Code pénal à savoir deux ans d'emprisonnement et 15.000 euros d'amende, interdiction des droits civils, civiques et de famille, suspension ou annulation du permis de conduire, interdiction éventuelle de quitter le territoire national,

**DIT** que les frais exceptionnels des enfants (frais médicaux et paramédicaux non remboursés, voyages scolaires, séjours linguistiques, conduite accompagnée), décidés d'un commun accord, seront partagés par moitié entre les parents sur production de justificatifs,

**REJETTE** toute autre demande,

**ORDONNE** l'exécution provisoire de la présente décision,

**DIT** n'y avoir lieu à application des dispositions de l'article 700 du code de procédure civile,

**Page 10**

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

EXHIBIT 01 - PAGE 10 OF 25



DIT que chacune des parties conservera la charge de ses propres dépens,

**Fait à Paris le 21 Avril 2023**

**PERROT Charlotte**
**Greffier**

**BRAHIMI Karima**
**Juge**

*Rappelle* qu'en cas de manquement à l'obligation de payer la pension alimentaire, le parent créancier peut en obtenir le règlement forcé par l'intermédiaire de l'agence de recouvrement des impayés de pensions alimentaires (ARIPA : www.pension-alimentaire.caf.fr) dès le premier incident de paiement en s'adressant à sa caisse d'allocations familiales -CAF - ou caisse de la mutualité sociale agricole -CMSA, afin de lui demander d'agir en son nom pour obtenir le versement des sommes à venir et recouvrer les pensions alimentaires impayées. partiellement ou irrégulièrement payées, dans la limite des vingt-quatre derniers mois.

*Rappelle* que le parent créancier peut également utiliser l'une ou plusieurs voies civiles d'exécution ;

*Rappelle* que les frais de recouvrement sont à la charge du parent qui a l'obligation de régler la pension alimentaire.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

**Page 11**

N° RG 22/38514 - N° Portalis 352J-W-B7G-CYBZ3

**EXPÉDITION** exécutoire dans l'affaire :

Demandeur : **M. Arnaud PARIS**

contre

Défenderesse : **Mme Heidi BROWN**



EN CONSÉQUENCE, LA RÉPUBLIQUE FRANÇAISE mande et ordonne :

A tous les huissiers de justice, sur ce requis, de mettre ladite décision à exécution,

Aux Procureurs Généraux et aux Procureurs de la République près les Tribunaux Judiciaire d'y tenir la main,

A tous commandants et officiers de la force publique de prêter main-forte lorsqu'ils en seront légalement requis.

En foi de quoi la présente a été signée et délivrée par nous Directeur des services de greffe judiciaires soussigné au Greffe du Tribunal judiciaire de Paris

p/Le Directeur des services de greffe judiciaires



12 ème page et dernière

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

EXHIBIT 01 - PAGE 12 OF 25

**PARIS
JUDICIAL
COURT**



■

FAMILY POLE

FAMILY
MATTERS

JAF section 2 cab 5

N° RG 22/38514 - N°
Portalis
352J-W-B7G-CYBZ3

MINUTE #: 1

VU NE VARIETUR
Traduction conforme a
l'original en langue FR
N° 2106

### JUDGMENT
### rendered on April 21, 2023

**Article 1179 of the Code of Civil
Procedure**

**PLAINTIFF**

**Mr. Arnaud PARIS**
13 RUE FERDINAND DUVAL
75004 PARIS

Appearing, assisted by Me Audrey GADOT, Attorney at the Nanterre Bar, #530
and Me Terence RICHOUX, Attorney, #E0780

**DEFENDANT**

**Ms. Heidi BROWN**
665 LEONARD STREET
ASHLAND - OREGON - UNITED STATES

Represented by Me Clémence BRASSENS - BAZALGETTE, Attorney, #G0276

**THE FAMILY COURT JUDGE**

Karima BRAHIMI

**THE COURT CLERK**

Charlotte PERROT

**Page 1**

EXHIBIT 01 - PAGE 13 OF 25



## STATEMENT OF THE CASE

The relationship between Mr. Arnaud PARIS and Ms. Heidi BROWN yielded two children whose filiation is legally established with regard to both parents:
- Juliette PARIS, born on January 15, 2015, in Ashland (USA),
- Eva PARIS, born on January 15, 2015, in Ashland (USA).

Mr. PARIS filed a petition before the Family Court of Paris, registered at the Family Court Registry on October 6, 2022.

By order of October 7, 2022, Mr. PARIS was authorized to summon Ms. BROWN to a hearing on January 20, 2023.

By bailiff's deed of October 10, 2022, Mr. PARIS summoned Ms. BROWN to a hearing on January 20, 2023.

At the hearing on January 20, 2023, Mr. PARIS was present and assisted by his counsel; Ms. BROWN was absent but represented by her counsel. Ms. Brown's counsel requested that the case be postponed; Mr. Paris' counsel did not oppose this request. In view of the agreement of the parties, the case was postponed to the hearing of March 31, 2023.

At the hearing on March 31, 2023, Mr. PARIS was present and assisted by his counsel; Ms. BROWN was absent but represented by her counsel. Ms. Brown's counsel's new request for an adjournment was rejected as unjustified.

In his written submissions, to which reference should be made, Mr. PARIS requests :
- the joint exercise of parental authority,
- to fix the residence of the children at his home in Paris,
- to grant the mother visitation and accommodation rights during school vacations, at her expense for the travel expenses of the children,
- to fix the amount of the mother's contribution to the maintenance and education of the children at the sum of 1000 euros per month,
- to say that the exceptional health expenses not reimbursed and the extracurricular expenses jointly decided will be paid by the parents in equal parts,
- to order Ms. Brown to pay the costs and the sum of 3,600 euros pursuant to Article 700 of the Code of Civil Procedure
- to order Ms. BROWN to pay the costs in accordance with the provisions of Article 699 of the Code of Civil Procedure.

In her written submissions, to which reference should be made, Ms. BROWN requests:
* In limine mitis :
- To declare that the Court of Appeals does not have jurisdiction to hear this case in favor of the Circuit Court of the State of Oregon,
- In the alternative, to find that a lis pendens situation exists and to dismiss the case in favor of the Circuit Court of the State of Oregon,
- In the extreme alternative, to refer the case back,
- to order Mr. PARIS to pay him the sum of 3000 euros pursuant to article 700 of the Code of Civil Procedure.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

**Page 2**

EXHIBIT 01 - PAGE 14 OF 25



\* <u>On the merits:</u>
- to establish the residence of the children in the maternal home in the United States,
- failing that, to maintain the alternating residence of the children at the parental homes in the United States,
- to order the sharing of the children's expenses.

In accordance with the provisions of article 1072-1 of the Code of Civil Procedure, it was verified whether or not educational assistance proceedings were in progress with respect to the minor children.

No request for a hearing of minors was made in accordance with article 388-1 of the Civil Code.

The decision was reserved until April 21, 2023.

## REASONS FOR THE DECISION

### On the jurisdiction of the French judge and the applicable law

The foreign elements of the case require the question of the international jurisdiction of the French judge and the applicable law.

<u>On jurisdiction</u>

<u>*1) On parental responsibility:*</u>

*Pursuant to Article 7 of Council Regulation (EU) 2619/1111 of June 25, 2019 , known as "Brussels II ter" The courts of a Member State shall have jurisdiction in matters of parental responsibility over a child who is habitually resident in that Member State at the time the court is seized.*

*First of all, it should be recalled that the Brussels II ter Regulation does not contain any provisions regarding its spatial scope of application. The jurisdictional rules determined by Council Regulation (EU) 2019/1111 of June 25, 2019 apply to relations between courts of several Member States, but also to relations between a court of a Member State and a court of a third State.*

*Next, it is necessary to determine where the children's residence is located in order to determine whether the French judge has jurisdiction.*

*The child's habitual residence is the place where the center of the child's life is located, which must be determined at the time the application for parental responsibility is filed on the basis of a set of indicators.*
*Thus, the determination of the place of habitual residence of a child must be done in a very concrete way with regard to the precise circumstances of the case: conditions and reasons for the child's stay, duration of the stay, age of the child, schooling, common intention of the parents to transfer this residence as well as the decisions taken with a view to the integration of the child etc...*

*It is therefore necessary to find out where the child's integration into a social and family environment is located in order to determine sufficient and not temporary proximity between the child and his or her living environment.*

**Page 3**

VU NE VARIETUR
Traduction conforme à
l'original en langue    FR
N° 2106

EXHIBIT 01 - PAGE 15 OF 25



In this case, in light of the documents in the file and the debates, it appears that since the birth of the two daughters, the couple and the children have resided alternately in France and in the United States; that since the start of the 2019 school year, the couple and the children have settled in France and the two daughters have been schooled in France, that during April 2022, relationship difficulties have arisen between the couple and that the two parents no longer agree on the family's place of residence, with Mr. PARIS wishing to remain in France and Ms. BROWN wishing to return to the United States; that nevertheless the parents agreed on July 19, 2022 for the family to leave for the United States for the 2022-2023 school year, the couple's two daughters having arrived on American territory on July 29, 2022.

Thus, at the time of the referral to the French court, on October 6, 2022, Juliette and Eva had been residing in the United States for only two months; before that, they had been residing and attending school in France for three years, a country in which they were socially integrated; if the parents agreed to return to the United States, this agreement concerned only the 2022/2023 school year, and thus it cannot be inferred that the parents had the common intention of transferring the children's residence to the United States on a long-term basis.

Consequently, taking into account these elements, it appears that on the day of the referral to the French court, i.e., October 6, 2022, Juliette and Eva had their habitual residence in France.

Therefore, the French judge is competent to rule on claims relating to parental responsibility.

*(2) On alimony obligations:*

*Article 3 b) of Regulation (EC) No 4/2009 of 18 December 2008 on jurisdiction, applicable law, recognition and enforcement of decisions and cooperation in matters relating to alimony obligations provides that the court of the place where the creditor has his habitual residence has jurisdiction to give judgment in matters relating to alimony obligations in the Member States.*

In this case, since the alimony creditor is habitually resident in France, the French judge has jurisdiction to rule on the alimony claim.

On the applicable law

*1) On parental responsibility:*

*Under Article 15 of the Hague Convention of 19 October 1996 on Jurisdiction, Applicable Law, Recognition and Enforcement of Decisions Relating to the Protection of Children, the court having jurisdiction to decide on parental responsibility shall apply its own law.*

In this case, the jurisdiction of the French judge in matters of parental responsibility leads to the application of French law.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2.106

**Page 4**

EXHIBIT 01 - PAGE 16 OF 25



*(2) On support obligations:*

*Under Article 15 of Council Regulation (EC) No 4/2009 of 18 December 2008, the law applicable to maintenance obligations is determined in accordance with the Hague Protocol of 23 November 2007 for the Member States bound by that instrument.*

*Under Article 3 of the Hague Protocol of 23 November 2007, unless otherwise provided for in the Protocol, the law of the State of the creditor's habitual residence governs maintenance obligations; in the event of a change in the creditor's habitual residence, the law of the State of the new habitual residence applies as from the time the change occurs.*

In this case, since the creditor resides in France, French law should be applied.

**On the exception of lis pendens**

*Under the terms of article 100 of the Code of Civil Procedure, if the same dispute is pending before two courts of the same level that are equally competent to hear it, the court second seized must relinquish jurisdiction in favor of the other if one of the parties so requests.*

Ms. BROWN raises the inadmissibility of the petition filed by Mr. PARIS based on an exception of lis pendens. She raises the litispendence on the questions of parental responsibility between the proceedings initiated before the judicial court of Paris by Mr. PARIS and those initiated by Ms. BROWN in the United States.

In this respect, she asserts that the French court was seized second and must relinquish jurisdiction over the dispute to the American judge.

In this case, it appears from the documents in the file that Mr. PARIS filed a petition with the Family Court of Paris on October 6, 2022 and that Ms. BROWN filed a petition with the Circuit Court of the State of Oregon on October 7, 2022.

It is not disputed by the parties that a foreign proceeding has already been initiated or is pending and that there is identity of the parties, the dispute and the subject matter.

With regard to the court first seized, it should be remembered that the seizure takes place on the date on which the document instituting the proceedings or an equivalent document is filed with the court.
In this case, Mr. PARIS' request was filed with the family affairs clerk's office of the Paris judicial court on October 6, 2022.
Consequently, the French judge was seized first before the American court on October 7, 2022.

Consequently, the exception of lis pendens raised by Ms. Brown will be rejected.

VU NE VARIETUR
Traduction conforme à
l'original en langue  FR
N° 2106

**Page 5**

EXHIBIT 01 - PAGE 17 OF 25



## On the exercise of parental authority

*Articles 372 et seq. of the Civil Code provide that the father and mother exercise parental authority jointly, the separation of the parents having no effect on the rules governing the exercise of this authority; the judge may, however, entrust the exercise of parental authority to one of the two parents if the interests of the child so require.*

*According to article 371-1 of the Civil Code, parental authority is a set of rights and duties whose purpose is the interest of the child. It belongs to the parents until the majority or emancipation of the child to protect his safety, health and morality, to ensure his education and to allow his development, in the respect due to his person. The joint exercise of parental authority implies the duty to take together, in the interest of the children, any decision relating to their education, their schooling, their religion, their morality and their safety and more generally the duty to inform the other parent in good time of any decision or event that may have an impact on the life of the children and that may affect their future.*

**It will be recalled that in order to achieve** *this goal, parents must respect each* other *and each make the necessary efforts to reflect their responsibility* **in a** *positive way in the life of their child, in particular by respecting the place of the other parent and by maintaining a necessary dialogue between them.*

**The law of January 8, 1993, then the** *law of March 4, 2002, taking up the* **spirit of the New York Convention** *on the Rights of the Child of November 20, 1989, which came into force in France on September 2, 1990, established the principle of joint exercise of parental authority, with exclusive exercise by one of the two parents remaining an exception.*

**It results,** *moreover, from the provisions of article 373-2-1 of the Civil Code* **that if the** *interest of the child so requires, the judge can entrust* **the exercise of parental authority** *to one of the two parents.*

*This is particularly the case when, because of one of the* **parents' inertia,** *disinterest, inability to contact him or* **her or systematic obstruction, the** *child's interest in not seeing important* **decisions concerning him or her** *delayed or prevented requires that the* **other parent be given exclusive** *parental authority.*

In this case, there is no reason to question the joint exercise of parental authority.

## On the residence of minor children and the parents' visiting and accommodation rights towards them

*It follows from the provisions of article 373-2-6 of the Civil Code that the judge must take special care to safeguard the interests of minor children.*

*To determine the place of residence of the children in the event of separation of the parents, it is advisable to seek the aptitude of each parent to assume his duties and respect the rights of the other, to ensure the children a stable and reassuring framework of life, to preserve the permanence of their references and their social bonds, to support their blooming.*

VU NE VARIETUR
Traduction conforme à
l'original en langue. FR
N° 2106

**Page 6**

EXHIBIT 01 - PAGE 18 OF 25



*Article 373-2-11 of the Civil Code provides that when deciding on the modalities of exercising parental authority, the judge shall take into consideration, in particular:*
*1° The practice that the parents had previously followed or the agreements that they had previously made;*
*2° The feelings expressed by the minor child under the conditions provided for in article 388-1;*
**3° The ability of each parent to assume his or her duties and respect the rights of the other;**
*4° The results of any expert appraisals that may have been carried out, taking into account the age of the child;*
*(5) information gathered in any social investigations provided for in section 373-2-12;*
**6° Physical or psychological pressure or violence exerted by one of the parents on the other.**

*Articles 373-2 et seq. of the Civil Code state that in the event of parental separation, each parent must maintain personal relations with the child and respect the child's ties with the other parent. The exercise of the right of access and accommodation can only be refused to the other parent for serious reasons. When the continuity and effectiveness of the child's ties with this parent so require, the Family Court may organize visitation rights in a meeting place designated for this purpose.*

In this case, it appears that Juliette and Eva have been residing in France since the 2019/2020 school year, i.e., 3 years, and have been attending school in Paris since that time, i.e., since the age of 4; that they have therefore been fully integrated in France since the age of 4; that they have developed in France their life habits and their social ties (schooling, friends, extracurricular activities); that it is justified that they are not removed from the list of their respective schools and that a place is kept for them in case they return to France; that the documents submitted do not in any way make it possible to establish an agreement between the parents on the residence of the children in the United States on a permanent basis, it being recalled that the couple encountered relationship difficulties as of April 2022 and that the agreement of July 19, 2022 stipulated a return to France at the start of the 2023 school year, then a return to the United States at the start of the 2024 school year, then an alternation each year between France and the United States.

In addition, Juliette and Eva, aged 8, wrote several letters to the French judge in which they asked to return to France to find their friends and activities. There are also messages (sms) in which the two girls indicate that they want to return to France and go to school in France.

The documents in the file do not allow for the parental abilities of both parents to be questioned, nor the foster care conditions of both parents.
However, the interest of the two 8 year old children requires to fix their residence at the paternal domicile in France, country in which they developed their life and the center of their interests, country in which they expressed the wish to return.

In order not to disrupt their current school year, it is appropriate to establish their residence at their father's home in France as of the beginning of the 2023/2024 school year.

VU NE VARIETUR
Traduction conforme à
l'original en langue... FR
N° 2106



Given the geographical distance of the parental homes, and in the absence of a proposal from the mother, it is appropriate to ratify the father's proposal regarding the mother's visitation and accommodation rights, which will be exercised during school vacations, the first half of the school vacations in even-numbered years and the second half in odd-numbered years.

Fairness requires that parents share the cost of the children's travel and the logistical burden of travel.

### On the monthly contribution to the maintenance and education of minor children

*According to article 371-2 of the Civil Code, each parent contributes to the maintenance and education of the children in proportion to his or her resources, those of the other parent, and the needs of the child. This obligation does not automatically cease when the child reaches the age of majority. Article 373-2-2 of the same code specifies that in the event of separation between the parents, or between the parents and the child, the contribution to the maintenance and education of the child **takes the form of a maintenance allowance paid, as the case may be, by one of the parents to the other, or to** the person to whom the child has been entrusted. Article 373-2-2 paragraph 3 **of the same code provides that this support may in whole or in part take the form of direct payment of expenses incurred for the benefit of the child.***

*It will be recalled that the parents' obligation to support **their dependent children only ceases** if they demonstrate that they are materially **unable to do so.***

Mr. PARIS declares that he receives an income of 8000 euros per month.
His employment contract mentions a gross annual remuneration of 120,000 euros.
He argues that he has living expenses, including the repayment of a real estate loan of 2000 euros per month, without justifying it.

Ms. Brown does not provide any information about her current expenses and income.
However, the documents in the file (conditional offer of employment (plaintiff's exhibit no. 10b), agreement between the parties by official letters dated July 19, 2022, petition by Ms. Brown (defendant's exhibit no. 42) show that the parents appear to have equivalent incomes.

Taking into account these elements, it is appropriate to fix the mother's contribution to the maintenance and education of the children at the sum of 500 euros per child per month and to state that the exceptional expenses (medical and paramedical expenses not reimbursed, school trips, linguistic stays, accompanied driving), decided upon by mutual agreement, will be taken in charge by half by the parents.

In accordance with the provisions of article 373-2-2 of the civil code, the payment of the contribution to the maintenance and education of the children through the intermediary of the body responsible for family benefits to the creditor parent will be rejected because of its incompatibility with the situation of one of the parties, namely the residence abroad of Ms, BROWN.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

**Page 8**

EXHIBIT 01 - PAGE 20 OF 25



### On ancillary measures

The nature of the case requires that provisional execution be pronounced.

Given the family nature of this dispute, each party shall bear its own costs and equity dictates that Article 700 of the Code of Civil Procedure not be applied.

### NOW THEREFORE

Karima BRAHIMI, Judge in charge of Family Affairs, ruling by contradictory judgment, rendered in first instance after debates in the Council Chamber, by being made available at the clerk's office, subject to appeal,

**DECLARE** the French judge competent and the French law applicable,

**DISMISSES** the objection of lis pendens raised by Ms. BROWN,

**DECLARES** that parental authority shall be exercised jointly with respect to the minor children,

**RECALLS** that the joint exercise of parental authority implies the duty to take together, in the interest of the child, any decision relating in particular to his or her education, schooling, religion, morality and safety and more generally the duty to inform the other parent in a timely manner of any decision or event that may have an impact on the child's life and that may affect his or her future,

**IT IS FURTHER RESOLVED** that for this purpose, parents shall in particular:
- make important decisions together about the child's health, schooling, religious education and change of residence,
- inform each other about the organization of the child's life (school life, extracurricular activities, medical treatments...),
- provide the address of the child's whereabouts and a means of contacting the child at all times,
- respect the child's relationship with the other parent,

**RECALLS** that any change in the residence of one of the parents, as soon as it modifies the modalities of exercising parental authority, must be the subject of prior and timely information of the other parent,

**ESTABLISHES** the habitual residence of the minor children at the father's home as of the beginning of the 2023/2024 school year,

**DECLARES** that the mother will exercise her visiting and accommodation rights with respect to the minor children, unless the parents agree otherwise:
- during the school vacations, the first half of the school vacations in even years and the second half in odd years,
parents are responsible for sharing the cost of travel and logistics between France and the United States,

**DECLARES** that half of the vacation is counted from the first day of the official vacation date of the academy on which the school attended by the children depends,

VU NE VARIETUR
Traduction conforme a
l'original en langue FR
N° 2106

Page 9

EXHIBIT 01 - PAGE 21 OF 25

EXHIBIT 01 - PAGE 22 OF 25



**ESTABLISHES** as of the beginning of the 2023/2024 school year the amount of the mother's contribution for the maintenance and education of the children at the sum of 500 euros per child and per month, that is to say 1000 euros per month, and CONDEMNS, insofar as necessary, Mrs. BROWN to pay it to Mr. PARIS, before the 5th of each month and twelve months out of twelve,

**IT IS RESOLVED** that this contribution will be re-evaluated on January 1 of each year by the debtor according to the variation in the monthly consumer price index for urban households (excluding tobacco) whose head is a worker or employee published by INSEE (tel.09.72.20.00, internet: insee.fr), the base index being the last one published at the time of the revaluation,

**DECIDES** that this contribution will be due beyond the age of majority or until the completion of the child's studies, for which proof must be provided each year, or until the child engages in a non-occasional paid activity that enables him or her to support him or herself,

**RECALLS** that the reassessment of the contribution is made automatically, without prior notice, and that it is up to the debtor to make this calculation, for example, using the advice given on the websites: http://www.service-public.fr/calculating-pension    or    http://www.insee.fr/fr/themes/calcul-pension.asp,

**PROVIDES** that in accordance with the provisions of Article 465-1 of the Code of Civil Procedure, in the event of default in the payment of alimony :
    1) The creditor may obtain forced payment by using one or more of the following means of enforcement at his or her option
    - seizure in the hands of a third party, who owes a sum of money to the maintenance debtor,
    - other seizures,
    - direct payment by the employer,
    - public collection through the Public Prosecutor,
    2) The defaulting debtor shall be liable to the penalties provided for in Articles 227-3 and 227-9 of the French    Penal Code  , i.e. two years'imprisonment and a fine of 15,000 euros, disqualification from holding civil, civic and family rights, suspension or cancellation of the driver's license, and a possible ban on leaving the country,

**DECIDES** that the exceptional expenses of the children (medical and paramedical expenses not reimbursed, school trips, linguistic stays, accompanied driving), decided by mutual agreement, will be shared equally between the parents upon production of receipts,

**DENIES** all other applications,

**ORDERS** provisional execution of this decision,

**DECLARES that** there is no need to apply the provisions of Article 700 of the Code of Civil Procedure,

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

**Page 10**

EXHIBIT 01 - PAGE 22 OF 25



ORDERS that each party shall bear its own costs,

**Done in Paris on April 21, 2023**

**PERROT**                          **Charlotte BRAHIMI Karima**
**Clerk**                           **Judge**

*Recalls* that in case of failure to pay the alimony, the creditor parent can obtain forced payment through the agency for the recovery of unpaid alimony (ARIPA : www.pension- alimentaire.caf.fr) as soon as the first payment incident occurs, by c o n t a c t i n g his or her Caisse d'allocations familiales (CAF) or Caisse de la mutualité sociale agricole (CMSA), in order to ask it to act on his or her behalf to obtain payment of future sums and to recover unpaid, partially or irregularly paid alimony payments, up to a limit of the last 24 months.

*Recalls* that the creditor parent may also use one or more civil enforcement methods;

*Recalls* that collection costs are the responsibility of the parent who is obligated to pay support.

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

Page 11

EXHIBIT 01 - PAGE 23 OF 25



Nº RG 22/38514 - Portalis Nº 352J-W-B7G-CYBZ3

Enforceable **DISPATCH** in the case:

Plaintiff: **Mr. Arnaud PARIS**

Against

Defendant: **Ms. Heidi BROWN**

NOW, THEREFORE, THE FRENCH REPUBLIC directs and orders:

To all bailiffs, on this request, to enforce the said decision,

To the Public Prosecutors and to the Public Prosecutors of the Republic of France at the Courts of Justice to enforce it,

To all commanders and officers of the public force to lend a hand when legally required.

In witness whereof the present document has been signed and delivered by us, the undersigned Director of the Judicial Clerk's Office, to the Clerk's Office of the Judicial Court of Paris.

For the Director of the Judicial Registry Department

12th and last page

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
Nº 2106

EXHIBIT 01 - PAGE 24 OF 25

## WE T R A N S L A T E.

# CERTIFICATE OF ACCURACY

I the undersigned certify that this document was translated into English by a translator working for WeTranslate who are both competent and qualified to perform translation into this language. I attest the final target file is an accurate and complete translation of the original French version of:

Type of Document: Judgment

Holder: Arnaud PARIS

Maria CHOURAQUI

Team Lead                      19 July 2023

WeTranslate                    Date

Subscribed and sworn to before me on

19 July 2023

in Paris, France

Jimena MARTINEZ ROJAS
36 rue Saint Didier
75116 PARIS
01-71-73-64-36

VU NE VARIETUR
Traduction conforme à
l'original en langue FR
N° 2106

WWW.WETRANSLATE.FR - +33(1)71736436 – 36 RUE SAINT DIDIER 75116 PARIS – contact@wetranslate.fr

EXHIBIT 01 - PAGE 25 OF 25