Katelyn D. Skinner, OSB No. 105055
Email: kds@buckley-law.com
Katrina Seipel, OSB No. 164793
Email: kas@buckley-law.com
Buckley Law, P.C.
5300 Meadows Road, Suite 200
Lake Oswego, OR  97035
Telephone:  503-620-8900
Fax:  503-620-4878
Of Attorneys for Respondent Heidi Brown

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

Medford Division

In re the Matter of J.P. and E.P.:

ARNAUD PARIS,

       Petitioner,

  and

HEIDI MARIE BROWN,

       Respondent.

Case No.: 1:24-cv-00648-AA

RESPONDENT'S MOTION TO DISMISS PETITION FOR RETURN OF CHILDREN

The Convention on the Civil Aspects of International Child Abduction,
Done at the Hague on 25 Oct 1980
International Child Abduction Remedies Act, 22 USC § 9001 *et seq.*

Respondent Heidi Brown ("Mother"), by and through her attorneys, Katelyn D. Skinner, Katrina Seipel, and Buckley Law, PC, hereby moves this Court for an order granting dismissal of the Petition in this matter based on the fugitive disentitlement doctrine.

## RELEVANT FACTS AND TIMELINE

Mother and Petitioner Arnaud Paris ("Father") are former domestic partners and the biological parents of twin girls, E▇▇ and J▇▇▇▇, age 9. Throughout the girls' childhood, the

family frequently moved back and forth between the United States and France. A recent, relevant timeline follows:

- July 29, 2022: Mother and the children permanently relocate from Paris, France to Ashland, Oregon. Father consents.
- October 7, 2022: Mother files a Petition for Custody, Parenting Time, and Child Support, as well as Dissolution of Domestic Partnership, in Oregon State Court for Jackson County, case number 22DR17285.
- October 7, 2022: A French court accepts Father's Custody Petition.
- October 11, 2022: A Temporary Protective Order of Restraint ("TPOR") is issued in the Oregon State case, **Exhibit 1**, fixing the children's residence in Ashland, Oregon and prohibiting the parties from removing the children from Oregon without the other party's consent or permission from the court.
- October 20, 2022: Father files Hague Convention Petition in District Court of Oregon, Medford Division, seeking return of the children to France.
- December 7, 2022: Following trial, Honorable District Court Judge Michael McShane dismisses Father's Hague Convention Petition, **Exhibit 2**.
- January 6, 2023: Father appeals Judge McShane's dismissal of his Petition.
- January 30, 2023: Father dismisses his appeal.
- March 31, 2023: Father, Father's French counsel, and Mother's French counsel appear for a hearing in the French court. Believing that the hearing is regarding jurisdiction only, Mother does not appear.
- April 21, 2023: A French court grants the parties joint custody of their children.
- May 9, 2023: Father attempts to register the French judgment in Oregon State Court for Jackson County, case number 23DR08269.
- May 30, 2023: Father submits a Petition to the Oregon Supreme Court to vacate the TPOR.
- July 11, 2023: The Oregon Supreme Court denies Father's Petition to vacate the TPOR. Subsequently, the court denied Father's Motion for Reconsideration, and a final Appellate Judgment was entered into the appellate court record on February 1, 2024. See **Exhibit 3**.
- July 12, 13, 18, and 20, 2023: A hearing is held in Jackson County Circuit Court on Father's request to register the French judgment and dismiss the Oregon case, and on Mother request for Oregon to assert jurisdiction. The Court recesses on July 18 just as Father's cross-examination begins. When the Court is unavailable on July 20, the hearing is continued to August 3, 2023.
- July 22-23, 2023: Despite the Oregon Supreme Court upholding the TPOR, Father abducts the children from Oregon to San Francisco, California, and he proceeds to take them back to France.

- August 18, 2023: Honorable Jackson County Circuit Court Judge David J. Orr determines that France has no jurisdiction and declines to confirm the registration of the French judgment, **Exhibit 4**.
- November 14, 2023: Mother files a Motion for Remedial Contempt against Father, case number 23CN05721, for Father's failure to abide by the TPOR by removing the children from Oregon without her consent or the court's permission.
- December 28, 2023: Limited Judgment Regarding Custody, Parenting Time, and Child Support is issued, **Exhibit 5**, granting Mother sole legal custody of the parties' children, subject to Father's parenting time. Father is stripped of his ORS 107.154 rights, the rights generally granted to non-custodial parents under Oregon law.
- March 7, 2024: Father fails to appear at hearing on Mother's Motion for Remedial Contempt. A warrant is issued for Father's arrest. The warrant remains outstanding.
- April 10, 2024: Mother and the children leave France and return to the United States.
- April 16, 2024: Father files this underlying Hague Convention matter against Mother.
- April 24, 2024: General Judgment of Default; and Money Awards, regarding the Dissolution of Domestic Partnership is entered, **Exhibit 6**, incorporating in full the Limited Judgment Regarding Custody, Parenting Time, and Child Support.

As evidenced by this timeline, the parties have been in the throes of litigation pertaining to custody of their children since summer of 2022. While different jurisdictions have issued differing judgments regarding custody of the children, the end of this litigation appears to be nowhere in sight. In any event, Father now seeks the protection of the United States District Courts through a Hague Convention matter, but he should not be permitted to use the courts to his advantage when he refuses to obey court orders when such orders disadvantage him. Put another way, the fugitive disentitlement doctrine prohibits Father from bringing this action, and his Petition must immediately be dismissed.

## ARGUMENT

The fugitive disentitlement doctrine grants district courts the power to enter judgment against parties on the basis of their fugitive status. *Ener v. Martin*, 379 F. Supp. 3d 1377, 1381 (S.D. Fla. 2019), *aff'd,* 987 F.3d 1328 (11th Cir. 2021). It has been explained that the doctrine, based in equity, rests upon the power of the courts to administer the federal courts system. *Pesin v. Rodriguez*, 244 F.3d 1250, 1252-53 (11th Cir. 2001). The Eleventh Circuit, in *Pesin*, made clear that while the "classic case" involving the fugitive disentitlement

doctrine is a criminal defendant's appeal, the doctrine may also be applied to a civil litigant who ignores court orders and evades arrest. *Id.* at 1253. The rationale of the fugitive disentitlement doctrine includes "the difficulty of enforcement against one not willing to subject himself to the court's authority; the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him; and the need to avoid prejudice to the nonfugitive party." *F.D.I.C. v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999). Additionally, practical considerations should inform a court's dismissal of a matter pursuant to the fugitive disentitlement doctrine, such as sanctioning for mistakes, omissions, or misconduct. *Sarlund v. Anderson*, 205 F.3d 973, 974 (7th Cir. 2000).

The facts of *Pesin v. Rodriguez* are instructive. 244 F.3d 1250 (11th Cir. 2001). In *Pesin*, the father filed a petition for return of the parties' children to Venezuela after the mother retained the children in Florida. *Id.* at 1252. The District Court granted the father's petition and ordered the mother to return the children to Venezuela within 10 days. *Id.* She failed to do so. *Id.* The District Court, upon being notified of the circumstances by the father, scheduled a status conference. *Id.* The mother failed to appear. *Id.* The District Court then issued an order to show cause why the mother should not be held in contempt and scheduled another hearing. *Id.* The mother failed to appear once again. *Id.* Thus, she was found in contempt and a bench warrant was issued for her arrest. *Id.* Then, "[d]espite failing to end her contumacious conduct or submit to the court's authority," the mother appealed the District Court's decision granting the father's petition. *Id.* In dismissing the mother's appeal pursuant to the fugitive disentitlement doctrine, the Eleventh Circuit stated:

> "[The mother] has repeatedly defied court orders and ignored contempt sanctions and has continued to evade arrest. Her behavior to date leaves little doubt that she would defy an adverse ruling. Moreover, it would be inequitable to allow [the mother] to use the resources of the courts only if the outcome is a benefit to her. We cannot permit [the mother] to reap the benefits of a judicial system the orders of which she has continued to flaunt."

The fugitive disentitlement doctrine was also considered in a Hague Convention matter in *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000). In *Walsh*, the mother removed the children from Ireland to the United States, whereby the father petitioned the District Court for return of the children pursuant to the Hague Convention. *Id.* at 211-12. The District Court declined to apply the fugitive disentitlement doctrine to the case and dismiss the father's Hague Convention petition because there was no nexus between the father's fugitive status and the petition, and the father had not yet been convicted. *Id.* at 214. Notably, the father had a warrant out for his arrest for an entirely unrelated matter whereby he was charged with attempting to break and enter and threatening to kill another person. *Id.* at 209. In affirming the District Court's decision declining to apply the fugitive disentitlement doctrine to the case, the First Circuit discussed the only connection between the father's fugitive status and the Hague Convention matter being that the father fled the United States after being charged criminally and the mother, pregnant at the time, followed him to Ireland to give birth, thus permitting the father to utilize the Hague Convention when the mother removed the children from the country. *Id.* at 215. "That, though, may be too slim a reed to support so weighty a doctrine." *Id.*

The Court in *Walsh* additionally upheld the lower court's ruling based on the severity of the fugitive disentitlement doctrine. *Id.* at 216. However, while noting that the sanction of dismissal is harsh, the Court specified that it may not be too harsh when a party's fugitive status has impaired the rights of the other parent." *Id.*

Ultimately, the Court in *Walsh* held that "the dismissal of a civil action on fugitive disentitlement grounds requires that (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal, is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine." *Id.* at

215, *citing Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998). "[A]n appreciation of the pragmatic concerns requires a case-by-case analysis." *Walsh*, at 215.

      This Court may also look to *Sasson v. Shenhar*, 276 Va. 611 (2008) for guidance in analyzing and applying the fugitive disentitlement doctrine in a Hague Convention matter. In *Sasson*, the parties and their single child lived in Spain when the mother and the child left the country and came to the United States. *Id.* at 617. Thereafter, the Father filed for a divorce from the mother in a Spanish court, and he filed a request with the Spanish Central Authority for an order directing that the child be returned to Spain. *Id.* at 617-18. Then, the father filed a Hague petition in a Virginia Juvenile and Domestic Relations court ("J & DR court"), as well as a motion to enforce a Spanish custody order granting him custody of the child. *Id.* at 618. The mother also filed her own motion in the Virginia Circuit Court, whereby she was granted temporary legal custody of the child. *Id.* Pending hearing, the J & DR court issued an order granting physical custody of the child to the father, but the father was ordered not to remove the child from the state. *Id.*

      While the J & DR court eventually granted the father's Hague petition, the mother appealed de novo to the Virginia Circuit Court, and the Circuit Court found in her favor. *Id.* at 619. Despite that ruling, though, and despite the continued order prohibiting the child's removal from the state, the father returned with the child to Spain. *Id.* at 620. Upon learning of the father's disobedience, the Court entered an additional order directing the father to immediately return the child. *Id.* When the father did not do so, the mother filed a contempt action against him. *Id.* The father failed to appear at the contempt hearing, whereupon the Court issued a capias for his arrest. *Id.* at 621. The father subsequently asked for reconsideration. *Id.* When his request was denied, he appealed the contempt order, the denial of his Hague petition by the Circuit Court, and the order directing him to return the child to the United States. *Id.*

The Court of Appeals granted the mother's motion to dismiss the father's appeals based on the fugitive disentitlement doctrine. *Id.* at 622. The Court considered how courts of appeals have consistently applied the fugitive disentitlement doctrine as a sanction, as a means to protect courts against those who would abuse the judicial process. *Id.* (citations omitted). "Accordingly, … the Fugitive Disentitlement Doctrine may be applied in appropriate cases whenever a court … in the exercise of sound judicial discretion deems it necessary to protect the dignity and power of the court from abuse by a litigant." *Id.* at 623.

The father put forth arguments that the fugitive disentitlement doctrine should not have been applied because the J & DR court did not have jurisdiction to enter the orders at issue, and so the mother's contempt case against him and his subsequent failure to appear at court are void. *Id.* at 624. However, the Court underscored that, when a party believes an order is incorrect or void, the appropriate action to take is to appeal that order, while still submitting to the court's jurisdiction. *Id.* "A dissatisfied litigant should challenge the correctness of an adverse judgment or ruling by an appeal and not by disobedience of such order or by interfering with or obstructing the judicial processes. *Id.* (citations omitted).

In considering the requirements of the fugitive disentitlement doctrine laid out in *Walsh* and the policy concerns underlying the doctrine, the Court made very clear that, by wrongfully taking the child to Spain in violation of a court order, the father deliberately interfered with the mother's parental rights, and there was no question whether there was a sufficient nexus between the father's fugitive status and the underlying matter. *Id.* at 627. Further, where the father made evident he would not submit to the jurisdiction of Virginia's courts unless he were to receive a judgment in his favor, dismissal of the father's appeals would further the goals of the fugitive disentitlement doctrine by "discouraging flight from justice, encouraging compliance with court orders, and promoting the efficient, dignified operation of the courts." *Id.* at 627-28.

It would only be proper in the instant matter for this Court to apply the fugitive disentitlement doctrine and dismiss Father's Petition in its entirety. Pursuant to Article 1(b) of the Hague Convention, the objects of the Convention include ensuring "that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." As is clear from the parties' extensive litigation detailed above, Father does not respect Oregon law and Oregon legal decisions pertaining to the children. Yet, he files this Petition under the Convention and asks the Court to respect French law and a French judgment, failing to even mention that an Oregon state court previously held that France did not have jurisdiction to enter the very judgment he wants this Court to give respect to. Father does not get to disregard court orders when they disadvantage him and, at the same time, utilize the court system when it may benefit him.

Father's conduct in this regard is incredulous. First, Father lost his prior Hague Convention matter against Mother in December 2022, and he dismissed his appeal of the matter. Then, not liking the orders of the TPOR fixing the children's residence in Ashland, Oregon and prohibiting the parties from removing the children from Oregon without the other party's consent or permission from the court, Father sought Supreme Court review. Upon the Oregon Supreme Court upholding the TPOR, just 11 days later, Father, figuratively speaking, gave the Supreme Court the middle finger and took the children out of Oregon and back to France. There could not be a more onerous sign of disrespect of and disregard for Oregon law.

Furthermore, in abducting the children, Father misrepresented the status of the case to French Consular authorities, as well as Customs and Border Patrol. Father's lies are evidenced in **Exhibit 7**, a letter from the French Consulate, and **Exhibit 8**, an email sent by Father to the French Consulate displaying how he misinformed the authorities regarding the status of the TPOR.

On November 14, 2023, after Father abducted the children, a hearing was held in Jackson County Circuit Court in the parties' dissolution matter. A relevant portion of **Exhibit 9**, a partial transcript of that hearing, follows:

> THE COURT:
> All right. So – yeah. A few things to note here, comments to you and just for the record in general.
> So you probably recall that, at the time that we were litigating the motion to dismiss, there was a status quo order that prohibited you from removing the children in question from this state. You disagreed with that, and you brought it before the court, and you and your attorney argued that the status quo should not be ordered and that you should be allowed to remove the children from the state. That motion was heard, the arguments were heard, and the court said, "No. That status quo order remains in place at least while this hearing on the motion to dismiss is pending."
> During the course of that motion to dismiss that went over several nonconsecutive days, you, at one point, suddenly disappeared. You took the children in violation of the court's order out of the state and out of the United States and are still holding them right now as we speak.
> So I told you as we continued the hearing, after you had removed these children contrary to the court's order, I told you you would be allowed to sit in and listen – just like if you were local here, you could come in and sit in the audience – but you were not to participate. And that is because it would make no sense to me or to any court, I don't believe, when you are in flagrant violation of basically the most fundamental order that's in place right now, and that is, where are these children going to be?
> When you are in flagrant violation of that order, you are not going to come back in to court and continue to litigate about where these kids should be or where they shouldn't be or what's going to happen with these children, absolutely not.
> The court is not – this is basically – you're asking –
>
> MR. PARIS:
> So it was a section –
>
> THE COURT:
> Be quiet right now. This is as though you are asking the Court to negotiate with hostage-takers. This is what this looks like. You are now holding these children criminally. It doesn't matter to me whether you were charged criminally or not. You have violated a criminal statute –
>
> MR. PARIS:
> Sir, I am in France –

THE COURT:
: Be quiet, sir.

MR. PARIS:
: I'm in France, Your Honor.

THE COURT:
: Be quiet, sir. You have violated a criminal statute, and it's a felony. You're holding these children contrary to the court's order, and you want to continue to litigate? I don't understand. So in your motions, your subsequent motions to dismiss, which you filed – 13, 14 – you're asking – if you think about the lack of logic here, you're asking – a motion is asking for an order. That's what a motion is. A motion is asking for a court order.
: I don't know what court orders mean to you or why you would be asking for them since you seem to just do whatever you want, and you flagrantly disobey court orders. This is extremely unacceptable.
: And, you know, I've seen different people violate different court orders at different times but when it comes to children and unlawful taking of children, removing them from a county against a court order, and then you want to continue to hold them over there, and now you have them overseas, and you want to litigate this case?
: So understand this, all your motions that you filed subsequent to removing the children – and "removing" is a kind word; the more accurate word is "abducting." All the motions that you filed –

MR. PARIS:
: Objection.

THE COURT:
: -- are not going to be considered. You do not – there's no objecting right now. You can object at the end, and you can record whatever objections you want. You are not to interrupt me. So all the motions you filed are simply senseless to me. They are not going to be considered. All you can do at this point with regards to any kind of litigation involving what's going to happen with these children is listen in.
: Today, I am allowing you to participate in this hearing because it's not about what's going to happen with the children; it's about if and how much attorney fees you are going to have to pay. That it seemed to me appropriate that you should be allowed to participate in and give your input, make your legal arguments, present evidence if you have any. That's appropriate.
: As to anything regarding these children, no. The Court is not going to be – you're not going to make a mockery of the Court. Abducting the children and then continuing to litigate the case about your children while you've taken them against a court order that you were fully aware of because you were arguing against it. And you

heard me tell you, "You can't remove these children from Oregon," and you did so, and you're still holding them.

Then, on December 21, 2023, the Oregon state court stated that Father remains "in flagrant, willful, contemptuous violation of the Court's orders," and it issued an order for Father to return the children to Oregon, see **Exhibit 10**. Of course, Father ignored this order. On December 28, 2023, in issuing its General Judgment of Default granting Mother sole legal custody of the children, the Court concluded, once again, that Father's actions are criminal, see page 6, paragraph (8) of **Exhibit 6**.

Moreover, upon Mother attempting to hold Father accountable for his conduct through a remedial contempt action, Father refused to appear in person for a hearing after being ordered multiple times to do so (see **Exhibits 11 and 12**), and so a bench warrant was issued for Father's arrest. The warrant is valid in all 50 states and remains outstanding. Father has full knowledge of the arrest warrant as per his own pleadings (see Docket 7, pages 4 – 5, paragraph 9, Father's *Emergency Motion for Unsupervised and Direct Communication with Father*).

Because Father has proved nothing other than that he believes he is outside the reach of Oregon law and that he would likely ignore an unfavorable result in this matter, Mother respectfully requests that Father's Petition be dismissed immediately pursuant to the fugitive disentitlement doctrine. Where the fugitive disentitlement doctrine is an equitable one, it is simply not equitable to even let Father argue that he is entitled to relief in this Court, when he refuses to avail himself of the Oregon state court system, whereby Mother would be entitled to relief to Father's detriment. The fugitive disentitlement doctrine can and should be applied to this civil litigant, Father, who continues to ignore court orders and evade arrest for his misconduct.

In *Pesin*, application of the doctrine was proper, when the party against whom the doctrine was applied disobeyed a court order (to return the children) and failed to appear at

two separate hearings after being ordered to do so. In dismissing the party's case, stated for a second time here, the Court wrote:

> "[The mother] has repeatedly defied court orders and ignored contempt sanctions and has continued to evade arrest. Her behavior to date leaves little doubt that she would defy an adverse ruling. Moreover, it would be inequitable to allow [the mother] to use the resources of the courts only if the outcome is a benefit to her. We cannot permit [the mother] to reap the benefits of a judicial system the orders of which she has continued to flaunt."

In the instant matter, Father disobeyed the Circuit Court's order in the TPOR prohibiting the parties from removing the children from Oregon without the other party's consent or permission from the court. He disobeyed the Oregon Supreme Court just 11 days after the Court affirmed the TPOR's conditions. He lied to authorities to get the children out of the country. He blatantly disregarded the Court's December 21, 2023 order to return the children to Oregon. Then, in the remedial contempt matter pertaining to this very conduct, after the Court denied his motion to disqualify Judge Orr (the judge who found that France did not have jurisdiction to enter a custody order), denied his motion to stay the case, denied his motion to continue the case on two occasions, denied his motion to appear remotely on two occasions, and ordered him to appear in person on two occasions, Father failed to appear for court.

In comparison to *Pesin*, Father in this case has repeatedly defied court orders and ignored contempt sanctions. He has continued to evade arrest. His behavior to date leaves little doubt that he would defy an adverse ruling. It would be inequitable to allow Father to use the resources of this Court only if the outcome is a benefit to him. This Court should, thus, not permit Father to reap the benefits of a judicial system the orders of which he has continued to flaunt.

Contrary to the situation in *Walsh*, Father's fugitive status and the Petition in this matter are inextricably intertwined, undoubtedly supporting application of the fugitive

disentitlement doctrine. While, admittedly, the Court in *Walsh* cautioned that the result of the fugitive disentitlement doctrine, dismissal, is harsh, the Court also identified that application may be proper when a party's fugitive status has impaired the rights of the other parent. Father has fugitive status right now because, after abducting the children, he refuses to return to the States and take responsibility for his actions. Father ripped the parties two young children from their home and their mother in Oregon, depriving Mother of her custodial and parenting rights. Additionally, Mother has a right to hold Father accountable for his conduct by way of a remedial contempt. By failing to surrender to the remedial contempt matter, Father continues to deprive Mother of this right.

The *Walsh* court set forth three requirements for dismissal of a civil action on fugitive disentitlement grounds, and all three requirements are satisfied in this matter. First, the plaintiff must be a fugitive. There is no disputing that Father is a fugitive, having a warrant out for his arrest in all 50 states. Second, there must be a connection between Father's fugitive status and the civil action. Again, there is no disputing this requirement is fulfilled. Last, a dismissal must be necessary to effectuate the underlying concerns of the fugitive disentitlement doctrine, analyzed on a case-by-case basis.

First and foremost, Father has made clear that he will accept a ruling of a court of this state only if it is to his advantage. He has proved that, if this Court rules in Mother's favor, Father will simply ignore the ruling. This Court should not waste its time and resources when such a result would occur. Second, this matter moving forward while Father remains a fugitive would unduly prejudice Mother. While this case has the potential, albeit slim, to harm Mother and remove the children from her care, Mother does not get to use the legal system to help her, when it may harm Father, while he remains at large, plainly prejudicing her. Last, and perhaps most importantly, Father has engaged in significant misconduct. Not only did he abduct the children from Oregon and take them to France in

violation of a TPOR, but he has, since then, only continued to disobey court orders and evade arrest. Additionally, he omitted, one can only assume intentionally, many of the relevant facts and orders pertaining to the issues of this case in his Petition.

In *Sasson*, with facts substantially similar to the facts of this case, application of the fugitive disentitlement doctrine was proper. In *Sasson*, the father had a Spanish court decision granting him custody rights to the child. Here, Father has a French court decision granting him custody rights to the children. In *Sasson*, the mother had a temporary order out of a United States court granting her custody of the child. Here, Mother has a final order out of a United States court granting her custody of the children. She also has an order out of a United States court declaring that the French custodial order is void for lack of jurisdiction. In *Sasson*, the father lost his Hague case. Here, Father lost his initial Hague case. In *Sasson*, there was a valid court order prohibiting removal of the child from Virginia. Here, there is a valid court order, upheld by the State's highest court, prohibiting removal of the children from Oregon. In *Sasson*, the father disobeyed the order. Here, Father disobeyed the order. In *Sasson*, after learning of the abduction, the court ordered the father to return the child. Here, after learning of the abduction, the court ordered Father to return the children. In *Sasson*, when the father did not return the child, the mother filed a contempt action against him. Here, when Father did not return the children, Mother filed a contempt action against him. In *Sasson*, when the father failed to appear at the hearing regarding his contempt, the court issued a capias for his arrest. Here, when Father failed to appear at the hearing regarding his contempt, the court issued a warrant for his arrest.

Following the above, in *Sasson*, the father's attempted continued litigation in the States was dismissed, as the fugitive entitlement doctrine applied precisely to the situation. Here, Father's attempted continued litigation in a United States District Court should also be dismissed, as this particular situation mirrors the one in *Sasson*. Additionally, what is

particularly severe about the case at hand is that Father lawfully attempted to challenge the TPOR prohibiting the children's removal from Oregon, but when he lost, just days later, he cast the decision of highest court of this State aside and abducted the children.

As in *Sasson*, when Father in this matter took the children to France in violation of the TPOR, a valid court order upheld by the Oregon Supreme Court, Father intentionally interfered with Mother's parental rights, whereby the connection between Father's fugitive status and this case is direct and undeniable. Where Father has done nothing in the courts of the United States other than prove he will not submit to jurisdiction unless it is favorable to him, dismissal of this case is necessary and will only protect the underlying concerns of the fugitive disentitlement doctrine by discouraging flight from justice, encouraging compliance with court orders, and promoting the efficient, dignified operation of the courts.

As such, this Court must dismiss Father's Petition pursuant to the fugitive disentitlement doctrine. To do otherwise would be inequitable and unjust. The Hague Convention on the Civil Aspects of International Child Abduction was not developed for the purpose Father seems to be using it: forum shopping. Where the Convention holds that "the interests of children are of paramount importance in matters relating to their custody," and an Oregon state court has already determined custody of and parenting time with the children, but only after holding that the French court does not have jurisdiction over the matter, Father's Petition flouts the entire purpose of the Convention. This Court cannot stand for such a vexatious litigant.

//
//
//
//

## CONCLUSION

For the foregoing reasons and pursuant to the fugitive disentitlement doctrine, Mother respectfully requests that this Court dismiss Father's Petition in its entirety.

Respectfully submitted this 28th day of May, 2024.

Katrina Seipel, OSB No. 164793
Email: kas@buckley-law.com
Katelyn Skinner, OSB No. 105055
Email: kds@buckley-law.com
Buckley Law, PC
5300 Meadows Road, Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900
Of Attorneys for Respondent

CERTIFICATE OF SERVICE

I certify that this document was served by e-mail and first-class U.S. mail upon Petitioner Arnaud Paris, to arnaud@skyvr.com, and to his last known address of 13 rue Ferdinand Duval, 75004, Paris, France on this 28th day of May, 2024.

Katrina Seipel, OSB No. 164793
Of Attorneys for Respondent
kas@buckley-law.com