# EXHIBIT 10

1          THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF OREGON

3                  MEDFORD DIVISION

4

5   ARNAUD PARIS,                    )
                                     )
6              Petitioner,           )    Case No. 1:22-cv-01593-MC
                                     )
7              v.                    )
                                     )    December 7, 2022, 2:51 PM
8   HEIDI MARIE BROWN,               )
                                     )
9              Respondent.           )
    _____ )

10

11

12

13                  COURT TRIAL

14             EXCERPT OF PROCEEDINGS

15     BEFORE THE HONORABLE MICHAEL J. MCSHANE

16       UNITED STATES DISTRICT COURT JUDGE

17

18

19

20

21

22

23

24

25

EXHIBIT 10 - PAGE 1 OF 10

1                              APPEARANCES

2

3    FOR THE PETITIONER:
                                DAVID B. STARKS
4                               McKinley Irvin PLLC
                                1501 4th Avenue
5                               Suite 1750
                                Seattle, WA 98101
6

7    FOR THE RESPONDENT:
                                KATELYN D. SKINNER
8                               Buckley Law PC
                                5300 Meadows Road
9                               Suite 200
                                Lake Oswego, OR 97035-8617
10

11

12

13

14

15

16   COURT REPORTER:     Kendra A. Steppler, RPR, CRR
                         United States District Courthouse
17                       District of Oregon
                         405 E. 8th Avenue, Room 2100
18                       Eugene, OR 97401

19

20                              *   *   *

21

22

23

24

25

EXHIBIT 10 - PAGE 2 OF 10

1              ***EXCERPT OF PROCEEDINGS***

2

3              THE COURT:  Can we start with wrongful removal?

4    Because I'm still not hearing you talk about --

5              MS. SKINNER:  The -- our arguments --

6              THE COURT:  -- the underlying agreement --

7              MS. SKINNER:  The --

8              THE COURT:  -- by which the children left for the

9    United States.  And, I agree, there are some credibility issues

10   with some of the explanations that don't make a lot of sense by

11   Mr. Paris.  But, I'll be honest, I'm not sure if the

12   explanation that your client gave about Exhibit 23 is

13   particularly credible.  I know she kept saying it's made out of

14   context.  But I've yet to see what other context there is,

15   especially in light of the fact that on October 7th, she filed

16   a petition totally revoking any interest in the

17   July 19th agreement.

18             MS. SKINNER:  Thank you, Your Honor.  And I'll

19   address both points.  As to the intent of Ms. Brown at the time

20   she entered into the July agreement, I think she testified,

21   credibly, that she negotiated that agreement for hours and

22   hours.  There was discussions back and fork about health

23   insurance and all of the conditions that were placed.  She had

24   already started to do the work to put those things --

25             THE COURT:  Right.

EXHIBIT 10 - PAGE 3 OF 10

1          MS. SKINNER:  -- in motion.  And if she had had a

2     plan to not follow through with the July agreement, then why

3     would she get her French visa renewed in September of 2022, or

4     take the steps to get it renewed?

5          THE COURT:  But what she told me is that she wanted

6     to leave her options open, which tells me that she believed she

7     had the unilateral ability to simply keep the children in the

8     United States.  And she certainly has -- is attempting to do

9     that by the October 7th filing.

10          MS. SKINNER:  And I'll address the October 7th filing

11     in just a moment with the testimony about keeping options open.

12     I think we need to look at that in light of the flip-flopping

13     that Mr. Paris had done at that point.  And I think her

14     credible testimony was, in discussions with her lawyer, it was

15     what do I do if he reneges on this again?  What can I do?

16     What -- could a plan be put into place if that happens?  I need

17     something with security.

18          And what we don't have in evidence is any evidence that

19     show that she took -- and I'll get to the October 7th custody

20     pleading in just a moment -- so that aside, she took no steps

21     to renege on the July agreement.  And, in fact, the opposite is

22     true.  She took all of the steps to keep that agreement upheld

23     and in place.

24          There's no evidence to show that there was an appointment

25     scheduled with an Oregon lawyer for July 29th, plus six months,

EXHIBIT 10 - PAGE 4 OF 10

1  so that she could go in there and get the petition filed.

2  There was no petition for custody that was drafted up and ready

3  to go so that on six months and a day, that that could be done.

4  Because she didn't take any steps to breach the agreement.

5       Now, why did she file Exhibit 49, the custody case in

6  Oregon? Not because that was part of her preplan, because, in

7  fact, the six months obviously hadn't expired at that point.

8  She did that because Dad had filed in France, on October 3rd, a

9  French custody case. And Ms. Brown was concerned that, again,

10 it was another reneging of a contract, and that Mr. Paris was

11 going to use the October 3rd French custody filing to again

12 yank the kids back.

13      And so the October 7th, 2022, filing had nothing to do

14 with I'm trying to now get UCCJDA jurisdiction. It had

15 everything to do with simply getting a status quo in place so

16 that the terms of the July agreement would be able to continue

17 in force. Because with the status quo, the kids are here for

18 the time being, in line with that one-year agreement.

19      Now, Mr. Paris' counsel had much to say about Mr. Paris'

20 illness. But I haven't heard any testimony or received -- I

21 didn't receive one piece of evidence brought into this court

22 about a single condition, symptom, or any impact that it had on

23 Mr. Paris' daily living, except that he takes some B12 vitamins

24 and goes and sees a doctor occasionally.

25      But, more importantly, the information about his disease

EXHIBIT 10 - PAGE 5 OF 10

1   was known to him at the time of the July agreement, which was
2   why all of those conditions were built into the July agreement,
3   which was why Ms. Brown went to all of the lengths that she did
4   to ensure that Mr. Paris' medical condition would be adequately
5   met in the U.S.
6           Mr. Paris indicates, in his closing argument, again, that
7   this is not a best interest determination in the court to date.
8   We know that.  The state court level will determine what's in
9   the kids' best interest.  He brought up a reference to
10  Exhibit 27, wherein Ms. Brown was indicating to Mr. Paris that
11  the kids were concerned for their dad.  They were afraid he was
12  going to die.  And that's because that's what he told them.  He
13  was manipulating them and said, "Your dad is going to die."
14          And so he's bringing his kids into the case.  And we have
15  evidence of that from just earlier this morning, where
16  Mr. Paris is messaging with Ms. Brown, just recently, saying,
17  you know, "I'm" -- basically -- "I'm telling the kids that
18  we're moving to Paris at the end of this court case.  So you
19  better get your act in gear."  And so we have evidence that
20  he's been bringing the kids into these inappropriate
21  communications.
22          Now, Mr. Paris argues, and his counsel argues in closing
23  argument, that he didn't consent to enrollment in Oregon
24  school.  But he sure consented to unenrollment in French school
25  well before even the July agreement.  That was something that

EXHIBIT 10 - PAGE 6 OF 10

1  they then remained unenrolled in the French system until much,

2  much later, when he attempted to reenroll the children there.

3      Now, he's indicating that he is not, quote, "on the lease

4  to the Oregon property." But he's an authorized resident of

5  that lease. He has the right to -- and that's how that was set

6  up. He also agreed to put the -- one of their children's

7  four-year musical program on hold for a year. That was done.

8  And so steps were taken to ensure that the parties' move for

9  one year was put into motion.

10      And the one-year pause on the program, of course, was also

11  agreed to by Ms. Brown. She didn't say that the children need

12  to be removed from school altogether and taken out of that

13  program. She went along and agreed, equally, with the proposal

14  that the children's schooling in France would be put on hold,

15  and that that program would be reserved for them.

16      Now, there's one other case that I'd like to bring to the

17  Court's attention if this Court finds that the facts fit this

18  situation. And that's the idea of whether or not Mr. Paris is

19  bringing this action prematurely having to do with the question

20  about anticipatory breach. And that is the Toren v. Toren

21  case, cited also in my briefing, 191 F.3d 23 --

22          THE COURT: Right.

23          MS. SKINNER: -- which talks about a father who was

24  petitioning to a claim that the mother had made an intent to

25  retain the children past their agreement. But that date had

EXHIBIT 10 - PAGE 7 OF 10

1  not been reached yet.  And the court held there that father's

2  argument was based on mother's future intent, and that the

3  father was seeking a judicial remedy for an anticipatory

4  violation of the Hague Convention.  But the Hague Convention

5  only provides a cause of action to petitioners who can

6  establish actual retention.  And so that was merely

7  anticipatory retention.

8      We've got the same facts here if the Court finds that

9  Ms. -- even if the Court does find that Ms. Brown has made an

10 anticipatory retention, which we argue she hasn't -- no steps

11 were taken -- the October 7th Oregon custody petition was for a

12 separate reason, again, to protect and preserve the July

13 agreement to keep the children here.

14      And so this -- and then I also want to touch, just

15 briefly, on habitual residence.  Because I think that --

16 depending upon if the Court finds there was a wrongful removal

17 or retention, that does not begin and end our discussion about

18 habitual residency being in France.  Because if the Court

19 finds, for example, that there was a wrongful removal or

20 retention, and if the Court sets the date of October 7th, for

21 example, I think there's still a pretty strong argument that,

22 on October 7th, the facts under a Monasky analysis show that

23 Oregon was, in fact, the children's habitual residence at that

24 time, because France had been abandoned.  And the evidence

25 shows that the children pretty quickly assimilated into their

EXHIBIT 10 - PAGE 8 OF 10

1  surroundings here in Oregon.

2       And so, in closing, Your Honor, we argue that there was no

3  wrongful removal or retention.  If there was, we argue the

4  defense of consent.  And if the Court finds that the defense of

5  consent is satisfied, that's the end of the discussion.

6  There's no more habitual residence argument.  Thank you, Your

7  Honor.

8            THE COURT:  Okay.

9       Reply?

10

11            (Excerpt of proceedings concluded at 3:02 PM.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 10 - PAGE 9 OF 10

1                        C E R T I F I C A T E

2

3                   Arnaud Paris v. Heidi Marie Brown

4                        Case No. 1:22-cv-01593-MC

5                        Court Trial Excerpt

6                        December 7, 2022

7

8        I certify, by signing below, that the foregoing is a true

9   and correct excerpt of the record, taken by stenographic means,

10  of the proceedings in the above-entitled cause.  A transcript

11  without an original signature, conformed signature, or

12  digitally signed signature is not certified.

13

14  /s/Kendra A. Steppler, RPR, CRR
    Official Court Reporter          Signature Date: July 31, 2023

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 10 - PAGE 10 OF 10