# EXHIBIT 14

1

2

3

4              IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                      FOR THE COUNTY OF JACKSON

6    In the Matter of:

7    HEIDI MARIE BROWN,
                                           Case No. 22DR17285
8              Petitioner,
                                           **RESPONDENT'S MOTION TO**
9        and                               **DISMISS FOR LACK OF SUBJECT**
                                           **MATTER JURISDICTION (ORCP 21**
10   ARNAUD PARIS,                          **A(1)(a))**

11             Respondent.                 **Hearing Requested**

12

13            **INFORMATION REQUIRED BY UTCR 5.050**

14       Time Requested for Argument:    3 hours

15       Telephone Conference Requested:    No

16       Attorney or Party More Than 25 Miles from Courthouse: Yes

17       Court Reporting Services Requested:    FTR

18            **CERTIFICATE OF COMPLIANCE WITH UTCR 5.010**

19       This motion does not require conferral prior to filing. Motions based on lack of

20   jurisdiction are exempt from the conferral rule. UTCR 5.010(1).

21                              **MOTION**

22       Respondent moves the court for an order dismissing the Petition for Dissolution

23   of Domestic Partnership and to Establish Custody, Parenting Time, and Child Support

24   ("Petition"), or in the alternative, dismissing the requests for relief concerning child

25   custody and parenting time, because this court lacks subject matter jurisdiction. Without

26   subject matter jurisdiction, this court has no authority to act on any claims for which

Page 1 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 1 OF 22

1    jurisdiction does not lie. Any judgment rendered without subject matter jurisdiction is
2    void.

3                              **POINTS AND AUTHORITIES**

4           In support of this motion, Father relies upon the following points and authorities:
5    ORCP 21A(1)(a); ORS 107.445; ORS 109.701-109.834; ORCP 68; the cases cited in
6    this motion; and the motions and declarations filed by Respondent or on his behalf in
7    this matter.

8                                      **ARGUMENT**

9    **1. Factual background.**

10          The parties are unmarried parents of 8-year-old twins Juliette and Eva. Petitioner
11   ("Mother") is an American citizen. Respondent ("Father") is both a French and American
12   citizen. The children lived with the parties in California from 2015, not long after they
13   were born, until August 2019.  Between 2017 and 2019 the family visited France several
14   times, staying in France for a total of 10 months over the course of those visits.  In
15   August 2019, the Family moved to Paris, France, where they stayed for nearly three
16   years.  From August 2019 to July 29, 2022, the children lived with the parties in Paris,
17   France.

18          Mother wanted to relocate with the family from France to Oregon.  Father
19   ultimately opposed any permanent relocation away from France but wanted the family
20   to remain intact and avoid a separation, if possible.  Mother and Father engaged in
21   mediation in France in July 2022 to resolve this conflict. Both parties had the benefit of
22   legal counsel during the mediation.

23          On July 19, 2022, they entered into a written settlement agreement that would
24   allow for the children to temporarily move with Mother to Oregon ("July Agreement"),
25   which is attached hereto as Exhibit 1 and incorporated herein. The July Agreement
26   provided that Mother and the children could go to Oregon for the summer and, if certain

Page 2 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 2 OF 22

1   conditions were met, remain in Oregon for the 2022-2023 school year ("July

2   Agreement"). The July Agreement provided that the children would return to France at

3   the end of the school year and spend the next school year in France. The July

4   Agreement further provides that if certain conditions pertaining to Father's health were

5   not met, then the family would return to France.

6        Although both parties assented to the July Agreement, Mother secretly planned

7   to violate the Agreement and not return the children to France in June 2023. Mother

8   and the children left France for Oregon on or about July 29, 2022 while Father remained

9   in France. He did not come to Oregon until August 19, 2022. Father had suspicions

10  that Mother did not intend on returning the children to France as the July Agreement

11  required. Then, on or about September 3, 2022, while in Oregon, Father learned of

12  Mother's intention to violate the July Agreement by keeping the children in Oregon

13  permanently. Father returned to France on or about September 5, 2022.

14       Father quickly took steps to rectify Mother's breach of the July Agreement. On or

15  about September 5, 2022 he retained an attorney in France to prepare an Application of

16  Return under the Hague Convention on the Civil Aspects of International Child

17  Abduction. He made a complaint the French police. On or about September 17 his

18  Application for Return under the Hague Abduction convention in France was filed. He

19  returned to Oregon from September 12 until October 6, 2022 to see the children and to

20  try and persuade Mother to return to France with the children. She refused. He then

21  returned to France for medical treatment.

22       On or about October 4, 2022, Father filed an action in Paris, France (his local

23  jurisdiction) seeking custody of and parenting time with the children. Mother was served

24  on October 11, 2022. The court in France has neither stayed the proceeding nor

25  declined to exercise jurisdiction. On October 7, 2022, Mother filed the instant action,

26  also seeking custody of and parenting time with the children. Father was not served

Page 3 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 3 OF 22

1    until November 10, 2022.  Mother alleges incorrectly in her petition that the children had

2    no home state at the time of her filing.

3           On October 20, 2022, Father filed a Petition for Return of Children Under the

4    Hague Convention on the Civil Aspects of International Child Abduction ("Hague

5    Petition") with the United States District Court, District of Oregon, Medford Division.  He

6    argued that Mother wrongfully removed the children from France because she intended

7    to keep them in Oregon in contravention of the July Agreement.  The parties agreed to

8    abate this matter while the Hague Petition was being litigated.

9           The federal district court in Oregon ruled on Father's Hague Petition on

10   December 7, 2022.  A transcript of the closing argument and that court's ruling is

11   attached hereto as Exhibit 2 and incorporated herein.  The court found that Paris,

12   France was the children's habitual residence.  Tr 46.  The court described the children's

13   connection to their home and community in France:

14          "The children were French citizens.  They spoke fluent French.  The
            attended French schools that had, you know, year-long programs at these
15          academies for music and dance.

16          "The girls were involved in sports.  They went to school and family
            excursions, regularly, throughout France.  They had school-age friends
17          and attended certainly visits with friends and birthday parties, those type
            of things.  They had extended family and social supports in France,
18          including a godfather.

19
            "So I'm finding that the children were fully assimilated to France and an
20          intensive fact inquiry points to the only conclusion that when the children
            left France for Oregon in July of [2022], France was their habitual
21          residence."

22
     Tr 46.  The district court ultimately concluded that the children had not been wrongfully
23
     removed from France to the United States because Father had, per the July Agreement,
24
     consented to the children coming to Oregon.  Furthermore, the children were not
25
     wrongfully retained here because, although Mother clearly expressed an intent to violate
26

Page 4 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 4 OF 22

1    the July Agreement by not returning the children to France in September 2023, she had

2    not yet violated the July Agreement. Tr 53. Father's Hague petition was thus denied.

3        After the conclusion of the Hague Convention proceeding, this case came out of

4    abatement. Father filed a Response to Mother's petition. The Response raised the

5    issue that the court lacked subject matter jurisdiction. Father's response noted a

6    custody proceeding that he had filed in France prior to the commencement of this case.

7    He simultaneously filed a motion to dismiss Mother's petition pursuant to ORCP

8    21A(1)(c) (another action pending) and 21A(1)(h) (failure to state ultimate facts

9    sufficient to constitute a claim). That motion was argued on March 24, 2023, and is

10    under advisement. Father has now filed the present motion to dismiss for the lack of

11    subject matter jurisdiction under the UCCJEA (ORS 109.701 et. seq.).

12        Father's custody proceeding in France went to trial on March 31, 2023. The

13    French court intends to issue its judgment on the merits on April 21, 2023.

14        While Mother and the children remain in Ashland, Father continues to live in

15    France. Father maintains an apartment in France and pays for the utilities on the

16    apartment. He pays a residency tax on his apartment because he is a French resident

17    and lives in this apartment. He has filed tax returns in France from 2019 through 2022

18    (the most recent tax year). To the extent he has filed tax returns in the United States for

19    those years, it has been as a non-resident. Father's doctors are in France, and he

20    continues to receive medical care there, as recently as March 31, 2023. He had

21    surgery in France in October, not long after he commenced the custody proceeding

22    there. He has medical insurance coverage in France. When he travels to the United

23    States, he has medical travel insurance through France.

24        Father's current employer is based in Texas, and he sometimes has to be there

25    for work. He is also able to work remotely from Oregon and from France. His job is

26    currently temporary and necessary for Father to afford the litigation concerning the

Page 5 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 5 OF 22

1    children, although his job may continue after litigation ends. He does not maintain any

2    residence in Texas. He uses short-term rentals or hotels instead. He has come to

3    Oregon to exercise parenting time with the children. When he does, he stays in short-

4    term rentals or a hotel; he has no fixed residence in Oregon. He has documentation

5    showing that when his parenting time in Oregon concludes, he returns either to France

6    or to his temporary job in Texas.

7         Father's decision to continue to live in France was purposeful. In the summer of

8    2022, while he was living in Paris, Father was diagnosed with a serious medical

9    condition that will lead to cancer at some point. In the summer of 2022, it appeared that

10   Father would need to undergo surgery in the fall, and that additional hospitalizations

11   would be necessary. He was advised by his doctor that he should be treated at a

12   hospital in Paris. This is why Father ultimately did not agree to a permanent relocation

13   to Oregon and why the terms of the July Agreement were conditional on his ability to

14   receive appropriate medical care and appropriate medical coverage in Oregon. Father

15   has excellent medical insurance coverage in France. His healthcare costs are

16   completely covered. If he leaves France for more than six months, he will lose that

17   coverage.

18   **2. Statutory Framework for Determining Jurisdiction under the UCCJEA.**

19        The Uniform Child Custody Jurisdiction and Enforcement Act, ORS 109.701 to

20   109.834 ("UCCJEA") governs whether the courts of Oregon have subject matter

21   jurisdiction to make a custody determination. "Custody determination" includes any

22   order or judgment for custody, visitation, or parenting time. ORS 107.704(3). The first

23   custody determination concerning a particular child is the "initial determination." ORS

24   109.704(8). The relief mother seeks would be the initial determination for these children.

25   "Commencement" of a proceeding means the filing of the first pleading in the

26   proceeding. ORS 109.704(5).

Page 6 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 6 OF 22

1    Jurisdiction to make an initial determination is governed by ORS 109.741. That

2    section sets forth four different bases for deciding which state has jurisdiction. The four

3    bases are not equal alternatives from which the court may choose; they are prioritized,

4    as explained below.

5          **A. Home State under the UCCJEA.** The first and primary basis for

6    determining subject matter jurisdiction under the UCCJEA is "home state" jurisdiction.

7    Under ORS 109.741(1)(a), a state has "home state" jurisdiction if:

> "This state is the home state of the child on the date of the
> commencement of the proceeding, *or* **was** the home state of the child
> within six months before the commencement of the proceeding and the
> child is absent from this state but a parent or person acting as a parent
> continues to live in this state;" (Emphasis added.)

The term "home state" is defined as:

> "[T]he state in which a child lived with a parent or a person acting as a
> parent for at least six consecutive months immediately before the
> commencement of a child custody proceeding. * * * Any temporary
> absence of any of the mentioned persons is part of the period."

ORS 109.704(7). Home state jurisdiction is prioritized over all other jurisdictional bases.

UCCJEA § 201, comment (1999). The UCCJEA treats foreign countries as states: "[a] court of

this state shall treat a foreign country as if it were a state of the United States for the purpose

of applying ORS 109.701 to 109.771." ORS 109.714(4).

          In this case, France, not Oregon, was the children's home state when this matter

was commenced. In fact, Mother has never argued that Oregon is the children's home

state because it clearly is not. Rather, Mother's position, as set forth in her petition in

this matter, is that the children had no home state on the date this matter commenced

because they had not been in Oregon or in France for six consecutive months prior to

the time she filed. Mother's read of the statute is incomplete, incorrect, and contrary to

Oregon case law.

///

Page 7 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 7 OF 22

1          **i. Extended Home State Provision.** Mother's position with respect

2    to home state jurisdiction focuses exclusively on where the children lived in the six

3    months immediately prior to the commencement of this action.  However, that is not the

4    only six-month period that must be considered when analyzing home state jurisdiction.

5    Because the children were not living in France on the date Mother filed this action, we

6    must determine if France was the children's home state at any time during the six

7    months before the filing date.  If so, France would have initial home state jurisdiction.

8    ORS 109.741(1)(a).  This "extended home state provision" of the UCCJEA comes into

9    play in cases like this one, where a child has acquired a new residence less than six

10   months before the commencement of a custody proceeding.  UCCJEA § 201, comment

11   (1999).  In such cases, the court must evaluate whether the child had a "home state" at

12   any point within the six-month period prior to the date of commencement of the action.

13   Stated differently, the court must determine:

14          "whether at any point throughout the six months preceding the date of
            filing, it could be said that on a particular date, the child had lived with a
15          parent in a particular state for at least six consecutive months.  The
            purpose behind this statutory scheme is to extend a state's home state
16          status throughout the six-month period it would take for another state to
            become the child's new home state."
17

18   *Prizzia v. Prizzia*, 58 Va. Ct. App. 137, 149 (2011).  The analysis in *Prizzia* is

19   consistent with the recent Oregon Court of Appeals case, *D.G. v. Marks*, 324 Or App

20   195 (2023) (memorandum opinion).  In that case, the child, age 10, had lived in

21   Montana from birth until March 25, 2021, when the child began living in Oregon with the

22   child's mother.  On September 14, 2021, mother obtained a FAPA restraining order in

23   Oregon that included an award of custody of the child to mother.  The child's father

24   challenged the custody order portion of the FAPA, arguing that Oregon lacked subject

25   matter jurisdiction under the UCCJEA.  The Court of Appeals agreed with father.  It

26   explained:

Page 8 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 8 OF 22

1

2

3

4

5

> "Here, the trial court did not have subject matter jurisdiction over [the child] under ORS 109.741(1)(a), because [the child] had not lived in Oregon for at least six consecutive months immediately before filing the first pleading. * * * Therefore, Oregon was not [the child's] home state under the UCCJEA, and the trial court did not have jurisdiction under ORS 109.741(1)(a). * * * Rather, it appears that Montana, not Oregon, was [the child's] home state when the proceeding commenced * * *."

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

*Id.* at 198.  The Court of Appeals rejected the notion that, because the child had moved from Montana to Oregon and had not yet been in Oregon for six consecutive months, that the child had no home state (as Mother argues here).  Although *D.G.* is a memorandum opinion and non-precedential, it nonetheless demonstrates a clear and concise analysis and application of the extended home state provision of ORS 109.741(1)(a) by the Oregon Court of Appeals.  The fact that the case is non-precedential suggests that the Court of Appeals was doing nothing novel or interesting in the case; it merely applied the plain language of the statute.  ORAP 10.30(2)(b) (outlining relevant factors to be considered in determining whether an opinion will be precedential, including whether the opinion establishes a new legal principal or rule, or clarifies existing law; whether the opinion decides a novel issue; whether the opinion resolves a recurring legal issue with no clear precedent; whether the opinion criticizes existing law; whether there are separate concurring or dissenting opinions that the author has requested be precedential; and whether the opinion resolves a conflict among existing nonprecedential opinions).  The Court of Appeals did nothing particularly remarkable in deciding the jurisdictional issue in *D.G.* – it simply applied the plain language of ORS 109.741(1)(a).

23

24

25

26

Mother commenced this action on October 7, 2022.  Thus, the question is whether at any time between April 7, 2022 and October 7, 2022, the children had lived in France for at least six consecutive months.  The answer is clearly yes.  The children lived in France with both parents from 2019 until July 29, 2022 when they came to

Page 9 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 9 OF 22

1  Oregon with Mother.  Thus, when Mother commenced this action, France was the still

2  the home state of the children under the "extended home state" provision of the

3  UCCJEA.

4       The UCCJEA commentary suggests that *Prizzia* and *D.G.* were correctly

5  decided.  In discussing Section 208 [Jurisdiction Declined by Reason of Conduct; ORS

6  109.764]:

> "Since there is no longer a multiplicity of jurisdictions which could take
> cognizance of a child-custody proceeding, there is less of a concern that
> one parent will take the child to another jurisdiction in an attempt to find a
> more favorable forum. Most of the jurisdictional problems generated by
> abducting parents should be solved by the prioritization of home State in
> Section 201 [ORS 109.741]; the exclusive, continuing jurisdiction
> provisions of Section 202 [ORS109.744]; and the ban on modification in
> Section 203 [ORS 109.747]. **For example, if a parent takes the child
> from the home State and seeks an original custody determination
> elsewhere, the stay-at-home parent has six months to file a custody
> petition under the extended home state jurisdictional provision of
> Section 201 [ORS 109.741], which will ensure that the case is
> retained in the home State.**" (Emphasis added).

15  UCCJEA § 208, comment (1999).  This commentary perfectly describes the

16  instant case.  Mother removed the children from their home state in France and

17  brought them to Oregon. (The reason for the children's removal is immaterial to

18  the home state analysis.  UCCJEA § 201 comment (1999) ("Under this act, it is

19  no longer necessary to determine why the child has been removed")).  Father

20  had at least until January 29, 2023 – six months after the children left France – to

21  file a custody proceeding in France because France, not Oregon, has home state

22  jurisdiction under the extended home state provision of the UCCJEA.

23       A further requirement of the "six-month extended home state provision," is that a

24  parent or person acting as a parent continues to live in the purported home state.  Thus,

25  for Father to prevail on his argument that France is the children's home state because

26  ///

Page 10 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 10 OF 22

1  they lived there for six consecutive months within the six-month period prior to the

2  commencement of this action, then Father must "continue to live" in France.

3          Father, in fact, continues to live in France.  Father is a French citizen.  He

4  continues to own an apartment in France.  He pays taxes as French resident and has

5  filed resident tax returns there for the past four years.  He maintains medical insurance

6  coverage in France and receives medical care there.  Father has visited the children

7  frequently since they came to Oregon, but he has never established a residence here.

8  He does not own or rent real property in the United States, save for short-term-rentals

9  or hotels.  When he is done visiting the children in Oregon or with his temporary job in

10  Texas, he ultimately returns to his home in France.

11          Father's time away from France to visit the children or attend to work in the

12  United States does not defeat the requirement that he continue to live in France for this

13  section of the UCCJEA to apply.  In fact, the UCCJEA contemplates this situation.

14  Under ORS 109.704(7), "[h]ome state" means "the state in which a child lived with a

15  parent or a person acting as a parent for at least six consecutive months immediately

16  before the commencement of a child custody proceeding. * * * Any temporary absence

17  of **any of the mentioned persons** is part of the period."  Any time that Father spends

18  away from France – in Oregon to spend time with the children, or in Texas for work – is

19  a mere temporary absence from France.  Father ultimately returns to his home in

20  France – to the apartment he owns there (the only residence he maintains) and to the

21  doctors that continue to treat him there.  As explained in greater detail, below, a

22  temporary absence can be for a relatively long period of time, even if the individual does

23  not return to the home state during the course of their absence.  See Shepherd v.

24  Lopez-Barcenas, 200 Or App 692 (2005) (holding that the mother and child's absence

25  from the home state for one year while mother obtained a master's degree was a

26  "temporary absence" within the meaning of ORS 109.704(7).)

Page 11 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 11 OF 22

1       There is no evidence to support a finding that Father lives anywhere but in

2   France.  If he does not live in France, then where does he live?  In Oregon, where he

3   comes solely to spend time with his children and where he maintains no residence?  In

4   Texas where his job is located and where he occasionally works, but also maintains no

5   residence?  Because Father continues to live in France, save for temporary absences to

6   work or to see his children, and because the children had lived in France for more than

7   six consecutive months within the six-month period prior to the filing of this matter,

8   France has home state jurisdiction under the UCCJEA.

9                       ii.  Temporary Absence from France.  Furthermore, France has

10  home state jurisdiction because the children are only temporarily absent from France.

11  Under ORS 109.704(7), when defining what state qualifies as the home state, any

12  temporary absence from the home state counts toward meeting the six-month period

13  required by ORS 109.741(1)(a).  The two most recent cases to address the meaning of

14  "temporary absence" demonstrate that, in this case, the children's presence in Oregon

15  is a temporary absence from France and, accordingly, France continues to be their

16  home state.

17      The facts in *Shepherd v. Lopez-Barcenas* are strikingly similar to the facts of this

18  case.  In *Shephard*, mother and father lived in Mexico, where their child was born.  In

19  September 1999, mother and the child moved to Ashland, Oregon so that mother could

20  complete a one-year master's degree program at Southern Oregon University.  When

21  mother left, the parties agreed that she would return to Mexico when she finished her

22  degree.  One month after mother and the child moved to Ashland, mother told father

23  that she wanted to end their relationship, but that she and the child would be returning

24  to Mexico when she completed her program (albeit to a different location than the family

25  home).  In January 2000, father moved to Oregon and filed here to establish parentage,

26  custody and parenting time.  In December 2000, the Jackson County Circuit Court

Page 12 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 12 OF 22

1    entered a judgment for custody and parenting time.  Months later, mother moved to

2    vacate the custody and parenting time judgment, arguing that the trial court lacked

3    jurisdiction under the UCCJEA.  *Id.* at 694-95.  The Court of Appeals agreed with

4    mother, holding that:

5        "[A]t the time father commenced the filiation proceeding, N's home state
         was Mexico. The parties had lived in Mexico since N's birth in 1998.
6        Mother and N had lived in Oregon for only three months at the time that
         father filed his petition, and mother intended to return with N to Mexico.
7        Their absence from Mexico was only temporary, and the time spent
         in Ashland is therefore considered to be time in Mexico for the
8        purpose of determining the home state. ORS 109.704(7). Accordingly,
         mother and N are considered to have lived in Mexico for the six-month
9        period before the commencement of the proceeding, and Mexico was N's
         home state. For that reason, Oregon courts lacked jurisdiction to make an
10       initial custody determination for N. The circuit court correctly vacated the
         custody and parenting-time provisions of the December 2000 judgment."
11

12       *Id.* at 696.  Father argued that even if mother intended to return to Mexico, he

13   intended to remain permanently in Oregon.  Thus, according to father, the child had no

14   home state, so Oregon could assert jurisdiction because the child had a significant

15   connection to Oregon.  The Court dismissed that argument.  It reasoned that,

16   regardless of father's intention, mother was still only temporarily absent from Mexico.

17   "Under ORS 109.704(7), '*any* temporary absence of any of the mentioned persons'

18   (emphasis added) is considered to be part of the period during which [the child] lived in

19   Mexico for the purpose of determining the home state." *Id.* at 697 (emphasis added in

20   original.)

21       As in *Shephard*, the Father and the children are present in Ashland on a

22   temporary basis for the purpose of attending school for the 2022-2023 school year.  The

23   July Agreement expressly provides that the parties never mutually intended for the

24   children to stay in Ashland on a permanent, ongoing basis beyond the end of the 2022-

25   2023 school year.  Even if Father had remained in Ashland with Mother and the

26

Page 13 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 13 OF 22

1   children, the absence from France would still be a "temporary absence," just as in

2   *Shephard.* Mother's secret intention to remain in Ashland with the children does not

3   defeat the temporary nature of the children's stay here.

4       *Schwartz and Battini*, 289 Or App 332 (2017) stands in contrast to *Shephard.* In

5   that case, the parties were the married parents of one child, who had been born in

6   Oregon. Mother was a United States citizen from Oregon and father was a French

7   national. In the two-and-a-half years since the child's birth, the family lived either in

8   Oregon, France or Indonesia at various times, never for longer than seven months. The

9   last place the family lived together was in Indonesia. They were there just shy of six

10  months when mother left with the child and came to Oregon to see friends and family.

11  Shortly thereafter, father moved from Indonesia to Singapore, because the family had

12  been contemplating moving there. Around the same time, mother decided to separate

13  from father and not return to Indonesia. Mother obtained a judgment in Oregon that

14  addressed custody and parenting time. *Schwartz*, 289 at 335.

15      Father later challenged that judgment and asserted on appeal that Indonesia –

16  not Oregon – had jurisdiction to make an initial custody determination, because

17  Indonesia was the child's home state and the subsequent time the child was in Oregon

18  was a "temporary absence" within the meaning of the UCCJEA. *Id.* at 337. In deciding

19  the case, the Oregon Court of Appeals adopted a "totality of the circumstances test" for

20  determining whether or not an absence from a putative home state qualifies as a

21  "temporary absence" under the UCCJEA. *Id.* at 342-43. This test "looks at all the

22  surrounding circumstances of a purported temporary absence, including intent of the

23  parties and duration of the absence, to assess whether the absence should be treated

24  as a temporary departure from the putative home state." *Id.* at 342. In adopting this

25  test, the Court specifically notes that it is consistent with their prior decision in

26  *Shephard. Id.* at 343.

Page 14 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 14 OF 22

1           The Court of Appeals concluded that the child's absence from Indonesia was not

2    a "temporary absence," and, therefore, the child did not have a home state within the

3    definition of the UCCJEA.  In reaching that determination, the Court cited the following

4    facts: "the parties lived sequentially in different places without firm plan either to stay in

5    one place for a particular time, or about where to live next[]"; the family was planning on

6    leaving Indonesia for Singapore at the time the child left with mother to visit Oregon, so

7    there was no concrete plan for mother and the child to return to Indonesia; and "the

8    parties intended their time in Indonesia to be temporary." *Schwartz*, 289 at 343.

9           The facts in *Schwartz* do not match the facts of this case.  Unlike *Schwartz*, the

10   parties and their children did not move frequently between jurisdictions staying for

11   relatively brief periods.  Prior to July 29, 2022, they had been in France for three years.

12   Unlike *Schwartz*, there was a written agreement expressing the parties' intent for the

13   children to return to France after, at most, one year in Oregon.  And, unlike *Schwartz*,

14   the parties did not intend for their time in France to be temporary.  France is Father's

15   home and the home to which he expects the children to return, consistent with the July

16   Agreement.

17          In light of these cases, it is clear that the facts of this case support a finding that

18   the children's departure from their home state in France to Oregon was only temporary.

19   When the children came to Oregon, France had been their home for the prior three

20   years; they had been in Oregon less than three months when Mother filed this action.

21   The July Agreement provided that the children would return to France on August 23,

22   2022 if certain conditions were not met.  Even if those conditions were met, the children

23   were to remain in Oregon only until the end of the current school year, when they would

24   return to France for the 2023-2024 school year.  However, if further conditions

25   pertaining to Father's medical care could not be met, the July Agreement provides that

26   "the family will return to France."

Page 15 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 15 OF 22

1    Considering the totality of the circumstances, the children's absence from France

2    is only temporary.  Therefore, France is and continues to be, their home state under the

3    UCCJEA.

4         **B.  Other Bases for Jurisdiction under the UCCJEA.**  If Oregon is not

5    a child's home state, it may still have subject matter jurisdiction under ORS 107.741(b)

6    to (d), which confer jurisdiction on a state that is not a home state in three specific

7    circumstances.  As the following analysis demonstrates, none of those circumstances

8    applies in this case.

9              **i.  Significant Connection.**  ORS 109.741(1)(b) confers jurisdiction to

10   Oregon if:

11            "A court of another state does not have jurisdiction under
             subsection (1)(a) of this section, *or* a court of the home state of the
12           child has declined to exercise jurisdiction on the ground that this
             state is the more appropriate forum under ORS 109.761
13           [inconvenient forum] or 109.764 [jurisdiction declined by reason of
             conduct], *and*:
14
              "(A) The child and the child's parents, or the child and at
15            least one parent or a person acting as a parent, have a
              significant connection with this state other than mere
16            physical presence; and

17            "(B) Substantial evidence is available in this state concerning
              the child's care, protection, training and personal
18            relationships;"

19   The first part of ORS 109.741(1)(b) does not apply ("[a] court of another state does not

20   have jurisdiction under subsection (1)(a) of this section") because another state, France,

21   has home state jurisdiction for the reasons explained above.

22        The second part of ORS 109.741(1)(b) ("a court of the home state of the child

23   has declined to exercise jurisdiction on the ground that this state is the more appropriate

24   forum under ORS 109.761 [inconvenient forum] or 109.764 [jurisdiction declined by

25   reason of conduct]") also does not apply because the court in France has not declined

26   to exercise jurisdiction.  Moreover, neither Mother nor the children have a significant

Page 16 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 16 OF 22

1   connection with Oregon beyond mere physical presence.  Prior to July 29, 2022, the

2   children had not lived in Oregon since they were approximately three months old.

3   Additionally, the most substantial evidence about the children's "care, protection,

4   training and personal relationships" is in France, where they lived for three years prior to

5   their temporary move to Ashland in July 2022.

6          This case fails to meet any of the requirements under ORS 109.741(1)(b).

7   Therefore, this part of the statute cannot form the basis for this court to exercise subject

8   matter jurisdiction.

9                  **ii.    More Appropriate Forum.**  ORS 109.741(1)(c) confers jurisdiction

10  to Oregon if:

11          "All courts having jurisdiction under subsection (1)(a) or (b) of this
            section have declined to exercise jurisdiction on the ground that a
12          court of this state is the more appropriate forum to determine the
            custody of the child under ORS 109.761 [inconvenient forum] or
13          109.764 [jurisdiction declined by reason of conduct]."

14          As discussed above, France has home state jurisdiction under ORS

15  109.741(1)(a) and France has not declined to exercise jurisdiction over the case there.

16  Therefore, this part of the statute also cannot provide a basis for this court to exercise

17  subject matter jurisdiction.

18                 **iii.    No Other Jurisdiction.**  ORS 109.741(1)(d) confers jurisdiction to

19  Oregon if: "[n]o court of any other state would have jurisdiction under the criteria

20  specified in subsection (1)(a), (b), or (c) of this section."  Again, France clearly has

21  home state jurisdiction under ORS 109.741(1)(a).  Therefore, this part of the statute

22  does not apply and cannot confer jurisdiction in Oregon.

23          **C. Conclusion.**  By carefully reviewing the text and official comments of the

24  UCCJEA, as well applicable case law, it is clear that the children were not without a

25  home state when Mother filed this proceeding.  France was still the children's home

26  state, and France (not Oregon) appropriately has jurisdiction to make an initial custody

Page 17 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 17 OF 22

1   determination.  There are two ways of establishing home state jurisdiction under the

2   UCCJEA.  The facts and the law can support a finding that France meets both of these

3   requirements.  Under the "extended home state provision" of the UCCJEA, France is

4   the children's home state because at the time Mother commenced this matter, the

5   children had lived in France for six consecutive months within the six months prior to

6   the filing of this case (between April 7, 2022, and October 7, 2022), and Father

7   continues to live in France.  Additionally, the children's move from France to Oregon

8   was a "temporary absence," within the meaning of ORS 109.704(7) and, therefore, any

9   time spent by the children in Oregon since July 29, 2022, counts toward the six-month

10  requirement in the first part of ORS 109.741(1)(a).  Either way, France is the children's

11  home state.

12          Mother's read of the UCCJEA fails to give the statute full effect by ignoring the

13  plain language of ORS 109.741(1)(a) and 109.704(7).  Mother contends that, because

14  the children had not been physically present in either France or Oregon for six

15  consecutive months prior to her filing this matter, the children had no home state.  That

16  contention is *argumentum ad absurdum*.  Under Mother's interpretation of the UCCJEA,

17  any parent could remove a child from their habitual residence (with or without the other

18  parent's consent), move the child to a new jurisdiction and, within the first six months,

19  initiate a custody proceeding in the new jurisdiction by claiming that the child has no

20  home state because the child had not lived in any one jurisdiction for six consecutive

21  months prior to filing.  That would defeat the purpose of the UCCJEA, which is, in part,

22  to prevent parents from forum shopping their custody disputes, as Mother attempts to

23  do here.  UCCJEA § 101, comment (1999) (describing the purposes of the UCCJEA,

24  including "[d]iscouraging the use of the interstate system for continuing controversies

25  over child custody;" and to "[d]eter abductions of children.").

26  ///

Page 18 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 18 OF 22

**3. Simultaneous Proceedings Under the UCCJEA.**

Mother has argued that this Court must comply with ORS 109.757(1), which is part of the UCCJEA that addresses "simultaneous proceedings." The statute provides, in relevant part:

> "(1) Except as otherwise provided in ORS 109.751 [temporary emergency jurisdiction], a court of this state may not exercise its jurisdiction under ORS 109.741 to 109.771 if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with ORS 109.701 to 109.834, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under ORS 109.761.

ORS 109.757(1) only applies if Oregon has a viable claim to jurisdiction under the UCCJEA ("its jurisdiction"). Since France is the children's home state, Oregon has no viable claim to jurisdiction. It would be different, for example, if the family had moved from jurisdiction to jurisdiction without remaining in any one place for six months or more, with no intent on staying in any one place long term. Those were the facts in *Schwartz and Battini*. In that case, there was no "home state," so the Court had to examine alternate bases to assert jurisdiction. *Schwartz*, 332 at 334. It is conceivable that, under that set of facts, two states could have a viable claim to jurisdiction, in which case the courts should confer to determine which state is the more convenient forum. The convenience of the forum is a consideration under the alternate bases for jurisdiction under ORS 109.741(1)(b)-(d), but not under the primary analysis of jurisdiction under the UCCJEA: home state jurisdiction.

Even if Oregon had a viable claim to jurisdiction in this case such that ORS 109.757(1) applied, it would, under the terms of the statute, be prohibited from exercising its jurisdiction because France has not dismissed or stayed the custody proceeding there. To the contrary, it held a trial on March 31 and should be making a custody determination on April 21. Provided that the French court accepts jurisdiction

Page 19 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 19 OF 22

1   and makes a custody decision later this month, then Oregon will have no further basis

2   to act.  *See* ORS 109.747 (prohibiting Oregon from modifying another jurisdiction's child

3   custody determination, except in limited circumstances that would not apply to this

4   case).

5           The UCCJEA commentary supports Father's position that ORS 109.757(1) does

6   not apply because the children have a home state in France.  The commentary on

7   Section 206 of the UCCJEA (identical to ORS 109.757) explains that:

8           "This section represents the remnants of the simultaneous proceedings
            provision of the UCCJA § 6 [which preceded the current UCCJEA]. The
9           problem of simultaneous proceedings is no longer a significant issue. Most
            of the problems have been resolved by the prioritization of home state
10          jurisdiction under Section 201 [ORS 109.741(1)]; the exclusive, continuing
            jurisdiction provisions of Section 202 [ORS 107.744]; and the prohibitions
11          on modification of Section 203 [ORS 109.747]. If there is a home State,
12          there can be no exercise of significant connection jurisdiction in an initial
            child custody determination and, therefore, no simultaneous proceedings.
13          Of course, the home State, as well as the State with exclusive, continuing
            jurisdiction, could defer to another State under Section 207 [inconvenient
14          forum; ORS 109.761].  However, that decision is left entirely to the home
15          State or the State with exclusive, continuing jurisdiction.

16          "Under this Act, the simultaneous proceedings problem will arise only
            when there is no home State, no State with exclusive, continuing
17          jurisdiction and more than one significant connection State. For those
18          cases, this section retains the "first in time" rule of the UCCJA. Subsection
            (b) retains the UCCJA's policy favoring judicial communication.
19          Communication between courts is required when it is determined that a
            proceeding has been commenced in another State."
20
21          UCCJEA § 206, comment (1999).  Because France is the children's home state,

22   Oregon does not have jurisdiction or even a viable claim to jurisdiction.  Furthermore,

23   because Father's custody proceeding in France commenced prior to Mother's filing in

24   this court, the requirements of ORS 109.757(1) do not apply.

25          The only way Oregon *could* have a viable claim to custody is if France declined

26   to exercise jurisdiction.  Oregon would still have to contend with ORS 109.764, which

Page 20 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 20 OF 22

1  requires it to decline to exercise jurisdiction if a parent has engaged in "unjustifiable

2  conduct" to invoke the jurisdiction of the state. Mother deceived Father so she could

3  remove the children from France and bring them to Oregon, where she seeks a custody

4  determination. This is the precise kind of "unjustifiable conduct" that the UCCJEA is

5  designed to prevent. If Oregon were ever given a legitimate opportunity to assert

6  jurisdiction, the court must decline to exercise jurisdiction on that basis. If this court is

7  inclined, after conferring with the court in France, to assert jurisdiction under ORS

8  109.741(1)(b)-(d), Respondent requests the court set a further hearing for the court to

9  receive testimony and additional evidence of the parties to address the application of

10  ORS 109.764.

11  **4. Attorney Fees, Costs, and Disbursements.**

12        If this motion is contested, Respondent should be awarded his reasonable

13  attorney fees, costs, and disbursements herein pursuant to ORS 107.135, ORS

14  107.445, and ORCP 68. *See also Dornbusch and Dornbusch*, 195 Or App 61, 71 (2004)

15  (holding that the award of attorney fees to a prevailing party is at the Court's discretion).

16

17        Dated this __18__ day of April, 2023.

18

19                    SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.

20

21                    By: s/Thomas A. Bittner
                      Thomas A. Bittner, OSB #90178

22                        Attorneys for Respondent
                      811 SW Naito Pkwy. Suite 500

23                        Portland, OR 97204
                      (503) 223-4131

24                        (503) 223-1346

25

26

Page 21 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 21 OF 22

1      ## CERTIFICATE OF SERVICE

2      I hereby certify that I served the foregoing **RESPONDENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)** on the
3      following party:

4                              Ryan Carty
                               Carty Law P.C.
5                              P.O. Box 4628
                               Salem, OR 97302
6                              ryan@cartylawpc.com

7      By the following method or methods:

8      _____ by **mailing** full, true, and correct copies thereof in sealed, first class postage
       prepaid envelopes, addressed to the attorneys(s) as shown above, the last known office address of
9      the attorney(s), and deposited with the United States Postal Service at Portland, Oregon on the date
       set forth below.
10
       __X__ by **emailing** full, true, and correct copies thereof to the attorney(s) at the email address
11     shown above, which is the last known email address for the attorney(s) office, on the date set forth
       below.
12
       _____ by **faxing** full, true, and correct copies thereof to the attorney(s) at the fax number(s)
13     shown above, which is the last known fax number for the attorney(s) office, on the date set forth
       below.  The receiving fax machines were operating at the time of service and the transmission was
14     properly completed.

15     _____ by selecting the individual(s) listed above as a service contact when preparing this electronic
       filing submission, thus causing the individual(s) to be served by means of the **court's electronic filing
16     system**.

17             DATED this _____18th_____ day of   April 2023

18
                               SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
19

20

21             By:s/Thomas A. Bittner_____
                  Thomas A. Bittner, OSB #90178
22                Attorneys for Respondent

23

24

25

26

Page 22 – RESPONDENT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (ORCP 21 A(1)(a)

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 14 - PAGE 22 OF 22