# EXHIBIT 15

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

In the Matter of:

HEIDI MARIE BROWN,

        Petitioner,

    and

ARNAUD PARIS,

        Respondent.

Case No. 22DR17285

**DECLARATION OF TERRENCE RICHOUX ABOUT REGISTRATION (EXEQUATUR) OF A US JUDGMENT IN FRANCE**

1. My name is Terence RICHOUX. I am a licensed and practicing attorney at law in Paris, France specialized in international private international law, especially the enforcement of foreign family judgments in France. I represented Mr. Arnaud Paris in a court case before the family judge of the Paris Court. That case was against Ms. Heidi Brown. The claims adjudicated by the French court concerned the care, custody, and control of the minor children of the parties, rights of visitation as well as support as appropriate between the parties for their minor children. The court granted full custody of the children to Mr. Arnaud PARIS on April 21, 2023.

2. The recognition and enforcement of a foreign judgment in France goes through a specific process called *Exequatur*.

3. Exequatur refers to both the procedure and the writ of execution, which are used when a foreign Judgment needs to be enforced in France. This terminology is mostly used in Latin countries such as France, Spain, Italy and Portugal.

//

4. All foreign Judgments, court decisions or arbitral awards are not automatically enforceable in France. It is an essential issue for many foreigners who want to assert their rights in in the country since, without an official recognition, the Judgment they obtained will have no effect.

5. The exequatur proceeding is governed by French law and international treaties. Although a new treaty has been signed by France and the US, at the time of this affidavit it has not been ratified in the US.

6. Foreign judgments regarding custody rights can be automatically recognized and enforced in France in some cases. However, it is not the case when France already ruled on the same subject matter. Therefore, for a US custodial decision to be valid in France **it has to go through the French process of exequatur.**

7. Article 509 of the French Code of civil procedure provides that: *Judgements rendered by foreign Courts and deeds received by foreign officers shall be enforceable on the territory of the French Republic in the manner and under the circumstances specified by law.*

8. This article is interpreted and completed by the decisions of the Cour de cassation (the French Supreme Court). In the 2007 *Cornelissen* case (*Cornelissen* Cass.Civ February 20th, 2007 n°05-14082), the Cour de cassation ruled that French courts must verify that the foreign Judgment meets **3 conditions.** The French judge will verify that:

   A) The foreign Court has proper jurisdiction under French law,
   B) The foreign Judgment complies with French procedural and substantive public policies,
   C) The foreign Judgment was rendered without fraudulent forum shopping (evasion of the law)

9. These 3 conditions apply cumulatively which means that the foreign Judgment's recognition will be denied if one of them is not met. The conditions set forth in the 2007

1  *Cornelissen* case apply in the absence of international treaties which is the case for the
2  US.
3  10.   There is no automatic way to register a foreign custodial determination in France
4  like it is the case in the US with the UCCJEA statutes, in which someone can simply
5  register that judgment and if the other party doesn't object to that registration, it becomes
6  automatically accepted and enforceable, in full force and effect as if it was a custodial
7  determination of that state.
8  11.   Firstly, as in all matters, it is the judge's duty to verify the international regularity of
9  decisions rendered in matters of civil status. (Civ. 1st, January 29, 2014, No. 12-28.953),
10 this verification bearing on the same conditions as for exequatur (Civ. 1st, January 7,
11 1964, Munzer, JCP G 1967, II, 13590, Civ. 1st, February 20, 2007, No. 05-14.082,
12 Cornelissen).
13 12.   This verification must take place automatically, even in the absence of contestation
14 by the parties, as the Court of Cassation explicitly stated, declaring that the French judge
15 "must, ex officio, verify whether the foreign decision meets the conditions required to be
16 declared enforceable in France and note the result of his examination in his decision"
17 (Civ. 1st, November 9, 1971: JCP G 1971, IV, p.292).
18 **13.**   The process of exequatur in France has to be approved by a French judge, and
19 for the US, it even involves the participation of the French District Attorney.
20 **14.   As a result, in all cases, the parties can't agree to have a judgement**
21 **registered in France on their own without the validation of a French Judge.**
22 15.   Which means that for a US custodial decision to be valid in France, a French judge,
23 after receiving the analysis of the DA, will have to ensure that **all of the three conditions**
24 **stated above are met for a contradictory US judgment to be recognized and**
25 **enforced in France.**
26 //

Page 3 -  DECLARATION TERRENCE RICHOUX ON
REGISTRATION OF A CUSTODY US JUDGMENT IN FRANCE

EXHIBIT 15 - PAGE 3 OF 4

16. And this is **true even if both parties seek to register and enforce a US judgment in France**.

17. Miss Brown's judgment requires that for Mr. Paris, to be allowed to see his children in Oregon, he will have to register in France that Oregon judgment from December 28th, 2023.

18. The fact that a French Court already ruled that it has proper jurisdiction in this particular custodial case means that the first condition of the Cornelissen case is not met.

19. Furthermore, the fact that Mr. PARIS was not allowed to defend himself, either personally or through his lawyer, constitutes a violation of the adversarial principle and the rights of defense, and therefore a violation of French international public order.

20. Therefore, the second condition of the Cornelissen case is not met.

21. It is my opinion that even if the parties were to not argue for or against the recognition and enforcement of the Oregon judgment, French courts would consider, on their own, that at least two out three conditions set forth by the Cornelissen case are not met.

22. It is highly unlikely that a French Court would validate a US judgment obtained under these conditions, even if Mr. Paris were to agree to the registration as it is out of the parties' control.

23. I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

Dated: May 27th, 2024

By: Terence RICHOUX