# EXHIBIT 44

# IN THE CIRCUIT COURT OF THE STATE OF OREGON
# FOR THE COUNTY OF JACKSON
## Family Law Department

In the Matter of:

HEIDI MARIE BROWN,

    Petitioner,

and

ARNAUD PARIS,

    Respondent.

Case No.: 22DR17285
Related Case No.: 23DR08269

DECLARATION OF CLÉMENCE BRASSENS

I, Clémence Brassens, am over the age of 21 years and competent to testify in this matter. I make this declaration based on my personal knowledge and belief.

1. I am an attorney based out of Paris, France. I have been practicing family law for approximately 12 years.

2. Beginning on or about March 27, 2023, I have acted as legal counsel for the Petitioner in this case, Heidi Brown. My work for the Petitioner has been done primarily in regards to the French case number RG 22/38495 7922101261-AD. I will refer to this case as the "French case" throughout this declaration.

3. As part of my representation of the Petitioner, I have reviewed documents, performed legal analyses by applying facts as I understood them to relevant laws, and have appeared on Petitioner's behalf in at least one court hearing.

4. On March 31, 2023, I appeared in a court hearing on Petitioner's behalf. I believed that the March 31, 2023 hearing would likely only concern the French court's

Page 1 - DECLARATION OF CLÉMENCE BRASSENS

Buckley Law, PC
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Ph: 503-620-8900 / Fax: 503-620-4878
tlm@buckley-law.com

EXHIBIT 44 - PAGE 1 OF 16

jurisdiction. Most frequently, French judges will determine jurisdiction first, and then order postponement and determine custody at a later hearing. My belief was based on my legal knowledge and experience, as well as the document attached as **Exhibit 1**. This document, referred to as a Conclusions D'Incompetence, is focused primarily on jurisdiction.

5. Based on my legal knowledge, experience, and the attached Exhibit 1, I informed Petitioner that the hearing would likely only concern jurisdiction of the French court and that, accordingly, I would not develop or make any arguments regarding jurisdiction as custody arguments and potential decisions would happen at a later hearing. Petitioner and I agreed that she did not need to appear at the March 31 hearing because it was to be solely regarding jurisdiction.

6. At the March 31, 2023 hearing, I was surprised that the judge decided to examine both jurisdiction and custody. My focus has been centered on jurisdictional arguments, as that was my understanding of the purpose of the hearing. I believed it was likely that the judge would agree to postpone the hearing and make a decision on custody at a later date not only because that is common, but also because I had only been on the case for five days at the time of the hearing, and that is typically sufficient reason to postpone a hearing.

7. At the conclusion of the hearing, the French court made a ruling on custody of the children. This ruling was problematic and surprising for at least two reasons. First, as has already been mentioned, I did not believe that custody would be argued or determined at the March 31 hearing. Second, the French court's custody ruling was made in Respondent's favor because my client, the Petitioner, did not appear. It is my understanding that this was the equivalent of a default ruling in the American legal system.

Page 2 - DECLARATION OF CLÉMENCE BRASSENS

**Buckley Law, PC**
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Ph: 503-620-8900 / Fax: 503-620-4878
tlm@buckley-law.com

EXHIBIT 44 - PAGE 2 OF 16

8. In making its custody decision, the French court applied the standard found in Article 7 of Council Regulation (EU) 2019/1111 of June 25, 2019. This standard is commonly known as "Brussels II ter," or Brussels II. The Brussels II standard looks at more than how ling a child has lived in a location, but instead seeks to determine a child's habitual residence, which is considered to be where the center of a child's life is located. Under this standard, French courts look to factors including, but not limited to, the conditions and reasons for a child's stay in a location, whether the child has been enrolled in school and activities, whether there are other family members in the locations, and whether a child's parents have an intention to change the child's residence. The Brussels II standard looks at far more than how long a child has lived in a location. In fact, based on my legal knowledge and experience, the Brussels II standard is only rarely influenced by how long a child has lived in a location when a child has clear, subjective factors showing that a child's life is centered in a certain location.

9. I understand there is a court hearing scheduled for June 21, 2023 in the parties' Oregon custody case. The hearing is scheduled for 10:30 p.m. Central European Time, and because the hearing is so late, I am unavailable to appear by telephone or by videoconference.

I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

Dated: June 21, 2023

_____
Clémence Brassens

Page 3 - DECLARATION OF CLÉMENCE BRASSENS

**Buckley Law, PC**
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Ph: 503-620-8900 / Fax: 503-620-4878
tlm@buckley-law.com

EXHIBIT 44 - PAGE 3 OF 16

## CERTIFICATE OF SERVICE

I certify that I served on June 21, 2023, a complete and exact copy (true copy) of the DECLARATION OF CLEMENCE BRASSENS on the parties or their representative(s) by e-mail and OJD File & Serve as follows:

Thomas A. Bittner
Schulte, Anderson, et al.
811 SW Naito Pkwy, Ste. 500
Portland, OR 97204-3379
Email: tbittner@schulte-law.com
*Attorney for Respondent*

Dated: June 21, 2023

_____
Taylor L. McMurdoch, OSB #111307
Of Attorneys for Petitioner

Page 1 – CERTIFICATE OF SERVICE

**Buckley Law, PC**
5300 Meadows Road, Suite 200
Lake Oswego, OR 97035
Ph: 503-620-8900 / Fax: 503-620-4878
tlm@buckley-law.com

EXHIBIT 44 - PAGE 4 OF 16

A Madame ou Monsieur le Juge aux Affaires Familiales
Près le Tribunal Judiciaire de PARIS

N° RG : 22/38495
Cabinet 205
<u>Audience du vendredi 31 mars 2023 à 9H30</u>

# CONCLUSIONS D'INCOMPETENCE

**POUR :**        **Madame Heidi, Marie BROWN**
Née le 30 mars 1982 à Ashland (Etat de l'Oregon – Etats-Unis d'Amérique)
De nationalité américaine
Demeurant 665 Leonard Street – Ashland (Etat de l'Oregon) – Etats-Unis d'Amérique
Exerçant la profession de cadre marketing

<u>Ayant pour avocat :</u>   **Maître Clémence BRASSENS**
Avocat au Barreau de Paris
3 rue de Saint Simon 75007 PARIS
Tel. +33 (0) 1 85.09.98.83
Courriel : clemencebrassens@avocatline.fr
Palais G 276

**CONTRE :**      **Monsieur Arnaud PARIS**
Né le 14 avril 1978, à Longjumeau,
De nationalité française et américaine,
Se domiciliant 13 rue Ferdinand Duval à Paris (75004)
Mais résidant actuellement sur le territoire américain
Profession : inconnue

<u>Ayant pour avocat :</u>   **Maître Terence RICHOUX**
Avocat au Barreau de Paris
23 rue Henri Barbusse 75005 PARIS
Palais E 780

1

EXHIBIT 44 - PAGE 5 OF 16         EXHIBIT 1
Page 1 of 12

# PLAISE À MADAME LE JUGE AUX AFFAIRES FAMILIALES

### I. RAPPEL DES FAITS ET DE LA PROCEDURE :

#### 1) Rappel des faits :

#### *1.1. Sur la situation familiale :*

Madame Heidi BROWN, de nationalité américaine (née à Ashland), et Monsieur Arnaud PARIS, de nationalité française et américaine, se sont rencontrés en 2013.

Le couple a vécu aux Etats-Unis, d'abord en Californie (Topanga) avant de déménager à Ashland, Oregon, en novembre 2014, alors que Madame BROWN était enceinte de jumelles.

Ainsi, deux enfants sont issues de leur union :

- **Juliette**, Manon PARIS, de nationalité américaine et française, née le 15 janvier 2015 à Ashland, Oregon, USA - actuellement âgée de **8 ans**,
- **Eva**, Lilie PARIS, de nationalité(s) américaine et française, née le 15 janvier 2015 à Ashland, Oregon, USA - actuellement âgée de **8 ans**.

**En mars 2015, la famille s'est installée en Californie à Topanga (Etats-Unis), où Madame BROWN et Monsieur PARIS ont vécu avec leurs deux filles pendant plusieurs années,** ponctuées de séjour en France, jusqu'en août 2019.

En août 2019, la famille avait un projet de construction de maison dans l'OREGON. Ce projet devant prendre nécessairement du temps, la famille a saisi cette opportunité pour s'installer une année scolaire en France et que les filles effectuent leur première année de maternelle.

> Pièce n°1 : Mail juin 2019 projet construction maison à Ashland et annonce séjour temporaire en France
> Pièce n°2 : Mail des parents adressé au centre de loisirs de Topanga confirmant la décision de passer l'année scolaire 2019/2020 en France

C'est ainsi que la famille a déménagé à Paris, dans un bien en location meublée, et non dans l'appartement de Monsieur PARIS contrairement à ce qu'il prétend dans ses écritures, dans l'optique d'y rester temporairement. (Pièce n°4J projet contrat de bail 1er octobre 2019 + mails avec l'agence de location + pièce n°5congé donné pour le même appartement )

La famille a d'ailleurs laissé tous ses meubles aux Etats-Unis et a fait exprès de prendre une location meublée.

Chacun des parents a d'ailleurs continué de déclarer ses revenus aux Etats-Unis (Pièce n°16 et 17 Federal tax return 2021 Heidi BROWN et Arnaud PARIS) et a commencé à percevoir des prestations d'assurance chômage aux Etats-Unis. (Pièce n°24)

En mars 2020, au regard de la pandémie de Covid-19 et de l'incertitude née de celle-ci quant aux déplacements à l'international, la famille n'a eu d'autre choix que de rester en France et le projet de construction de la maison aux Etats-Unis a été impacté.

Dans l'attente de pouvoir repartir sereinement post-Covid, le couple a cependant continuer d'avancer dans le projet de construction de maison.

2

EXHIBIT 44 - PAGE 6 OF 16

EXHIBIT 1
Page 2 of 12

Ainsi, en décembre 2020, alors que la famille se trouvait en France, Madame BROWN a acquis un terrain vacant à Ashland, en Oregon, en vue d'y faire construire le futur logement familial. *(Pièce n°20 : acte d'acquisition terrain).*

A l'été 2021, la famille est revenue à Ashland pour faire avancer ce projet.

> Pièce n°3 : Mail de Monsieur PARIS en juillet 2021 au sujet du projet de construction de maison à Ashland, obligation de rester en France à cause de la pandémie et souhait de reprendre le projet de construction aux USA
> Pièce n°4 : Mail août 2021 sur projet maison Ashland

Ce projet n'a finalement pas abouti au regard de difficultés organisationnelles et financières et Monsieur PARIS a initié de nouvelles recherches de maison à acheter, notamment d'une résidence secondaire sur la côte.

> Pièce n°19 : Communication avec un agent immobilier pour achat d'une maison Août 2021

Une fois la situation sanitaire mondiale apaisée, Madame BROWN et Monsieur PARIS ont finalisé leurs projets de retour à Ashland, Oregon, Etats-Unis comme il sera justifié ci-après.

### 1.2. Sur le déménagement licite aux Etats-Unis des enfants, conformément au projet parental établi depuis le printemps 2022 :

**Le couple a alors organisé – ensemble – le départ de leur famille de France vers les Etats-Unis,** à effet au mois de juillet 2022 afin que leurs enfants puissent y entamer sereinement l'année scolaire ultérieure.

<u>Ainsi, dès mars 2022</u>, **de multiples actions ont été entreprises par les deux parents pour préparer leur déménagement et Monsieur PARIS et Madame BROWN ont :**

- → Résilié le bail de leur appartement parisien ; (Pièce n°5)

- → Vendu leurs meubles et une partie de leurs biens ; (Pièce n°6)

- → Trouvé une maison de location de quatre chambres à Ashland (dont une pour la jeune fille au pair française) ; (Pièce n°7)

- → Inscrit leurs filles à des camps d'été à Ashland ; (Pièce n°8)

- → Recherché, et embauché, une jeune fille française au pair pour s'occuper des enfants à Ashland ; (Pièce n°9 : premières recherches par le père en avril/mai 2022 ; Pièce n°10 contrat de recherche de jeunes filles au pair avec une agence mai 2022 + Pièce n°11 mails avec l'agence en juin sur la jeune fille choisie ; pièce n°12 : accord de paiement jeune fille au pair septembre 2022) ;

- → Discuté avec leurs employeurs respectifs et veillé à obtenir des emplois aux Etats-Unis ;

- → Recherché des écoles à Ashland ;

- → Informé l'école française de leurs filles de leur déménagement aux Etats-Unis ; (Pièces n°13, 14,15 radiation)

3

EXHIBIT 44 - PAGE 7 OF 16        EXHIBIT 1
Page 3 of 12

→ Informer leurs parents et amis, et organisé des réunions de départ avec leurs proches et ceux de leurs filles. (Pièce n°18 témoignage de Monsieur Benamou)

**Monsieur PARIS et Madame BROWN ont ainsi organisé ensemble l'arrivée de leur famille à Ashland pour la rentrée scolaire 2022.**

Parallèlement, courant avril 2022, des difficultés relationnelles ont impacté le couple, après la découverte par Madame BROWN de rapports extra-conjugaux entretenus par Monsieur BROWN avec d'autres jeunes femmes.

Le couple a souhaité se laisser une chance, et – dans le cadre du retour prévu aux Etats-Unis – des billets aller simple de la France vers les États-Unis ont été achetés, visant une date (13 juillet 2022) qui fonctionnerait pour la scolarité des enfants et leurs activités.

Les billets ont été achetés le 21 avril 2022 soit près de 3 mois avant le départ (Pièce n°21) et Madame BROWN a immédiatement envoyé la confirmation de réservation à Monsieur PARIS. (Pièce n°22)

Le père de Monsieur PARIS était même missionné pour aider la famille au départ à l'aéroport puisque Madame BROWN partait seule avec les deux filles et pas moins de 12 valises, avant que Monsieur PARIS ne les rejoigne fin juillet... (Pièce n°23 échange whatsapp entre Madame BROWN et le père de Monsieur PARIS)

Les filles étaient également inscrites à un camp d'été aux Etats-Unis devant commencer le 18 juillet 2022 soit 5 jours après leur arrivée. (Pièce n°8)

**Cependant et contre toute attente, quelques jours avant le départ, Monsieur PARIS décidait unilatéralement la veille du départ d'empêcher ce projet en cachant les passeports des enfants et en sollicitant une interdiction de sortie du territoire français.** (Pièce adverse n°006)

Monsieur PARIS arguait soudainement de sa condition de santé pour annuler ce retour aux Etats-Unis. Il avait effectivement découvert quelques semaines plus tôt être atteint d'une maladie, dite de BIEMER, lui imposant de prendre des vitamines B12[1] et de consulter un médecin occasionnellement...

Il ne s'agissait donc certainement pas d'une raison valable pour annuler le retour de la famille aux Etats-Unis prévu depuis des mois.

Malgré les tentatives de raisonnement de sa compagne, Madame BROWN et les enfants n'ont eu d'autre choix – sans passeport et sans appartement – que de loger dans un hôtel avec leurs valises.

La situation a été particulièrement éprouvante pour Madame BROWN et les filles.

**Finalement et dans l'urgence, Madame BROWN et Monsieur PARIS sont parvenus à s'accorder sur le départ aux Etats-Unis pour l'année scolaire 2022-2023,** tout en conditionnant cet accord à la mise en place de formalités principalement liées aux soins médicaux de Monsieur PARIS, et ce, avant le 22 août 2022.

---

[1] La maladie empêchant l'absorption de la vitamine B12 et entraînant une anémie.

4

EXHIBIT 44 - PAGE 8 OF 16

EXHIBIT 1
Page 4 of 12

Ces accords ont été formalisés par le biais de courriers officiels entre leurs conseils respectifs.

*Pièce n°25 : Lettre officielle du conseil de Mme BROWN du 19 juillet 2022*
*Pièce n°26 : Lettre officielle du conseil de M. PARIS du 19 juillet 2022*

Les conditions fixées par les parties ont été intégralement réalisées à savoir :

- Signature d'un bail à Ashland *(Pièce n°31)*
- Réservation d'une baby-sitter à partir du 1er septembre 2022 en complément de la jeune fille au pair *(Pièce n°32)*
- Réservation de cours de français 2 fois par semaine à compter du 1er septembre 2022 *(Pièce n°33)*
- Signature d'un contrat de co-working pour la mère *(Pièce n°34)*
- Souscription d'une couverture médicale américaine pour Monsieur PARIS *(Pièce n°35)*
- Confirmation que la couverture médicale n'excluait pas la maladie de Biermer ou un cancer *(Pièce n°36)*
- Prise d'un rendez-vous médical avec la compagnie d'assurance américaine pour Monsieur PARIS *(Pièce n°37)*
- Prise d'un rendez-vous avec un gastroentérologue aux US pour Monsieur PARIS *(Pièce n°38)*
- Souscription d'une nouvelle couverture médicale, Monsieur PARIS ayant annulé la précédente *(Pièce n°39)*

**C'est dans ces conditions que, conformément à l'accord des parties depuis toujours, Madame BROWN, Eva et Juliette sont arrivées à Ashland le 29 juillet 2022, et y résident depuis.**

Madame BROWN a tout mis en œuvre par la suite pour que les conditions de l'accord trouvé par les parties soient remplies ; ce à quoi Monsieur PARIS a également participé.

*Pièce n°27 : Lettre officielle du conseil de Mme BROWN du 18 août 2022*
*Pièce n°12 : Monsieur PARIS coordonne le paiement de la fille au pair à Ashland*

De nouvelles lettres officielles ont été échangées dans lesquelles Monsieur PARIS, par l'intermédiaire de son Conseil remettait de nouveau en cause le retour de la famille aux Etats-Unis sous des motifs parfaitement inopérants et ce alors même qu'il se trouvait lui-même aux Etats-Unis depuis le 19 août !

*Pièce n°28 : Lettre officielle du conseil de M. PARIS du 23 août 2022*

Par la voie de son Conseil, Madame BROWN faisait savoir qu'elle n'entendait pas rentrer en France alors qu'un accord avait été pris de longue date pour un retour aux Etats-Unis et alors même que cela faisait déjà un mois qu'elle et les filles étaient installées aux Etats-Unis.

*Pièce n°29: Lettre officielle du conseil de M. PARIS du 26 août 2022*

Sans plus attendre, Monsieur PARIS se ravisait et indiquait établir sa résidence aux Etats-Unis. Il y réside depuis lors.

*Pièce n°30: Lettre officielle du conseil de M. PARIS du 29 août 2022*

5

EXHIBIT 44 - PAGE 9 OF 16                    EXHIBIT 1
                                                              Page 5 of 12

**Par la suite, Monsieur PARIS a confirmé sa volonté de reloger la famille aux Etats-Unis de plusieurs façons**, notamment en emménageant dans la nouvelle maison à Ashland, en signant le contrat de la jeune fille au pair, ou encore en démissionnant de son poste français.

Juliette et Eva ont ainsi débuté leur rentrée scolaire aux Etats-Unis conformément au souhait de leurs deux parents, Monsieur PARIS les ayant accompagnées à l'école à plusieurs reprises, et étant resté dans la maison d'Ashland jusqu'à début d'octobre.

Par la suite, les parents ont mis en place une organisation permettant à chacun de maintenir leur place respective dans la vie des enfants aux Etats-Unis.

### 1.3. *Sur les tentatives de Monsieur PARIS de forcer la famille à quitter les Etats-Unis pour répondre à ses désidératas personnels :*

Le 3 septembre 2022, Monsieur PARIS a accédé illégalement à l'ordinateur de Madame BROWN, et notamment intercepté des communications <u>confidentielles</u> échangées entre les conseils français et américain de Madame BROWN.

C'est après avoir agi ainsi, et pris connaissance frauduleusement d'échanges pourtant couverts par le secret professionnel, que **Monsieur PARIS a décidé – en dépit de l'intérêt supérieur de ses enfants – de les mêler au conflit parental en menaçant Madame BROWN d'enlever les enfants.**

Pourtant, la sécurité émotionnelle des enfants devrait primer, et Eva et Juliette devraient être préservées des choix personnels de leur parents et évoluer dans un environnement défini.

**Nonobstant l'intérêt supérieur des enfants, Monsieur PARIS n'hésite pas à multiplier les procédures dans une logique d'obstruction à l'encontre de la concluante**, sans tenir compte de l'importance de préserver les enfants et leur stabilité.

### 2) Les procédures en cours :

Pour la parfaite information du Juge aux Affaires Familiales, les différentes procédures concernant Monsieur PARIS et Madame BROWN doivent être rappelées :

### 2.1. *Sur le plan pénal :*

Monsieur PARIS est pénalement poursuivi aux Etats-Unis à la suite de l'intrusion illégale dans l'ordinateur de Madame BROWN, et ce pour plusieurs chefs :
- un chef de crime informatique ;
- et deux chefs d'interception de communications.

Une audience se tiendra le 10 avril prochain.

### 2.2. *Sur le fondement de la Convention de la Haye de 1980 – rejet de la demande de Monsieur PARIS de retour des enfants en France :*

Monsieur PARIS a tenté de contester *a posteriori* le consentement qu'il a pourtant donné, et pour lequel il a même activement participé, quant au déménagement familial aux Etats-Unis.

Il n'a pas craint de saisir la Cour fédérale de l'Etat de l'Oregon (United States District Court for the district of Oregon) d'une demande sur le fondement de la Convention de la Haye du 25 octobre 1980 sur les aspects civils de l'enlèvement international d'enfants.

A ce titre, Monsieur PARIS a sollicité que soit ordonné le retour immédiat de ses enfants, prétendant que Juliette et Eva aurait été déplacées illicitement aux Etats-Unis.

**Fort logiquement, par jugement du 7 décembre 2022, la Cour fédérale de l'Etat de l'Oregon a rejeté la demande de retour des enfants au titre de la Convention de la Haye de 1980.**

*Pièce 40 : Décision du 7 décembre 2022*

Aux termes de sa décision, le juge fédéral MC SHANE a jugé que les enfants devaient rester à Ashland, Oregon, pour l'année scolaire 2022-2023 ce qui fait que leur résidence habituelle est incontestablement fixée aux Etats-Unis.

Il a en outre notamment retenu que les informations données par Monsieur PARIS paraissaient « peu crédibles » (page 36), que le projet d'installation en France paraissait temporaire et que la pandémie a certainement joué un rôle (page 45), que Monsieur PARIS qui était décidé à rentrer aux Etats-Unis a « changé radicalement de position », que ses explications à ce sujet « sonnent un peu creux » et qu'en tout cas il a mis Madame BROWN dans une « position remarquablement difficile » (page 47, 48,49), qu'il est très difficile de comprendre ce que veut Monsieur PARIS et que les explications sur sa condition médicale ne paraissent pas crédibles faute de preuve (page 51). Enfin, il rappelle que Monsieur PARIS a créé une situation intenable au mois de juillet 2022 (page 52).

Monsieur PARIS a interjeté appel de cette décision puis s'est désisté.

### 2.3. *En matière de responsabilité parentale, au fond :*

- 3 octobre 2022 : saisine par Monsieur PARIS des juridictions françaises :

Le 3 octobre 2022, Monsieur PARIS a saisi le juge français, au moyen d'une présentation tronquée et mensongère de la réalité de la situation de sa famille, omettant d'indiquer qu'il y avait toujours eu un projet sérieux et effectif du retour de la famille aux Etats-Unis pour l'année scolaire 2022/2023.

Il a également indiqué qu'il résidait en France ce qui est faux et que la famille résidait à son propre domicile rue Ferdinand Duval ce qui est encore complètement faux.

Monsieur PARIS réside en effet depuis l'été 2022 aux Etats-Unis.

*Pièce n°30: Lettre officielle du conseil de M. PARIS du 29 août 2022 et Pièce n°44 : différentes adresses communiquées à Madame BROWN où il reçoit les filles une semaine sur deux*

Par ces manœuvres, il a obtenu suivant ordonnance du 7 octobre 2022, une autorisation d'assigner Madame BROWN à bref délai à l'audience du 20 janvier 2023, renvoyée au 31 mars 2023, objet des présentes.

La signification à Madame BROWN est intervenue le 10 octobre 2022.

Aux termes de ces demandes, il sollicite que la résidence habituelle des enfants soit fixée en France à son domicile.

7

EXHIBIT 44 - PAGE 11 OF 16       EXHIBIT 1
Page 7 of 12

- 7 octobre 2022 : saisine par Madame BROWN des juridictions américaines (Comté de Jackson, Oregon) :

*Pièce n°42 : requête de Madame BROWN*

Parallèlement, et bien que Madame BROWN n'est pas été informée de la saisine des juridictions françaises par le père, elle a elle-même saisi les juridictions américaines (circuit de l'Etat de l'Oregon pour le Comté de Jackson) aux fins d'interdire à celui-ci de changer unilatéralement le lieu de résidence habituelle des enfants.

Précisons que la saisine de Madame BROWN n'a donc aucun lien avec la saisine française de Monsieur PARIS dont elle n'a été informée que postérieurement.

La saisine de Madame BROWN n'avait pour objet que de pérenniser l'accord des parties pour transférer la famille aux Etats-Unis en maintenant la résidence habituelle des enfants en OREGON pour l'année 2022/2023.

**Le 11 octobre 2022, une ordonnance temporaire a été rendue, fixant un *statu quo avant jugement*, et interdisant aux parties de changer le lieu de résidence habituel des enfants fixé, aux termes de la décision, sis 665 Leonard St., Ashland, Oregon.**

*Pièce n°43 : Décision de Statu quo*

Précisons que Monsieur PARIS tente de faire échec à cette procédure en invoquant qu'il avait saisi en premier les juridictions françaises. Il a introduit appelle une *« motion to dismiss »* que l'on peut traduire comme une requête en irrecevabilité.

Le Tribunal a renvoyé l'affaire au 19 avril prochain.

Le calendrier de la procédure de la juridiction du Comté de Jackson au fond n'est pas encore connu.

***

**C'est dans ce contexte que l'affaire se présente devant les juridictions françaises, qui sont donc saisies d'une demande de fixation des modalités de l'autorité parentale alors que, ainsi que cela sera développé :**

- **Elles sont incompétentes en l'état de la résidence habituelle des enfants aux Etats-Unis depuis le mois de juillet 2022 soit il y a plus de 8 mois ;**

- **Les juridictions américaines ont déjà fixé des mesures relatives à l'exercice de l'autorité parentale, qui sont exécutoires ;**

- **Le juge américain a manifestement été saisi en premier ;**

**II-   Sur l'exception d'incompétence**

Conformément aux articles 74 et suivants du code de procédure civile, les exceptions doivent être présentées avant toute défense au fond.

8

EXHIBIT 44 - PAGE 12 OF 16     EXHIBIT 1
Page 8 of 12

### 1) Sur l'incompétence du juge aux affaires familiales de PARIS

Monsieur PARIS a saisi le juge aux Affaires familiales de Paris le 3 octobre 2022.

On rappellera les éléments d'extranéité :

- La mère est américaine
- Le père est français et américain
- Les enfants sont français et américains
- La résidence habituelle des enfants se situe de manière indiscutable aux Etats-Unis

#### a) Sur la résidence habituelle des enfants au 7 octobre 2022

Au 3 octobre 2022, ainsi qu'il a été rappelé ci-dessus, la résidence habituelle des enfants est incontestablement aux Etats-Unis et ce depuis le 29 juillet. Les enfants y sont notamment scolarisés.

La décision sur le retour des enfants dans le cadre de la Convention de la Haye du 25 octobre 1980 a notamment établi que la résidence habituelle des enfants se trouvait aux Etats-Unis depuis cette date.

#### b) Sur les textes applicables pour apprécier la compétence du juge français

En présence d'éléments d'extranéité et pour apprécier si une juridiction est compétente, il convient tout d'abord de se référer au Règlement Bruxelles II TER entré en vigueur le 1er août 2022.

Ce règlement a cependant vocation à s'appliquer entre Etats membres de l'Union Européenne.

Or la résidence habituelle des enfants est fixée aux Etats-Unis depuis le 29 juillet 2022 date à laquelle les enfants sont arrivées sur le territoire américain.

De ce fait, le Règlement Bruxelles II TER n'est pas applicable et il convient de se référer à la Convention de la Haye du 19 octobre 1996 relative à la compétence et à la loi applicable en matière d'autorité parentale.

La Convention de la Haye de 1996 s'applique à la France qui l'a ratifiée en 2010.

Article 5.1.« *Les autorités, tant judiciaires qu'administratives, de l'Etat contractant de la résidence habituelle de l'enfant sont compétentes pour prendre des mesures tendant à la protection de sa personne ou de ses biens* ».

Article 5.2 « *Sous réserves de l'article 7, en cas de changement de la résidence habituelle de l'enfant dans un autre Etat contractant, sont compétentes les autorités de l'Etat de la nouvelle résidence habituelle* ».

L'article 7 évoque le déplacement ou le non retour illicite de l'enfant, or suivant décision du 7 décembre 2022, le juge américain a considéré qu'il n'y avait pas de déplacement illicite et a refusé le retour des enfants en France. Rappelons également que Monsieur PARIS s'est désisté de son appel.

En l'espèce, la résidence habituelle des enfants est donc fixée aux Etats-Unis au moment de la saisine de la juridiction française.

En vertu de l'article 5 de cette convention, le juge français ne peut se déclarer compétent.

> ➢ **En conséquence, le juge aux affaires familiales de PARIS ne pourra que se déclarer incompétent.**

### 2) Sur la compétence des juridictions américaines

Conformément à l'article 5 de la Convention de la Haye du 19 octobre 1996, ci-dessus reproduit, seules les juridictions américaines sont compétentes.

Le juge aux affaires familiales de PARIS devra donc se dessaisir au profit du juge américain déjà saisi de cette affaire, à savoir le Tribunal de Circuit de l'Oregon.

\* \*
\*

A défaut, si le juge aux affaires familiales de PARIS se déclarait par extraordinaire compétent, il existerait alors une situation de litispendance qu'il convient d'examiner.

### III- Sur l'exception de litispendance

Conformément à l'article 100 du code de procédure civile, l'exception de litispendance est présentée *in limine litis* avant toute défense au fond :

*Si le même litige est pendant devant deux juridictions de même degré également compétentes pour en connaître, la juridiction saisie en second lieu doit se dessaisir au profit de l'autre si l'une des parties le demande. A défaut, elle peut le faire d'office.*

Pour apprécier la situation de litispendance on rappellera les dispositions applicables du Règlement Bruxelles II Ter :

Articles 16 b) du Règlement Bruxelles II Bis et 17 b) du Règlement Bruxelles II Ter :

*Une juridiction est réputée saisie :*

- *a) A la date à laquelle l'acte introductif d'instance ou un acte équivalent est déposé auprès de la juridiction, à condition que le demandeur n'ait pas négligé par la suite de prendre les mesures qu'il était tenu de prendre pour que l'acte soit notifié ou signifié au défendeur ;*

10

EXHIBIT 44 - PAGE 14 OF 16

EXHIBIT 1
Page 10 of 12

> **b)** *Si l'acte doit être notifié ou signifié* **avant d'être déposé auprès de la juridiction***(nota : ce qui est le cas d'une assignation à bref délai)*, **à la date à laquelle il est reçu par l'autorité chargée de la notification ou de la signification, à condition que le demandeur n'ait pas négligé par la suite de prendre les mesures qu'il était tenu de prendre pour que l'acte soit déposé auprès de la juridiction ;**

Monsieur PARIS a saisi le juge aux Affaires familiales de Paris le 3 octobre 2022 afin de voir fixer la résidence habituelle des enfants à son domicile.

Le 7 octobre 2022, il a obtenu du juge aux affaires familiales de PARIS une autorisation d'assigner.

Il a ensuite remis à un huissier français l'assignation en vue de sa délivrance à Madame BROWN aux Etats-Unis.

La signification à Madame BROWN est intervenue le 10 octobre 2022.

Le 7 octobre 2022 Madame BROWN a saisi le Tribunal de Circuit de l'Etat de l'OREGON (Jackson County Circuit Court) d'une demande de dissolution de leur partenariat civil (dissolution of Domestic Partnership), de fixation des droits parentaux et de la fixation de la contribution aux frais des enfants.

En l'espèce, il apparait donc que le juge aux affaires familiales de PARIS a été saisi en second puisque Monsieur PARIS a remis à l'huissier son assignation avec l'autorisation d'assigner postérieurement au 7 octobre 2022. *(Mais je ne le prouve pas, à la partie adverse de justifier du contraire)*

Or Madame BROWN a saisi le juge du Jackson Count Circuit Court de l'Etat de l'OREGON le 7 octobre 2022 soit antérieurement à la saisine de la juridiction française.

C'est donc bien le juge américain qui a été saisi en premier.

Qui plus est, le Jackson Count Circuit Court est bien compétent en vertu du l'UCCJEA *(Uniform Child Custody Juridiction and Enforcement Act)*, en raison du lien significatif entre la mère et l'Etat de l'OREGON et de l'existence de preuves substantielles dans cet Etat concernant les soins, la protection, la formation et les relations personnelles des enfants. *(Pièce n°42)*

Il a d'ores et déjà rendu le 11 octobre 2022 une décision fixant le cadre de vie des enfants à titre provisoire.

« *Le lieu de résidence habituel de leurs enfants est chez la demanderesse au 665 Leonard St., à Ashland, OREGON.*
*Leurs enfants sont actuellement inscrits et fréquentent l'école primaire de Bellview, à Ashland, OREGON.*
*Les deux parties exercent leur droit de visite sur leurs enfants sur une base à peu près égale* »

11

EXHIBIT 44 - PAGE 15 OF 16

EXHIBIT 1
Page 11 of 12

Cette décision a été signifiée à Monsieur PARIS qui l'applique et voit ses enfants conformément au cadre fixé par cette décision à savoir la mise en place d'une résidence alternée.

> **En conséquence, le juge aux affaires familiales de PARIS devra se dessaisir au profit des juridictions de l'Etat de l'OREGON.**

# PAR CES MOTIFS

*IN LIMINE LITIS*

Il est demandé au Juge aux affaires familiales de PARIS de :

- SE DECLARER INCOMPETENT pour connaître du présent litige au profit du Tribunal compétent de l'Etat de l'OREGON à savoir le Tribunal de Circuit de l'Etat de l'OREGON ;

- A titre subsidiaire, si le Juge aux Affaires familiales de PARIS se déclarait compétent, et considérait qu'il existait une situation de litispendance, DIRE RECEVABLE ET BIEN FONDEE l'exception de litispendance, et SE DESSAISIR au profit du Tribunal de Circuit de l'Etat de l'OREGON au regard de l'antériorité de sa saisine ;

- A titre extrêmement subsidiaire, si le Juge aux affaires familiales de PARIS se déclarait compétent et considérait avoir été saisi en premier, RENVOYER l'affaire afin que les parties puissent se mettre en état sur le fond du dossier.