# EXHIBIT 46

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

In the Matter of:

HEIDI MARIE BROWN,

        Petitioner,

   and

ARNAUD PARIS,

        Respondent.

Case No. 22DR17285

**DECLARATION**

1. My name is Terence RICHOUX. I am a licensed and practicing attorney at law in Paris, France. I represented Mr. Arnaud Paris in a court case before the family judge of the Paris Court. That case was against Ms. Heidi Brown. The claims adjudicated by the French court concerned the care, custody and control of the minor children of the parties, rights of visitation as well as support as appropriate between the parties for their minor children. The court granted full custody of the children to Mr. Arnaud PARIS on April 21, 2023.

2. During the first trial, Mss. BROWN was given the opportunity to defend herself on all aspects of the case.

3. She sent a written brief to the court challenging its jurisdiction and requesting that the children's residence be established in Oregon. In support of this request to establish the children's habitual residence, she submitted 50 exhibits.

4. She provided pictures, statements, emails, receipts, witness testimony and other documents to convince the Court that if the Court had jurisdiction, it should then:

Page 1 - DECLARATION

EXHIBIT 46 - PAGE 1 OF 19

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

1  5. "ESTABLISH the children's habitual residence at the mother's residence in the United States; alternatively, to order the continuation of alternating weekly residence as practiced by the parties since October 2022 in the United States; and to order the sharing of expenses related to the children."[1]

5  6. The Court gave its ruling on the basis of all the written arguments and exhibits provided by both parties as well as all oral arguments submitted by both parties during the hearing.

8  7. I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.

Dated: June 8th, 2023

By: Terence RICHOUX

---

[1] MS BROWN'S BRIEF dated March 30th 2023 page 13

Page 2 - DECLARATION

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 46 - PAGE 2 OF 19

A Madame ou Monsieur le Juge aux Affaires Familiales
Près le Tribunal Judiciaire de PARIS

**N° RG : 22/38495**
**Cabinet 205**
<u>**Audience du vendredi 31 mars 2023 à 9H30**</u>

---

# CONCLUSIONS D'INCOMPETENCE

---

**POUR :**          **Madame Heidi, Marie BROWN**
Née le 30 mars 1982 à Ashland (Etat de l'Oregon – Etats-Unis d'Amérique)
De nationalité américaine
Demeurant 665 Leonard Street – Ashland (Etat de l'Oregon) – Etats-Unis d'Amérique
Exerçant la profession de cadre marketing

<u>Ayant pour avocat :</u>    **Maître Clémence BRASSENS**
Avocat au Barreau de Paris
3 rue de Saint Simon 75007 PARIS
Tel.  +33 (0) 1 85.09.98.83
Courriel : clemencebrassens@avocatline.fr
Palais G 276

**CONTRE :**        **Monsieur Arnaud PARIS**
Né le 14 avril 1978, à Longjumeau,
De nationalité française et américaine,
Se domiciliant 13 rue Ferdinand Duval à Paris (75004)
Mais résidant actuellement sur le territoire américain
Profession : inconnue

<u>Ayant pour avocat :</u>    **Maître Terence RICHOUX**
Avocat au Barreau de Paris
23 rue Henri Barbusse 75005 PARIS
Palais E 780

1

EXHIBIT 46 - PAGE 3 OF 19

# PLAISE À MADAME LE JUGE AUX AFFAIRES FAMILIALES

I. **RAPPEL DES FAITS ET DE LA PROCEDURE :**

    **1) Rappel des faits :**

*1.1.   Sur la situation familiale :*

Madame Heidi BROWN, de nationalité américaine (née à Ashland), et Monsieur Arnaud PARIS, de nationalité française et américaine, se sont rencontrés en 2013.

Le couple a vécu aux Etats-Unis, d'abord en Californie (Topanga) avant de déménager à Ashland, Oregon, en novembre 2014, alors que Madame BROWN était enceinte de jumelles.

Ainsi, deux enfants sont issues de leur union :

- **Juliette**, Manon PARIS, de nationalité américaine et française, née le 15 janvier 2015 à Ashland, Oregon, USA - actuellement âgée de **8 ans**,
- **Eva**, Lilie PARIS, de nationalité(s) américaine et française, née le 15 janvier 2015 à Ashland, Oregon, USA - actuellement âgée de **8 ans**.

**En mars 2015, la famille s'est installée en Californie à Topanga (Etats-Unis), où Madame BROWN et Monsieur PARIS ont vécu avec leurs deux filles pendant plusieurs années**, ponctuées de vacances en France, jusqu'en août 2019.

En août 2019, la famille avait un projet de construction de maison en Californie. Ce projet devant prendre nécessairement du temps, la famille a saisi cette opportunité pour s'installer une année scolaire en France et que les filles effectuent une année de maternelle. Elles avaient donc 4 ans et 1/2.

<u>Pièce n°1</u> : Mail juin 2019 projet construction maison en Californie et annonce séjour temporaire en France
<u>Pièce n°2</u> : Mail des parents adressé au centre de loisirs de Topanga confirmant la décision de passer l'année scolaire 2019/2020 en France

C'est ainsi que la famille a déménagé à Paris, dans un bien <u>en location meublée</u>, et non dans l'appartement de Monsieur PARIS contrairement à ce qu'il prétend dans ses écritures, dans l'optique d'y rester temporairement. (<u>Pièce n°4</u>] projet contrat de bail 1ᵉʳ octobre 2019 + mails avec l'agence de location + <u>pièce n°5</u> : congé donné pour le même appartement en juin 2022 )

La famille a d'ailleurs laissé tous ses meubles aux Etats-Unis et a choisi expressément un appartement meublé.

Chacun des parents a continué de déclarer ses revenus aux Etats-Unis <u>(Pièce n°16 et 17 Federal tax return 2021 Heidi BROWN et Arnaud PARIS)</u> et a commencé à percevoir des prestations d'assurance chômage aux Etats-Unis au début du Covid. <u>(Pièce n°24)</u>

En mars 2020, au regard de la pandémie de Covid-19 et de l'incertitude née de celle-ci quant aux déplacements à l'international, la famille <u>n'a eu d'autre choix que de rester en France</u> et le projet de construction d'une maison aux Etats-Unis a été impacté.

2

EXHIBIT 46 - PAGE 4 OF 19

Dans l'attente de pouvoir repartir sereinement post-Covid, le couple a cependant continuer d'avancer dans le projet de construction de maison.

Ainsi, en décembre 2020, alors que la famille se trouvait en France, Madame BROWN a acquis un terrain vacant à Ashland, en Oregon, en vue d'y faire construire le futur logement familial.

Pièce n°20 : acte d'acquisition terrain à Ashland

A l'été 2021, la famille est revenue à Ashland pour faire avancer ce projet.

Pièce n°3 : Mail de Monsieur PARIS en juillet 2021 au sujet du projet de construction de maison à Ashland, obligation de rester en France à cause de la pandémie et souhait de reprendre le projet de construction aux USA<br>Pièce n°4 : Mail août 2021 sur projet maison Ashland

Ce projet n'a finalement pas abouti au regard de difficultés organisationnelles et financières et Monsieur PARIS a initié de nouvelles recherches de maison à acheter, notamment d'une résidence secondaire sur la côte.

Pièce n°19 : Communication avec un agent immobilier pour achat d'un terrain sur la côte Août 2021

Une fois la situation sanitaire mondiale apaisée, Madame BROWN et Monsieur PARIS ont finalisé leurs projets de retour à Ashland, Oregon, Etats-Unis comme il sera justifié ci-après.

Mais il est prouvé que durant toute la durée du séjour en France, les parents avaient pour objectif de retourner vivre aux Etats-Unis et d'y construire leur maison.

### 1.2. *Sur le déménagement licite aux Etats-Unis des enfants, conformément au projet parental établi depuis le printemps 2022 :*

**Le couple a alors organisé – ensemble – le départ de leur famille de France vers les Etats-Unis,** à effet au mois de juillet 2022 afin que leurs enfants puissent y entamer sereinement l'année scolaire ultérieure.

**Ainsi, dès mars 2022, de multiples actions ont été entreprises par les deux parents pour préparer leur déménagement et Monsieur PARIS et Madame BROWN** ont :

- → Résilié le bail de leur appartement parisien ; (Pièce n°5)

- → Vendu leurs meubles et une partie de leurs biens ; (Pièce n°6)

- → Cherché et trouvé une maison de location de quatre chambres à Ashland (dont une pour la jeune fille au pair française) ; (Pièce n°7 et 31)

- → Inscrit leurs filles à des camps d'été à Ashland ; (Pièce n°8)

- → Recherché, et embauché, une jeune fille française au pair pour s'occuper des enfants à Ashland ; (Pièce n°9 : premières recherches par le père en avril/mai 2022 ; Pièce n°10

3

EXHIBIT 46 - PAGE 5 OF 19

contrat de recherche de jeunes filles au pair avec une agence mai 2022 + Pièce n°11 mails avec l'agence en juin 2022 sur la jeune fille choisie)

- → Discuté avec leurs employeurs respectifs et veillé à obtenir des emplois aux Etats-Unis ;

- → Recherché des écoles à Ashland ;

- → Informé l'école française de leurs filles de leur déménagement aux Etats-Unis ; (Pièces n°13, 14, 15 radiation)

- → Informer leurs parents et amis, et organisé des réunions de départ avec leurs proches et ceux de leurs filles. (Pièce n°18 témoignage de Monsieur Benamou)

**Monsieur PARIS et Madame BROWN ont ainsi organisé <u>ensemble</u> l'arrivée de leur famille à Ashland pour la rentrée scolaire 2022.**

Parallèlement, courant avril 2022, des difficultés relationnelles ont affecté le couple, après la découverte par Madame BROWN de rapports extra-conjugaux entretenus par Monsieur PARIS avec d'autres jeunes femmes.

Le couple a souhaité se laisser une chance, et – dans le cadre du retour prévu aux Etats-Unis – des billets aller simple de la France vers les États-Unis ont été achetés, visant une date (13 juillet 2022) qui fonctionnerait pour la scolarité des enfants et leurs activités.

Les billets ont été achetés le 21 avril 2022 soit près de 3 mois avant le départ (Pièce n°21) et Madame BROWN a immédiatement envoyé la confirmation de réservation à Monsieur PARIS. (Pièce n°22)

Le père de Monsieur PARIS était même missionné pour aider la famille au départ à l'aéroport puisque Madame BROWN partait seule avec les deux filles et pas moins de 12 valises, avant que Monsieur PARIS ne les rejoigne fin juillet... (Pièce n°23 échange whatsapp entre Madame BROWN et le père de Monsieur PARIS)

Les filles étaient également inscrites à un camp d'été aux Etats-Unis devant commencer le 18 juillet 2022 soit 5 jours après leur arrivée. (Pièce n°8)

**Cependant et contre toute attente, quelques jours avant le départ, Monsieur PARIS décidait unilatéralement d'empêcher ce projet en cachant les passeports des enfants et de Madame BROWN et en sollicitant une interdiction de sortie du territoire français.** (Pièce adverse n°006)

Monsieur PARIS arguait soudainement de sa condition de santé pour annuler ce retour aux Etats-Unis. Il avait effectivement découvert quelques semaines plus tôt être atteint d'une maladie, dite de BIEMER, lui imposant de prendre des vitamines B12[1] et de consulter un médecin occasionnellement.

Il ne s'agissait donc certainement pas d'une raison valable pour annuler le retour de la famille aux Etats-Unis prévu depuis des mois et la raison se trouve manifestement dans la crainte d'avoir perdu son couple en commettant différents adultères.

---

[1] La maladie empêchant l'absorption de la vitamine B12 et entraînant une anémie.

Malgré les tentatives de raisonnement de sa compagne, Madame BROWN et les enfants n'ont eu d'autre choix – sans passeport et sans appartement – que de loger dans un hôtel avec leurs valises.

La situation a été particulièrement éprouvante pour Madame BROWN et les filles.

**Finalement et dans l'urgence, Madame BROWN et Monsieur PARIS sont parvenus à s'accorder sur le départ aux Etats-Unis pour l'année scolaire 2022-2023,** tout en conditionnant cet accord à la mise en place de formalités principalement liées aux soins médicaux de Monsieur PARIS, et ce, avant le 22 août 2022.

Ces accords ont été formalisés par le biais de courriers officiels entre leurs conseils respectifs.

> Pièce n°25 : Lettre officielle du conseil de Mme BROWN du 19 juillet 2022
> Pièce n°26 : Lettre officielle du conseil de M. PARIS du 19 juillet 2022

Les conditions fixées par les parties ont été intégralement réalisées par Madame BROWN à savoir :

- Signature d'un bail à Ashland (Pièce n°31)
- Réservation d'une baby-sitter à partir du 1er septembre 2022 en complément de la jeune fille au pair (Pièce n°32)
- Réservation de cours de français 2 fois par semaine à compter du 1er septembre 2022 (Pièce n°33)
- Signature d'un contrat de co-working pour la mère (Pièce n°34)
- Souscription d'une couverture médicale américaine pour Monsieur PARIS (Pièce n°35)
- Confirmation que la couverture médicale n'excluait pas la maladie de Biermer ou un cancer (Pièce n°36)
- Prise d'un rendez-vous médical avec la compagnie d'assurance américaine pour Monsieur PARIS (Pièce n°37)
- Prise d'un rendez-vous avec un gastroentérologue aux US pour Monsieur PARIS (Pièce n°38)
- Souscription d'une nouvelle couverture médicale, Monsieur PARIS ayant annulé la précédente (Pièce n°39)

**C'est dans ces conditions que, conformément à l'accord des parties depuis toujours, Madame BROWN, Eva et Juliette sont arrivées à Ashland le 29 juillet 2022, et y résident depuis.**

Madame BROWN a tout mis en œuvre par la suite pour que les conditions de l'accord trouvé par les parties soient remplies ; ce à quoi Monsieur PARIS a également participé.

> Pièce n°27 : Lettre officielle du conseil de Mme BROWN du 18 août 2022
> Pièce n°12 : Monsieur PARIS coordonne le paiement de la fille au pair à Ashland

Cependant peu après leur arrivée aux Etats-Unis de nouvelles lettres officielles ont été échangées dans lesquelles Monsieur PARIS, par l'intermédiaire de son Conseil, remettait de nouveau en cause le retour de la famille aux Etats-Unis sous des motifs parfaitement inopérants et ce alors même qu'il se trouvait lui-même aux Etats-Unis depuis le 19 août !

5

EXHIBIT 46 - PAGE 7 OF 19

> Pièce n°28 : Lettre officielle du conseil de M. PARIS du 23 août 2022

Par la voie de son Conseil, Madame BROWN faisait savoir qu'elle n'entendait pas rentrer en France alors qu'un accord avait été pris de longue date pour un retour aux Etats-Unis et alors même que cela faisait déjà un mois qu'elle et les filles étaient installées aux Etats-Unis.

> Pièce n°29: Lettre officielle du conseil de Madame BROWN du 26 août 2022

Sans plus attendre, Monsieur PARIS se ravisait et indiquait établir sa résidence aux Etats-Unis. Dans le même temps, il démissionnait de son poste à Paris.

> Pièce n°30: Lettre officielle du conseil de M. PARIS du 29 août 2022
> Pièce n°45 : Lettre de démission du 28 août 2022

Le 29 août, après avoir récupéré toutes les affaires de la famille à Los Angeles, il louait un grand camion et faisait le travail jusqu'à Ashland pour rejoindre sa famille.

> Pièce n°46 : Echange Whatsapp sur l'heure d'arrivée avec le camion

**Par la suite, Monsieur PARIS a confirmé sa volonté de se maintenir avec la famille aux Etats-Unis de plusieurs façons**, notamment en emménageant dans la nouvelle maison à Ashland, en signant le contrat de la jeune fille au pair, ou encore en démissionnant de son poste français.

Juliette et Eva ont ainsi débuté leur rentrée scolaire aux Etats-Unis conformément au souhait de leurs deux parents, Monsieur PARIS les ayant accompagnées à l'école à plusieurs reprises, et étant resté dans la maison d'Ashland jusqu'à début d'octobre.

Par la suite, les parents ont mis en place une organisation permettant à chacun de maintenir leur place respective dans la vie des enfants aux Etats-Unis.

### 1.3. Sur les tentatives de Monsieur PARIS de forcer la famille à quitter les Etats-Unis pour répondre à ses désidératas personnels :

Le 3 septembre 2022, Monsieur PARIS a accédé illégalement à l'ordinateur de Madame BROWN, et a notamment intercepté des communications <u>confidentielles</u> échangées entre les conseils français et américain de Madame BROWN.

C'est après avoir agi ainsi, et pris connaissance frauduleusement d'échanges pourtant couverts par le secret professionnel, que **Monsieur PARIS a décidé – en dépit de l'intérêt supérieur de ses enfants – de les mêler au conflit parental en menaçant Madame BROWN d'enlever les enfants.**

Pourtant, la sécurité émotionnelle des enfants devrait primer, et Eva et Juliette devraient être préservées des choix personnels de leur parents et évoluer dans un environnement défini.

**Nonobstant l'intérêt supérieur des enfants, Monsieur PARIS n'hésite pas à multiplier les procédures dans une logique d'obstruction à l'encontre de la concluante**, sans tenir compte de l'importance de préserver les enfants et leur stabilité.

6

EXHIBIT 46 - PAGE 8 OF 19

### 2) Les procédures en cours :

Pour la parfaite information du Juge aux Affaires Familiales, les différentes procédures concernant Monsieur PARIS et Madame BROWN doivent être rappelées :

#### 2.1. *Sur le plan pénal :*

Monsieur PARIS est pénalement poursuivi aux Etats-Unis à la suite de l'intrusion illégale dans l'ordinateur de Madame BROWN, et ce pour plusieurs chefs :

- un chef de crime informatique ;
- et deux chefs d'interception de communications.

Une audience se tiendra le 10 avril prochain.

#### 2.2. *Sur le fondement de la Convention de la Haye de 1980 – rejet de la demande de Monsieur PARIS de retour des enfants en France :*

Monsieur PARIS a tenté de contester *a posteriori* la décision de retour de la famille aux Etats-Unis, et pour lequel il a même activement participé.

Il a ainsi saisi la Cour fédérale de l'Etat de l'Oregon (United States District Court for the district of Oregon) d'une demande sur le fondement de la Convention de la Haye du 25 octobre 1980 sur les aspects civils de l'enlèvement international d'enfants.

A ce titre, Monsieur PARIS a sollicité que soit ordonné le retour immédiat de ses enfants, prétendant que Juliette et Eva aurait été déplacées illicitement aux Etats-Unis.

**Fort logiquement, par jugement du 7 décembre 2022, la Cour fédérale de l'Etat de l'Oregon, lors d'un procès qui a duré 3 jours, a rejeté la demande de retour des enfants.**

Pièce n° 40 : Décision du 7 décembre 2022

Aux termes de sa décision, le juge fédéral MC SHANE a jugé que les enfants devaient rester à Ashland, Oregon, pour l'année scolaire 2022-2023 ce qui fait que leur résidence habituelle est incontestablement fixée aux Etats-Unis.

Il est intéressant de noter qu'il a en outre retenu que :

- les informations données par Monsieur PARIS paraissaient « peu crédibles » (page 36),
- que le projet d'installation en France paraissait temporaire et que la pandémie a certainement joué un rôle (page 45),
- que Monsieur PARIS qui était décidé à rentrer aux Etats-Unis a « changé radicalement de position », que ses explications à ce sujet « sonnent un peu creux » et qu'en tout cas il a mis Madame BROWN dans une « position remarquablement difficile » (page 47, 48,49),
- qu'il est très difficile de comprendre ce que veut Monsieur PARIS et que les explications sur sa condition médicale ne paraissent pas crédibles faute de preuve (page 51).

7

EXHIBIT 46 - PAGE 9 OF 19

Enfin, il rappelle que Monsieur PARIS a créé une « situation intenable » au mois de juillet 2022 (page 52) en empêchant au dernier moment la famille de partir.

Monsieur PARIS a interjeté appel de cette décision puis s'est désisté.

### 2.3. *En matière de responsabilité parentale, au fond :*

- 3 octobre 2022 : saisine par Monsieur PARIS des juridictions françaises :

Le 3 octobre 2022, Monsieur PARIS a saisi le juge français, au moyen d'une présentation tronquée et mensongère de la réalité de la situation de sa famille, omettant d'indiquer qu'il y avait toujours eu un projet sérieux et effectif du retour de la famille aux Etats-Unis pour l'année scolaire 2022/2023.

Il a également indiqué qu'il résidait en France ce qui est faux et que la famille résidait à son propre domicile rue Ferdinand Duval ce qui est encore complètement faux. La famille n'y a jamais habité.

Monsieur PARIS réside en effet depuis l'été 2022 aux Etats-Unis.

> Pièce n°30 : Lettre officielle du conseil de M. PARIS du 29 août 2022 et Pièce n°44 : différentes adresses communiquées à Madame BROWN où il reçoit les filles une semaine sur deux

Par ces manœuvres, il a obtenu suivant ordonnance du 7 octobre 2022, une autorisation d'assigner Madame BROWN à bref délai à l'audience du 20 janvier 2023, renvoyée au 31 mars 2023, objet des présentes.

La signification à Madame BROWN est intervenue le 10 octobre 2022.

Aux termes de ces demandes, il sollicite que la résidence habituelle des enfants soit fixée en France à son domicile.

- 7 octobre 2022 : saisine par Madame BROWN des juridictions américaines (Comté de Jackson, Oregon) :

> Pièce n°42 : requête de Madame BROWN

Parallèlement, et bien que Madame BROWN n'est pas été informée de la saisine des juridictions françaises par le père, elle a elle-même saisi les juridictions américaines aux fins d'interdire à celui-ci de changer unilatéralement le lieu de résidence habituelle des enfants.

Précisons que la saisine de Madame BROWN n'a donc aucun lien avec la saisine française de Monsieur PARIS dont elle n'a été informée que postérieurement.

La saisine de Madame BROWN n'avait pour objet que de pérenniser l'accord des parties pour transférer la famille aux Etats-Unis en maintenant la résidence habituelle des enfants en OREGON pour l'année 2022/2023, face aux menaces d'enlèvement du père.

**Le 11 octobre 2022, une ordonnance temporaire a été rendue, fixant un *statu quo avant jugement*, et interdisant aux parties de changer le lieu de résidence habituel des enfants fixé, aux termes de la décision, sis 665 Leonard St., Ashland, Oregon.**

Pièce n°43 : Ordonnance conservatoire de résidence temporaire 11 octobre 2022

Précisons que Monsieur PARIS tente de faire échec à cette procédure en invoquant qu'il avait saisi en premier les juridictions françaises. Il a introduit appelle une *« motion to dismiss »* que l'on peut traduire comme une requête en irrecevabilité.

Le Tribunal a renvoyé l'affaire au 19 avril prochain pour l'examen de cette requête.

Le calendrier de la procédure de la juridiction du Comté de Jackson au fond n'est pas encore connu.

\*\*\*

**C'est dans ce contexte que l'affaire se présente devant les juridictions françaises, qui sont donc saisies d'une demande de fixation des modalités de l'autorité parentale alors que, ainsi que cela sera développé :**

- **Elles sont incompétentes en l'état de la résidence habituelle des enfants aux Etats-Unis depuis le mois de juillet 2022 soit il y a plus de 8 mois ;**

- **Les juridictions américaines ont déjà fixé des mesures relatives à l'exercice de l'autorité parentale, qui sont exécutoires ;**

- **Le juge américain a manifestement été saisi en premier ;**

## II-  Sur l'exception d'incompétence

Conformément aux articles 74 et suivants du code de procédure civile, les exceptions doivent être présentées avant toute défense au fond.

### 1) Sur l'incompétence du juge aux affaires familiales de PARIS

Monsieur PARIS a saisi le juge aux Affaires familiales de Paris le 3 octobre 2022.

On rappellera les éléments d'extranéité :

- La mère est américaine
- Le père est français et américain
- Les enfants sont français et américains
- La résidence habituelle des enfants se situe de manière indiscutable aux Etats-Unis à la date de la saisine

a) Sur la résidence habituelle des enfants au 3 octobre 2022

Au 3 octobre 2022, ainsi qu'il a été rappelé ci-dessus, la résidence habituelle des enfants est incontestablement aux Etats-Unis et ce depuis le 29 juillet. Les enfants y sont notamment scolarisés.

9

EXHIBIT 46 - PAGE 11 OF 19

La décision sur le retour des enfants dans le cadre de la Convention de la Haye du 25 octobre 1980 a notamment établi que la résidence habituelle des enfants se trouvait aux Etats-Unis depuis cette date.

b) <u>Sur les textes applicables pour apprécier la compétence du juge français</u>

En présence d'éléments d'extranéité et pour apprécier si une juridiction est compétente, il convient tout d'abord de se référer au Règlement Bruxelles II TER entré en vigueur le 1er août 2022 ce qu'a manqué de faire Monsieur PARIS.

Ce règlement a cependant vocation à s'appliquer entre Etats membres de l'Union Européenne.

Or la résidence habituelle des enfants est fixée aux Etats-Unis depuis le 29 juillet 2022 date à laquelle les enfants sont arrivées sur le territoire américain.

De ce fait, le Règlement Bruxelles II TER n'est pas applicable et il convient de se référer à la Convention de la Haye du 19 octobre 1996 relative à la compétence et à la loi applicable en matière d'autorité parentale.

La Convention de la Haye de 1996 s'applique à la France qui l'a ratifiée en 2010.

Article 5.1.« *Les autorités, tant judiciaires qu'administratives, de l'Etat contractant de la résidence habituelle de l'enfant sont compétentes pour prendre des mesures tendant à la protection de sa personne ou de ses biens* ».

Article 5.2 « *Sous réserves de l'article 7, en cas de changement de la résidence habituelle de l'enfant dans un autre Etat contractant, sont compétentes les autorités de l'Etat de la <u>nouvelle résidence habituelle</u>* ».

L'article 7 évoque le déplacement ou le non retour illicite de l'enfant. Or suivant décision du 7 décembre 2022, le juge américain a **considéré qu'il n'y avait pas de déplacement illicite et a refusé le retour des enfants en France**. Rappelons également que Monsieur PARIS s'est désisté de son appel.

En l'espèce, la résidence habituelle des enfants est donc fixée aux Etats-Unis au moment de la saisine de la juridiction française.

En vertu de l'article 5 de cette convention, le juge français ne peut pas se déclarer compétent.

> **En conséquence, le juge aux affaires familiales de PARIS ne pourra que se déclarer incompétent.**

### 2) <u>Sur la compétence des juridictions américaines</u>

Conformément à l'article 5 de la Convention de la Haye du 19 octobre 1996, ci-dessus reproduit, seules les juridictions américaines sont compétentes en raison d'une résidence habituelle licite des enfants sur le territoire américain à la date de la saisine.

Le juge aux affaires familiales de PARIS devra donc se dessaisir au profit du juge américain déjà saisi de cette affaire, à savoir le Tribunal de Circuit de l'Oregon.

10

EXHIBIT 46 - PAGE 12 OF 19

* *
 *

A défaut, si le juge aux affaires familiales de PARIS se déclarait par extraordinaire compétent, il existerait alors une situation de litispendance qu'il convient d'examiner.

### III-   Sur l'exception de litispendance

Conformément à l'article 100 du code de procédure civile, l'exception de litispendance est présentée *in limine litis* avant toute défense au fond :

*Si le même litige est pendant devant deux juridictions de même degré <u>également compétentes</u> pour en connaître, la juridiction saisie en second lieu doit se dessaisir au profit de l'autre si l'une des parties le demande. A défaut, elle peut le faire d'office.*

Pour apprécier la situation de litispendance on rappellera les dispositions applicables du Règlement Bruxelles II Ter :

Articles 16 b) du Règlement Bruxelles II Bis et 17 b) du Règlement Bruxelles II Ter :

*Une juridiction est réputée saisie :*

   a) *A la date à laquelle l'acte introductif d'instance ou un acte équivalent est déposé auprès de la juridiction, à condition que le demandeur n'ait pas négligé par la suite de prendre les mesures qu'il était tenu de prendre pour que l'acte soit notifié ou signifié au défendeur ;*

   b) **<u>Si l'acte doit être notifié ou signifié</u> avant d'être déposé auprès de la juridiction**(nota : ce qui est le cas d'une assignation à bref délai)**, <u>à la date à laquelle il est reçu par l'autorité chargée de la notification ou de la signification</u>, à condition que le demandeur n'ait pas négligé par la suite de prendre les mesures qu'il était tenu de prendre pour que l'acte soit déposé auprès de la juridiction ;**

Monsieur PARIS a saisi le juge aux Affaires familiales de Paris le 3 octobre 2022 afin de voir fixer la résidence habituelle des enfants à son domicile.

Le 7 octobre 2022, il a obtenu du juge aux affaires familiales de PARIS une autorisation d'assigner.

Il a ensuite remis à un huissier français l'assignation en vue de sa délivrance à Madame BROWN aux Etats-Unis.

La signification à Madame BROWN est intervenue le 10 octobre 2022.

Le 7 octobre 2022 Madame BROWN a saisi le Tribunal de Circuit de l'Etat de l'OREGON (Jackson County Circuit Court) d'une demande de dissolution de leur partenariat civil (dissolution of Domestic Partnership), de fixation des droits parentaux et de la fixation de la contribution aux frais des enfants.

En l'espèce, il apparait donc que le juge aux affaires familiales de PARIS a été saisi <u>en second</u> **puisque Monsieur PARIS a remis à l'huissier son assignation avec l'autorisation d'assigner postérieurement au 7 octobre 2022.**

11

EXHIBIT 46 - PAGE 13 OF 19

Or Madame BROWN a saisi le juge du Jackson Count Circuit Court de l'Etat de l'OREGON le 7 octobre 2022 soit <u>antérieurement</u> à la saisine de la juridiction française.

C'est donc bien le juge américain qui a été saisi en premier.

Qui plus est, le Jackson Count Circuit Court est bien compétent en vertu du l'UCCJEA *(Uniform Child Custody Juridiction and Enforcement Act),* en raison du lien significatif entre la mère et l'Etat de l'OREGON et de l'existence de preuves substantielles dans cet Etat concernant les soins, la protection, la formation et les relations personnelles des enfants. (Pièce n°42)

Il a d'ores et déjà rendu le 11 octobre 2022 une décision fixant le cadre de vie des enfants à titre provisoire.

*« Le lieu de résidence habituel de leurs enfants est chez la demanderesse au 665 Leonard St., à Ashland, OREGON.*
*Leurs enfants sont actuellement inscrits et fréquentent l'école primaire de Bellview, à Ashland, OREGON.*
*Les deux parties exercent leur droit de visite sur leurs enfants sur une base à peu près égale »*

Pièce n°43

Cette décision a été signifiée à Monsieur PARIS qui l'applique et voit ses enfants conformément au cadre fixé par cette décision à savoir la mise en place d'une résidence alternée.

> ➢ **En conséquence, le juge aux affaires familiales de PARIS devra se dessaisir au profit des juridictions de l'Etat de l'OREGON.**

### IV- Article 700 CPC

Enfin, bien qu'exceptionnel en matière familiale, Madame BROWN sollicite une somme de 3.000 € au titre de l'article 700 CPC compte tenu des manœuvres utilisées par Monsieur PARIS pour obtenir une date en urgence non justifiée et aux moyens d'arguments mensongers ayant obligé la concluante à engager des frais de procédure importants.

# FOR THESE REASONS

*IN LIMINE LITIS*

It is requested that the Judge of the Family Court of PARIS:

- DECLARE ITSELF INCOMPETENT to hear the present dispute in favor of the competent Court of the State of OREGON, namely the Circuit Court of the State of OREGON;

- Alternatively, if the Judge of the Family Court of PARIS declares competence and considers that there is a situation of lis pendens, DECLARE THE OBJECTION OF LIS PENDENS ADMISSIBLE AND WELL-FOUNDED, and REFER THE CASE to the Circuit Court of the State of OREGON due to the prior filing in that jurisdiction;

- In an extremely alternative manner, if the Family Court of PARIS declares itself competent and considers that it has been seized first, REMAND the case so that the parties can come to an agreement on the merits of the case.

## ON THE MERITS

- ORDER Mr. PARIS to pay a sum of €3,000 under Article 700 of the Code of Civil Procedure.
- ORDER the referral of the case for substantive examination
- Alternatively:
  SET the children's habitual residence at the mother's residence in the United States; failing this, ORDER the maintenance of the alternating weekly residence as practiced by the parties since October 2022 in the United States; ORDER the sharing of expenses concerning the children.

13

EXHIBIT 46 - PAGE 15 OF 19

Liste des pièces communiquées :

1) Mail du 12 juin 2019 où la famille annonce son départ pour une année ou deux en France + traduction libre
2) Mail du 11 mars 2019 où la famille annonce que les enfants feront une année scolaire en France + traduction libre
3) Mail du 14 juillet 2021 dans lequel Monsieur PARIS relance le projet de maison aux US alors qu'ils sont encore en France + traduction
4) Mail du 5 août 2021 sur projet construction de maison à Ashland
5) A) résiliation du bail à Paris en juin 2022 B) mail annonçant la résiliation du bail au gérant « nous retournons nous installer aux US » C) demande d'autorisation de revendre les meubles
6) Mail du 28 juin 2022 au gérant sur le projet de retour aux US « il était temps »
7) Recherches, options de maison à Ashland
8) Confirmation d'inscription des filles en camp d'été aux US du 18 juillet au 26 août 2022 avant la rentrée scolaire 2022
9) Mail du 6 mai 2022 de Monsieur PARIS adressé à des jeunes filles au pair + échanges whatsapp au sujet des recherches
10) Contrat de recherche de jeune fille au pair avec l'agence Eur Aupair signé le 19 mai 2022
11) Mail du 15 juin 2022 où le père relance l'agence de JF au pair
12) Contrat de paiement jeune fille au pair signé par Monsieur PARIS le 1 er septembre 2022
13) Certificat de radiation Eva PARIS en date du 5 juillet 2022
14) Mail de Monsieur PARIS à l'école pour obtenir un certificat de scolarité
15) Envoi d'un avis de passage en CE2 à Monsieur PARIS le 1er juillet 2022
16) Federal tax Return 2021
17) Accusé réception tax return Arnaud PARIS
18) Attestation de témoin Monsieur Benamou + CNI
19) Communication Arnaud PARIS avec agent immobilier août 2021 sur recherche maison à acheter US
20) Acte acquisition terrain aux US par Madame BROWN en décembre 2020
21) Achat billets d'avion aller simple pour les US en avril 2022
22) Envoi des billets à Monsieur PARIS le 23 avril 2022

14

EXHIBIT 46 - PAGE 16 OF 19

23) Echange iMessage où il est prévu que le père de monsieur PARIS sera à l'aéroport le jour du départ le 13 juillet pour aider avec les valises
24) Perception assurance chômage par Madame BROWN – déclaration individuelle de revenus 2020
25) Courrier officiel (accords) du 19 juillet 2022 de Me ASSUIED HODARA
26) Courrier officiel (accords) du 19 juillet 2022 de Me GADOT
27) Mail officiel du 18 août 2022 de Me ASSUIED HODARA
28) Mail officiel du 23 août 2022 de Me GADOT
29) Courrier officiel du 26 août 2022 de Me ASSUIED HODARA
30) Mail officiel du 29 août 2022 Me GADOT
31) Bail signé le 30 juillet 2022 maison à Ashland
32) Mail du 5 août 2022 sur l'emploi d'une baby sitter 2h par jour
33) Mail du 14 août 2022 sur l'emploi d'un professeur de français
34) Contrat de co-working Heidi Brown à effet au 15 août 2022
35) A) Souscription d'une couverture santé MODA aux US pour Monsieur PARIS 29 juillet 2022 B) attestation de souscription
36) Confirmation par l'assurance santé de l'absence d'exclusion en cas de Maladie de Biermer ou de cancer en date du 5 août 2022
37) Confirmation de rendez-vous médical avec médecin de l'assurance santé pour Monsieur PARIS le 25 août 2022
38) Confirmation de rendez-vous avec un gastroentérologue pour le 10 octobre 2022 pour Monsieur PARIS à Ashland
39) Nouvelle couverture santé de Monsieur PARIS aux US en date du 22 août 2022
40) Traduction assermentée décision de non retour du 7 décembre 2022
41) A) Projet contrat de bail appartement rue Malher en septembre 2019 B) Echange de mail du 13 septembre 2019 sur prise de bail C) Echange de mail sur achats de meubles nouvel appartement
42) Traduction assermentée requête de Madame BROWN 7 octobre 2022
43) Traduction assermentée ordonnance conservatoire de résidence temporaire 11 octobre 2022
44) Communication des différentes adresses de Monsieur PARIS aux US
45) Lettre de démission du travail de Monsieur PARIS le 28 août 2022
46) Echange whatsapp du 29 août 2022 sur l'arrivée de Monsieur PARIS en camion

Sur la situation des filles aux Etats-Unis

47) Photos des filles heureuses aux Etats-Unis
48) Relevé de note premier semestre 2022/2023 Eva + traduction libre
49) Relevé de note premier semestre 2022/2023

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF JACKSON

In the Matter of:

HEIDI MARIE BROWN,

        Petitioner,

   and

ARNAUD PARIS,

        Respondent.

Case No. 22DR17285

**DECLARATION**

1. My name is Terence Richoux. I am a licensed and practicing attorney at law in Paris, France. I represent Mr. Arnaud Paris in a pending matter before the French court. That case is against Mr. Heidi Brown. The claims to be adjudicated by the French court concern the care, custody and control of the minor children of the parties, rights of visitation as well as support as appropriate between the parties for their minor children. I have also asked the French court to determine liability between the parties for any mutual debts they may have in France. I am familiar with the proceeding pending between the parties in Oregon, and there is no question in my mind that the causes are parallel proceedings seeking the same relief. The court in France will determine for the care, control and custody of the children based on the children's best interests. Furthermore, a schedule will be determined for each parent to spend time with the children based on the children's best interests.

///

///

Page 1 - DECLARATION

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 46 - PAGE 18 OF 19

1  ///

2  2.  Attached to my declaration as Exhibit 1 is a true copy of the summary of
3  arguments set to be presented to the French judge regarding the matter. I direct your
4  attention in particular to page 12 where I have translated into English the claims to be
5  determined by the French court.

6  3.  I hereby declare that the above statement is true to the best of my
7  knowledge and belief, and that I understand it is made for use as evidence in court and
8  is subject to penalty for perjury.

10  Dated: March 24, 2023

By: Terence RICHOUX

Page 2 - DECLARATION

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

EXHIBIT 46 - PAGE 19 OF 19