# EXHIBIT 49

August 3, 2023
Excerpt of Proceedings

1

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF JACKSON

BEFORE THE HONORABLE DAVID ORR

ARNAUD PARIS,                      )
                                   )
         Petitioner,               )
                                   )
    v.                             ) No. 23DR08269
                                   )
HEIDI MARIE BROWN,                 )
                                   )
         Respondent.               )
-------------------------------

HEIDI MARIE BROWN,                 )
                                   )
         Petitioner,               )
                                   )
    v.                             ) No. 22DR17285
                                   )
ARNAUD PARIS,                      )
                                   )
         Respondent.               )

EXCERPT OF PROCEEDINGS

August 3, 2023, Thursday

4:40 to 4:53 P.M.

APPEARANCES:

For Petitioner/Respondent Brown:   MR. TAYLOR MURDOCH

For Respondent Paris:   MR. THOMAS BITTNER

Transcribed by:  Eleanor G. Knapp, RPR-CSR

```
 1       Excerpt of Proceedings, Thursday, August 3, 2023
 2                     4:40 to 4:53 P.M.
 3                          ***
 4       A.    -- on a good.  Day French legalese, I
 5   don't even know where to begin.
 6   BY MR. MURDOCH:
 7       Q.    We'll go over this in a bit.  But you did
 8   receive the summons for that initial hearing in
 9   January.
10       A.    Yes.
11       Q.    And that was in French only.  Correct?
12       A.    It was in French only.
13       Q.    So the translation that was provided to
14   the Court was not something that you received.  It
15   was something that your attorneys obtained later.
16   Correct?
17       A.    Yes.
18       Q.    And you are a citizen of the State of
19   Oregon.
20       A.    I'm what?
21       Q.    You are a citizen of the State of Oregon.
22       A.    I am.
23       Q.    And you are protected by the constitution,
24   to the best of your knowledge, Ms. Brown, of the
25   State of Oregon as well, are you not?
```

```
1      A.    I guess.
2      Q.    And you are aware that in this court, are
3   you not, that you can request a copy of the formal
4   proceeding that happens on the record and find out
5   what happened in this court?
6      A.    Yes.  I am well aware.
7      Q.    Have you requested recordings in this
8   court, for example, for things that have happened
9   during the pendency of this matter?
10     A.    Yes.  Many.
11     Q.    Do you have that ability to do that in
12  France?
13     A.    No.  They -- they just have a bailiff
14  taking, like, shorthand, handwritten notes on maybe
15  one piece of paper.
16     Q.    And are you able to request those at some
17  point?
18     A.    Not personally.  You would have to have a
19  lawyer ask the judge to do her a personal favor in
20  order to get a copy of those notes.
21     Q.    And you provided -- we'll go over this --
22     A.    Yeah.
23     Q.    -- likely not today.  But at some point
24  you acquired a translated copy of those notes --
25     A.    I did.
```

```
1       Q.    -- from the March hearing.
2       A.    Yeah, I did.
3       Q.    Now, you are also aware, are you not, that
4  -- actually, quite aware, likely, due to the
5  proceedings today in this matter that you have a
6  right under the Oregon constitution to be present in
7  a proceeding in which custody of your children is
8  adjudicated, are you not?
9       A.    Yes.
10      Q.    And you are aware that Mr. Paris has a
11 right to be present in court at a proceeding to
12 adjudicate custody of his children as well?
13      A.    Yep.  Yes.
14      Q.    Were you present at that hearing in March
15 in any capacity?  Were you listening on the phone or
16 were you doing anything --
17      A.    They don't have any capacity for -- or any
18 option for a remote hearing.
19      Q.    How long did that hearing last?
20      A.    My understanding is it lasted all of 40
21 minutes to cover all of jurisdiction and custody
22 which -- mind-blowing.
23      Q.    And was there any opportunity for you to
24 present evidence, such as testimony from witnesses
25 or testimony from family members who are here
```

```
1     present in the courtroom?
2         A.    No.
3         Q.    Mr. Paris is -- was born in France.
4     Correct?
5         A.    Correct.
6         Q.    He's a native French speaker.  Correct?
7         A.    Correct.
8         Q.    Would it be fair to say that he would have
9     more knowledge than you about the court processes in
10    France when it comes to -- when it ame to this
11    hearing?
12        A.    Absolutely.
13        Q.    Do you feel like you were at a
14    disadvantage?
15        A.    Absolutely.
16        Q.    Why?
17        A.    Because I have absolutely no basis for
18    understanding their legal system.  I was completely
19    reliant on what my lawyer was telling me.
20        Q.    Now, the ruling that the French Court made
21    eventually -- I want to get to the substance of it.
22    But you presented arguments only on jurisdiction at
23    that hearing.  Correct?
24        A.    Yes.
25        Q.    To the best of your knowledge?
```

```
 1        A.    Yes.  Uh-huh.
 2        Q.    Just to be a devil's advocate, why
 3   wouldn't you just make sure that the submission that
 4   you provided to the Court in March of 2023 also
 5   included what you wanted for a parenting plan and
 6   what you thought was in the best interests of the
 7   children?
 8        A.    Because my understanding was that for
 9   custody you needed to be physically present to make
10   oral argument on custody.  Like, it's a very
11   important thing that you're physically there to --
12   yeah -- to -- to discuss the custody issue.
13        Q.    Now, there are proceedings that are
14   scheduled in France right now.  Correct?
15        A.    Yes.
16        Q.    Mr. Paris has asked for a five-year no-fly
17   rule to stop the children from leaving -- leaving
18   France at all on any airplane.
19        A.    Yes.
20        Q.    And there's a hearing that's set in that
21   matter in August of this month -- or August 24th,
22   later this month.
23        A.    That's correct.
24        Q.    And you are going to that hearing, aren't
25   you?
```

```
 1        A.    I sure am.  I've got my tickets.  I've got
 2   my hotel.  My mom's coming with me.  Yep.
 3        Q.    And you have a different lawyer now in
 4   France --
 5        A.    I do.
 6        Q.    Ms. Brassens.  Correct?
 7        A.    That's correct.
 8        Q.    And you are aware, are you not, that that
 9   hearing could have significant impacts on your
10   children and their future?
11        A.    Yes.  Yes.
12        Q.    Ms. Brown, the hearing in March was much
13   more significant in many ways than this hearing
14   that's coming up in August, was it not?
15        A.    Yes.
16        Q.    Did the Court ever call you and say,
17   "Ms. Brown, we need to hear from you.  Where are
18   you"?
19        A.    No.  I had no way of getting that
20   information.  It's not listed online.
21        Q.    Did the Court ever call you like this
22   Court called Mr. -- Mr. Paris for this proceeding?
23        A.    No.
24        Q.    Did the Court ever give you an opportunity
25   to make any sort of statement at that proceeding?
```

```
 1        A.    No.
 2        Q.    Did the Court ever give you any
 3   opportunity to express what you thought were in the
 4   best interests of your children at this hearing in
 5   March of 2023 in Paris, France?
 6        A.    No.  No.  I never had a chance.  And they
 7   never asked me, and they never notified me.
 8        Q.    Did they ever stop the proceedings because
 9   you weren't there, to the best of your knowledge?
10        A.    No.
11        Q.    Did they -- did they ever offer to -- was
12   there ever any effort that you're aware of to
13   consider testimony from witnesses such as the folks
14   from France who testified on behalf of Mr. Paris?
15        A.    No.  Nothing.
16        Q.    To the best of your knowledge, Ms. Brown,
17   if you had asked to have these people appear
18   remotely or provide testimony at this 40-minute
19   hearing in which custody and parenting time of your
20   children was adjudicated in addition to
21   jurisdiction, would you have been able to present
22   any of that evidence?
23        A.    Over there?  No.  They don't do remote.
24              Is that -- I'm not sure I understood the
25   question.
```

```
 1      Q.   It was a bit of a compound question.  I'm
 2   sorry.  But, Ms. Brown, they don't do remote over
 3   there.  Is that a fair understanding?
 4      A.   They don't do any remote or any recordings
 5   of any of the proceedings.
 6      Q.   So are they -- to the best of your
 7   knowledge, is a French court able to gather the sort
 8   of information that the Oregon court has gathered in
 9   this proceeding?
10      A.   No.  Not to my knowledge.  Again, I don't
11   really know what their system is like.  But, yeah, I
12   don't think there's any way to do it.
13      Q.   Now I want to talk a little bit about that
14   French judgment.  And there's some important
15   proceeding -- information in it.  And I think you
16   have in front of you Exhibit 3.  I think if we can
17   turn there that it includes a translated copy of the
18   French (unintelligible).
19           THE COURT:  What was that again,
20   Mr. Murdoch?
21           MR. MURDOCH:  Thank you, Your Honor.
22   I believe it's Exhibit 3, and it's the subject --
23   second motion to dismiss for lack of subject matter
24   jurisdiction which was dismissed on today's date.
25   But it includes a copy of the French judgment that I
```

```
 1   want to inquire of the witness.
 2        A.   Oh, Lord.
 3   BY MR. MURDOCH:
 4        Q.   There's a certified translation --
 5        A.   Sorry.  I'm having a technical issue here.
 6   I found Exhibit 3.
 7        Q.   Okay.  Let's close it up because we only
 8   have about ten more minutes.
 9        A.   You got it.
10        Q.   So this is Exhibit 3, and then there's an
11   attachment in the back which is -- I think it's --
12   it's about 100 pages in.
13        A.   Okay.
14        Q.   And it's -- the first page of it is
15   judgment entered on April 21, 2023.
16        A.   It's on page 100?
17        Q.   Yeah, about 100 pages in.
18        A.   Okay.
19        Q.   So we'll take a look at the French
20   translation now.
21        A.   Yes.
22        Q.   Rather the initial (unintelligible).  And
23   this is the English translation?
24        A.   Yeah.
25             MR. MURDOCH:  Does the Court have a
```

```
 1   copy of the French judgment in front of it?
 2                THE COURT:  I do.
 3   BY MR. MURDOCH:
 4        Q.   So this is a translated version -- a
 5   certified translation, that you're aware of, of the
 6   French judgment.  Correct?
 7        A.   That is correct.
 8        Q.   Now let's look at this judgment.  There's
 9   a statement in the case that was made by the judge
10   -- I believe the Court's name is Judge Karina
11   Brahimi (phonetic) is the Court -- the judge in
12   France.
13                And I note that on the first place it
14   indicates you and your address on page 1 -- sorry.
15   I'm going to go back and slow down a little bit,
16   Ms. Brown.
17        A.   Yes.  That's correct.
18        Q.   And there's -- it indicates you were
19   there, but it indicated that you did not appear at
20   that proceeding?
21        A.   That's correct.  I think.
22        Q.   And I'm looking under the defendant.  You
23   notice that --
24        A.   Okay.  Yes.
25        Q.   -- it indicated that Mr. Paris appeared?
```

```
 1        A.    Uh-huh.
 2        Q.    And there's no indication that you didn't
 3   -- that you appeared.
 4        A.    Yeah.  That's correct.
 5        Q.    And on page 2 there's a statement of the
 6   case.
 7        A.    Yes.
 8        Q.    And it looks like -- I'm looking down
 9   beginning March -- at the hearing on March 31, which
10   is about 6 pages down -- or 6 paragraphs down the
11   page.  Excuse me.
12        A.    Yep.
13        Q.    Mr. Paris was present and assisted by his
14   counsel, Ms. Brown was absent but was represented by
15   her counsel, and that your counsel made a request
16   for an adjournment that was rejected as unjustified.
17        A.    That is correct.
18        Q.    And I notice that in his written
19   submissions Mr. Paris requests a long list of things
20   starting with the joint exercise of parental
21   authority.
22        A.    Yes.
23        Q.    And the first things that you requested
24   down below were to declare the Court of Appeals does
25   not have jurisdiction?
```

```
 1        A.    That is correct.
 2        Q.    And it indicates that you asked for this
 3   case in France not have jurisdiction but the Circuit
 4   Court of the State of Oregon.
 5        A.    That is correct.
 6        Q.    So is it your understanding that at this
 7   time the Court in France knew about this proceeding
 8   in Oregon?
 9        A.    Oh, yes.
10        Q.    Are you aware of any time at which the
11   Court in France reached out to Judge Orr to speak to
12   Judge Orr about this proceeding?
13        A.    No.
14        Q.    To the best of your knowledge, did that
15   not occur?
16        A.    To the best of my knowledge, that never
17   occurred.
18        Q.    And it looks like -- the written
19   submissions, these are the priorities that you noted
20   in limine (unintelligible)?
21        A.    Uh-huh.
22        Q.    Then on page 2 there's on the merits, to
23   establish the residence of the children in the
24   maternal home in the states; failing that to
25   maintain the alternating residence in the United
```

```
 1   States and to order the sharing of the children's
 2   expenses.
 3        A.    Uh-huh.
 4        Q.    I don't see anywhere you asked the joint
 5   exercise of parental authority or anything along
 6   those terms.
 7              THE COURT:  I didn't understand that
 8   (unintelligible).
 9              THE WITNESS:  Right here.
10              THE COURT:  You don't see where she
11   asked for --
12              THE WITNESS:  Oh, this is --
13              MR. MURDOCH:  Yes.  Sorry, Your Honor.
14   I want to compare --
15              THE WITNESS:  Oh, this is Mr. Paris's
16   versus mine.
17              MR. MURDOCH:  Yeah.  Mr. Paris had a
18   long list of things that he asked for in his --
19              THE COURT:  I'm following you now.  I
20   see  where you are going.
21              MR. MURDOCH:  Sorry.  I jumped ahead,
22   Judge.
23   BY MR. MURDOCH:
24        Q.    You were asking for much less on the
25   merits rather than what he was asking for.
```

```
 1      A.    Right.  I didn't make any request for
 2   parental authority because we didn't know it was
 3   going to happen or be even talked about.
 4                (Conclusion of excerpt.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   State of Oregon      )
 2                        )   ss.
 3   County of Lane       )
 4
 5       I, Eleanor Knapp, a Certified Shorthand Reporter
 6   for the State of Oregon, do hereby certify that the
 7   foregoing pages 1 to 15 comprise a complete, true,
 8   and accurate transcription, to the best of my
 9   ability, of the requested excerpt of the audio
10   recording provided of the proceedings held in the
11   cause previously captioned and held on August 3,
12   2023.
13
14
15
16   Dated at Eugene, Oregon, this 18th day of August,
17   2023.
18
19
20
21   [signature: Eleanor Knapp]
22   Eleanor Knapp, CSR-RPR
23   CSR No. 93-0262
24   Expires:  September 30, 2023
25
```