# EXHIBIT 56

**BROWN v PARIS**

**Division 3 – Chamber 3**

**RG No.**

# CONCLUSIONS IN RESPONSE

**FOR:**

**Ms. Heidi BROWN**, born March 30, 1982 in Oregon (United States of America), residing at 2256 Abbott Ave. Ashland, OR 97520, Oregon, United States, of American nationality, director of marketing,

Represented by the attorney **Maître Sandrine FARRUGIA**,
Attorney at the PARIS bar,
Residing at 14, rue Le Sueur 75116 PARIS
Toque G0423
(Phone: 06.21.19.26.65 – Mail : farrugiaavocat@gmail.com)

AGAINST:

**Mr. Arnaud PARIS**, Born April 14, 1978 in Longjumeau (Essonne), of Franco-American nationality, filmmaker, residing at 13, rue Ferdinand DUVAL, PARIS (75004)

Represented by the attorney **Maître Terence RICHOUX**,
Attorney at the PARIS bar,
Residing at 23, rue Henri Barbusse 75005 PARIS
Toque E780

**[TRANSLATOR'S NOTE:**

**In the following excerpt of pages 30 to 33 of this legal submission by Ms. Brown's attorney, Sandrine FARRUGIA, only the key highlighted sentences have been translated. The remainder of the text has been left in French.]**

EXHIBIT 56 - PAGE 1 OF 6

Elle a obligation de répondre à première demande à toutes les exigences du père.

Il exige également des appels en visio pour vérifier où se trouvent les enfants.

Monsieur PARIS fait preuve d'une ingérence qui frôle le harcèlement.

Monsieur PARIS outrepasse ses droits et porte atteinte aux droits parentaux de la mère.

Par conséquent, la mise en oeuvre de l'interdiction de sortie du territoire sans l'accord des deux parents et le positionnement subséquent de refus systématique de Monsieur PARIS ne permettra pas à Madame BROWN de voir ses enfants si ce n'est 10 jours par an.

Une telle situation constitue de toute évidence non seulement **une consequence manifestement excessive pour Madame BROWN mais apparaît également contraire à l'intérêt de Juliette et Eva.**

Or en réalité, il n'existe au risque de fuite de Madame BROWN avec les deux filles.

### - *Regarding the absence of flight risk for Ms. BROWN*

Au jour des présentes, Monsieur PARIS a demandé l'homologation du jugement français dans plusieurs États américains.

Il n'ignore pas que Madame BROWN a accepté cette validation puisqu'il écrit lui-même : « *vous avez même reconnu la validité du jugement français en CALIFORNIE* ».

### Pièce n° 72

Mr. PARIS therefore cannot legitimately claim that there is a risk of the mother absconding with the children.

Moreover, Mr. PARIS's fears are highly inappropriate insofar as **he is the only one to have ignored an enforceable decision and to have unlawfully removed Juliette and Eva**.

En effet, Monsieur PARIS savait pertinemment que la décision de STATU QUO ne lui permettait pas de déplacer les enfants de l'État de l'Oregon tant que le juge américain n'avait pas statué sur la procédure d'exéquatur.

Monsieur PARIS a donc été à l'encontre de la décision de la juridiction américaine antérieure au jugement du Juge aux affaires familiales du Tribunal Judiciaire de PARIS pour faire valider la soustraction des enfants par le Juge français – ce qu'il a obtenu par fraude en première instance.

EXHIBIT 56 - PAGE 2 OF 6

Madame BROWN souhaite seulement pouvoir **disposer d'une décision lui permettant de maintenir des liens réguliers, stables et protecteurs avec ses enfants.**

La situation est telle aujourd'hui que **tout maintien du lien et tout exercice des droits de Madame BROWN est soumis au bon vouloir et à la toute-puissance de Monsieur PARIS et ce, sans aucune prise en compte de l'intérêt de Juliette et Eva.**

Sur ce point, Monsieur PARIS se prévaut du fait que la mère a sollicité la deliverance de passeport américain pour les enfants.

But as we have indicated extensively, Mr. PARIS refuses to issue French passports or even any identity papers for the children, maintaining that the mother would only use them to flee.

D'une part, il sera rappelé que Madame BROWN a rencontré ses enfants durant les vacances de Noël sans tenter de fuir comme le prétend le père.

D'autre part, durant les vacances de février 2024, alors qu'elle a obtenu des passeports américains ce que Monsieur PARIS n'ignore pas pour avoir été averti par l'ambassade américaine, elle n'a pas non plus tenté de fuir…

The alleged flight is only a figment of Mr. PARIS' imagination, which is why he mentions a safety protocol.

Monsieur PARIS omet également de préciser qu'il procède à l'enregistrement du jugement français dans différents Etats américains.

### Pièce n° 94

Dans l'intervalle, l'instance pendante aux Etats Unis, introduite bien avant le depart du père avec les enfants, a accordé la garde exclusive des enfants aux Etats Unis.

Néanmoins, cette décision n'est pas exécutoire puisque le jugement du 21 avril 2023 rendu par le Juge aux affaires familiales du Tribunal Judiciaire de PARIS prévaut.

Cette décision pourrait être applicable que dans l'hypothèse où la Cour d'Appel de PARIS saisie de la demande de réformation du jugement du 21 avril 2023 faisait droit à la demande de la mère.

But the hearing will not take place until October 2024, and Ms. Brown has never wished to commit any offence.

EXHIBIT 56 - PAGE 3 OF 6

In addition, Ms. Brown's job requires her to travel and she has no intention of committing the offence of unlawful child removal, as Mr. Paris did when he left the USA.

En effet, elle doit pouvoir encore se déplacer librement dans le monde et y compris en France d'autant plus que le père de ses enfants est français.

Les enfants sont franco-américaines et Madame BROWN ne tient pas à se livrer aux mêmes délits que le père.

De plus, et à titre exemple, pour les vacances de Pâques, Madame BROWN doit se rendre à PERPIGNAN (66) avec les enfants.

Compte tenu de la distance, elle a pris des billets d'avions « aller et retour » PARIS-PERPIGNAN, dûment communiqués au père comme il l'a exigé.

Néanmoins, pour prendre l'avion, les enfants doivent disposer de pièces d'identité, ce qui est refusé par Monsieur PARIS y compris pour des déplacements en France.

Au surplus, Monsieur PARIS est déjà poursuivi aux USA pour avoir placé un tracker sur le véhicule de Madame BROWN mais surtout pour avoir subtilisé les données de son ordinateur personnel.

Il a donc été inculpé de délits informatiques et il est actuellement en liberté sous caution.

La remise des passeports américains, seules pieces d'identité des enfants, pourrait lui permettre de se livrer à de nouveaux délits :

- Annulation des passeports en ligne,
- Contracter des prêts au nom des enfants,
- Faire établir des cartes de crédit au nom des enfants,

Ainsi, Monsieur PARIS reste redevable de la somme de 26.500 dollars pour un prêt contracté en juillet 2020 auprès de l'enseigne SMALL BUSINESS ADMINISTRATION prétendant vivre à TOPANGA (Californie) alors qu'il avait déménagé en août 2019.

Monsieur PARIS a perçu les allocations chômage aux USA alors qu'il se trouvait sur le territoire français.

Il a également perçu les aides COVID 19 alors qu'il était résident américain.

Mr. PARIS has also been ordered to pay Ms. BROWN 225,000 dollars in legal fees incurred in the USA, which he has not paid;

EXHIBIT 56 - PAGE 4 OF 6

if Ms. BROWN were to "kidnap" the children as he claims, she would forego obtaining such a sum.

L'argumentation de Monsieur PARIS n'est pas sérieuse.

Il cherche uniquement à priver la mère des enfants.

Il prive également ses enfants de leurs racines américaines en ne leur permettant pas de retourner dans le pays dont elles ont la nationalité.

Enfin, et comme le précise la jeune fille au pair embauchée par Monsieur PARIS pour s'occuper des deux enfants, depuis son arrivée en France, elle s'est occupée seule deux enfants « *pendant ces 50 jours et plus j'ai eu la garde des filles pendant presque toutes les heures d'éveil, sans compter l'école et les activités extra-scolaires* ».

**Pièce n° 93**

Par conséquent, les enfants Juliette et Eva sont pris à charge par une jeune fille au pair âgée de juste 20 ans, depuis la rentrée scolaire de manière quasi exclusive.

Il est donc patent que l'exécution provisoire de la décision du 25 août entraine des conséquences d'une particulière gravité et manifestement excessives pour Madame BROWN.

***

Eu égard à l'ensemble des développements ci-avant, il est patent qu'il existe **un motif sérieux d'annulation de la décision,** dans la mesure où l'assignation de Monsieur PARIS n'a **jamais fait l'objet d'une signification** – tant en France qu'aux Etats-Unis – de sorte qu'elle ne pouvait valablement saisir le Juge aux affaires familiales près le Tribunal judiciaire de Paris.

En outre, l'exécution provisoire entraine des **conséquences manifestement excessives** pour madame BROWN en ce qu'elle fait **obstacle à la poursuite de liens réguliers et sécurisants avec ses deux filles.**

Dans ces conditions, Madame BROWN est parfaitement légitime à solliciter de Madame ou Monsieur le Premier Président près la Cour d'appel de Paris qu'il arrête l'exécution provisoire attachée au Jugement du 25 août 2023 rendu par le Juge aux affaires familiales du Tribunal Judiciaire de Paris.

**PAR CES MOTIFS**

EXHIBIT 56 - PAGE 5 OF 6

*Vu l'article 517-1 du code de procédure civile,*
*Vu les articles 653 et suivants du code de procédure civile,*
*Vu les articles 683 et suivants du code de procédure civile,*
*Vu le Jugement du 25 août 2023,*
*Vu les pièces versées au débat,*

Il est demandé à Madame ou Monsieur le Premier Président de :

**RECEVOIR** Madame BROWN en ses demandes et l'y déclarer bien fondée ;

**JUGER** qu'il existe moyen sérieux d'annulation ou de réformation de la décision du 25 août 2023 et que l'exécution provisoire de cette même décision entraine des conséquences manifestement excessives pour Madame BROWN ;

*En conséquence,*

**ORDONNER** l'arrêt de l'exécution provisoire attachée au Jugement du 25 août 2023 rendue par le Juge aux affaires familiales du Tribunal judiciaire de Paris ;

**CONDAMNER** Monsieur PARIS au paiement de la somme de 3.000 euros au titre de l'article 700 du code de procédure civile et aux entiers dépens.

*SOUS TOUTES RESERVES*

EXHIBIT 56 - PAGE 6 OF 6