# EXHIBIT 58

**PARIS COURT OF APPEAL**
Division 3 – Chamber 3

Paris, April 3, 2024

Entrance: 10, bd. du Palais
Phone: 01 44 32 52 52

Open Monday to Friday
from 9 AM to 5 PM

Case no.: RG 24/05513
Portalis no.: 35L7-V-B7I-CJEDK
Division 3 – Chamber 3



Verify at www.atanet.org/verify

**Nature of referral act:** Summons – Proceedings on the merits
**Date of referral act:** March 12, 2024
**Date of referral:** March 26, 2024
**Nature of the matter:** Request of a ban on departure of a minor from French territory without authorization from both parents
**Decision attacked:** No. 23/37100 issued by the Family Court Judge of PARIS on August 25, 2023

**Appellant:**
 **Ms. Heidi BROWN,** represented by Maître Sandrine FARRUGIA, attorney at the PARIS bar

**Respondent:**
 **Mr. Arnaud PARIS,** represented by Maître Terence RICHOUX, attorney at the PARIS bar

**Requesting party:**
**Ms. Heidi BROWN, person appearing, assisted by Maître Sandrine FARRUGIA**

**Respondent:**
**Mr. Arnaud PARIS, person appearing, assisted by Maître Terence RICHOUX**

Reading of the facts by Madam President

**Madam President** notes that there are 2 appeals: the appeal of the IST [departure ban] 3-2 and the appeal on the merits 3-4 and that the attorneys can request at this point that everything be adjudicated by the same chamber.

**Maître FARRUGIA:** There are 2 points to be made regarding serious grounds for repeal and manifestly excessive consequences.
Regarding the serious grounds for repeal: There is a problem with the service of this summons. The writ was not served on Ms. BROWN. In the meantime, Mr. PARIS has re-summoned Ms. BROWN to appear before the Family Court Judge regarding the children's dental care. She does not object to the care, but wanted to know the reason for it. And we realized that this summons never reached Ms. BROWN and that she only received it through me. The service method in the United States is slightly different from in France. We tried to find out what happened to the service of the departure ban. I contacted the BAPA [Appeal Procedure Assistance Office], which advised me to issue a summons to communicate and they sent me back the same writ. So I'm going to check the other previous writs, and I refer you to my exhibit 89.
They tell us that the papers have been found and prove that the summons of July 29, 2023 were delivered to my client at her home in the United States, but I tell you that the summons was never served. This summons for a hearing on August 24, 2023 and resulted in the decision of August 25, 2023. Ms. BROWN came because we received the information via the intermediary of the attorneys. I attended as well. She was present and represented; Article 688 of the CPP [Code of Penal Procedure] states that [there is] a method of service for delivering the summons that must be respected. The writ is not translated into English. This is not a cause for nullity. The procedure is irregular because the writ was not served on my client. A plan for service was all I received, through communication between attorneys. I refer you to my written submissions, Madam President.
Regarding the manifestly excessive consequences: Mr. PARIS is taking advantage of the departure ban without the agreement of both parents to systematically veto all of Ms. BROWN's requests. I refer you to my exhibits 73, 74, & 75. Ms. BROWN has just 10 days of vacation per year. When she is in France, she takes advantage of the time difference to [work independently from home].
Before this April 21 decision, the whole family lived in the United States until October 9, 2022. On October 7, 2022, they were all living under the same roof and they separated; I refer you to exhibits 32 and 34 when he referred the matter to the Family Court Judge because he uses an apartment in Paris. He has had an American residency card for 20 years. It is unclear

EXHIBIT 58 - PAGE 1 OF 6

what he does there. He has been released on bail in the United States: placement of a tracker on Ms. BROWN's car and he went to look at her emails with his attorney.

In the US, alternating custody until July 19, 2023 in the United States in accordance with the agreement: two court orders issued by an American judge. The children prohibited from leaving the state of Oregon. In the meantime, the Paris Family Court Judge established the residency of the children at their father's home, saying that the children would come to France starting September 2023 because it was necessary to respect the order and the parenting time.

To respond to your question, the American and French authorities were following each other. At the hearing that resulted in the April 21 decision, my colleague who represented Ms. BROWN pled with in regard to the territorial lack of jurisdiction of the French court, without submitting exhibits on the merits.

The American court orders were not communicated to the French judge.

I would like to draw your attention to the risk of very serious consequences for the children concerning the mother-and-child relationship. I would also request that you examine attentively my exhibits 80, 92, and 93. An Apple watch was given to a 9 year-old child so that she could call her father 24 hours a day. She is obliged to report all of the addresses where she goes in France. She obtained American passports for her children in order to be able to board the plane for domestic travel in France with her daughters.

She has just 10 days of paid vacation per year.

To respond to your question: Manifestly excessive consequences. Infringement of the mother's right to freedom of movement in France and the father's systematic veto.


**Maître RICHOUX**: The parents draft an agreement in which the parents commit to one year in France and one year in the US. Everyone had been living in France for 3 years. Mr. PARIS uses the family computer. The agreement is exhibit 4 and the direct quote that recaps everything is exhibit 5. This email contains Ms. BROWN's plan. So he refers the matter to the Family Court Judge in France; Ms. BROWN's arguments submitted at the March 31 hearing, detailing the American court orders; the French judge was aware of everything and ruled on the question of *lis pendens*.

Ms. BROWN set down in black and white that she would not respect French justice.

As of August 16, 2023, the French decision is not applicable in the United States.

Mr. PARIS therefore referred the matter in summary proceedings to the Paris Family Court Judge, who issued a departure ban ruling. I refer you to my exhibit 70, which proves that the summons was hand delivered on July 29, 2023 at 1:17 PM.

Ms. BROWN took no action to challenge because she knows she received the writ. I invite you to examine exhibit 86 from the opposition; it is bank card statements from 2 days before – it could be a delayed debit. This tells us nothing for the 29th. This exhibit contains 2 lines that are redacted in black.

In exhibit 78, I submit an almost identical statement. You can see the details of the flight.

524 code of civil procedure: CPC 74 states that pleas of formal nullity must be raised before any defense on the merits. The Court of Cassation [Supreme Court of France for Civil and Criminal Matters] reminds us that this condition is valid before the Court of Appeal. Ms. BROWN argued on the merits, but not on the formal nullity before the Court of Appeal that day. This request for formal nullity therefore cannot be considered.

Supposing that this nullity had been established, which is not the case, she did nevertheless appear.

Regarding the manifestly excessive consequences: This week is not Ms. BROWN's week; the school security protocol is in place due to the fact that on February 23, 2024 she requested an international extradition warrant against Mr. PARIS and the girls with the assistance of the FBI.

On December 28, 2023, a judge awarded exclusive custody to Ms. BROWN. She asked the judge to order the return of the girls to the US on penalty of 500 dollars per day.

What would constitute manifestly excessive consequences would be suspending the provisional enforcement.

All of the conditions had the sole objective of ensuring that the French decisions were re-transcribed in the US; for the rest, she had the option of making counterproposals.

She sent the Oregon prosecutor the proposed protocol, stating that the sole objective was to deny her right of custody of the children.

Refuse Ms. BROWN's request and ask yourself whether the procedure is abusive; I refer you to my conclusions for the rest.

**Maître FARRUGIA**: With regard to the message of the attorney in the computer: She did not write an email saying that she [would not] respect the French judge, but that she was waiting for the outcome of the appeal process.

EXHIBIT 58 - PAGE 2 OF 6

The decision by the judge in Oregon in which she obtained custody is not enforceable as long as we do not have the results of the Court of Appeal. She does not to commit a child abduction.

I maintain my request for a suspension of provisional enforcement.

**Madam President** proposes an informational and mediation meeting and explains that a decision will be issued regardless of what the parties decide regarding mediation. The parties accept the informational meeting.
The attorneys will have to draft a post-hearing submission to inform the President of their client's decision.

Hearing on May 23, 2024

*The Clerk*
[Signature]

*The President*
[Signature]

Verify at www.atanet.org/verify

[Stamp:]
*May 23, 2024*
CERTIFIE3D COPY
The Clerk

[Seal:]
PARIS COURT OF APPEAL
[Signature]

EXHIBIT 58 - PAGE 3 OF 6

COUR D'APPEL DE PARIS
Pôle 3 - Chambre 3

Paris, le 03 Avril 2024

Accès : 10, bd du Palais
Tél :01.44.32.52.52

Accueil du lundi au vendredi
de 9 heures à 17 heures

Référence du dossier : N° RG 24/05513 - N° Portalis
35L7-V-B7I-CJEDK

Pôle 3 - Chambre 3

**Nature de l'acte de saisine :** Assignation - procédure au fond
**Date de l'acte de saisine :** 12 Mars 2024
**Date de saisine :** 26 Mars 2024
**Nature de l'affaire :** Demande d'interdiction de sortie de territoire d'un mineur sans l'autorisation des deux parents
**Décision attaquée :** n° 23/37100 rendue par le Juge aux affaires familiales de PARIS le 25 Août 2023

**Appelante :**
Madame Heidi BROWN, représentée par Me Sandrine FARRUGIA, avocat au barreau de PARIS

**Intimé :**
Monsieur Arnaud PARIS, représenté par Me Terence RICHOUX, avocat au barreau de PARIS

**Demandeur à la requête :**
Madame BROWN Heidi, comparante, assistée par Me Sandrine FARRUGIA

**Défendeur à la requête :**
Monsieur Arnaud PARIS, comparant, assisté par Me RICHOUX Terrence

Lecture des faits par Mme la présidente

**Mme la présidente** relève qu'il y a 2 appels : l'appel de l'IST 3-2 et l'appel sur le fond 3-4 et que les avocats peuvent demander à ce que tout soit jugé par la même chambre.

**Me FARRUGIA :** il y a 2 choses sur les moyens sérieux d'annulation et des conséquences manifestement excessives .
Sur les moyens sérieux d'annulation : un pb avec la signification de cette assignation. L'acte n'a pas été signifié à Mme. Entre temps Monsieur a re assigner Mme devant JAF pour des soins dentaires sur les enfants. Elle ne contestait pas les soins mais voulait comprendre le pourquoi. Et on s'est rendu compte que cette assignation n'est jamais parvenue à Mme et qu'elle ne l'a eu que par mon intermédiaire. Le mode délivrance aux Etat Unis est légèrement différent d'en France. On a cherché à savoir ce qu'il c'était passé pour la signification de l'IST. J'ai pris attache avec le BAPA qui m'a conseillé de faire une sommation de communiquer, et on m'a renvoyé le même acte. Je vais donc vérifier les autres actes antérieurs, je vous renvoi à ma pièce 89.
On nous dit qu'on a retrouvé les papiers et donne preuve de l'assignation 29 juillet 2023 remise a ma cliente a son domicile aux Etats Unis et moi je vous dit qu'elle n'a jamais été remise. Cette assignation pour audience 24 aout 2023 et donné lieu au jugement 25 aout 2023. Elle est venue parce qu'on avait eu l'information par l'intermédiaire des avocats. Je l'assistait. Elle était présente et représentée, art 688 epp dit que la délivrance de l'assignation modalité de remise qui doivent être respectée. L'acte n'est pas traduit en anglais. C'est pas une cause de nullité. La procédure est irrégulière car l'acte n'a pas été remis à ma cliente. Je n'ai reçu qu'un projet d'assignation par communication entre avocats. Je vous renvoie à mes écritures Mme le président.
Sur les conséquences manifestement excessives : Monsieur profite de l'IST sans l'accord des deux parents pour mettre un droit de véto systématique à toutes les demandes de Madame. Je vous renvoi à mes pièces 73, 74, 75. Mme n'a que 10 jours de congés par an. Quand elle est en France elle profite du décélage horaire pour faire du Tlt.
Avant cette décision du 21 avril toute la famille vivait aux etats unis jusqu'au 9 octobre 2022. Le 7 octobre 2022 ils sont sous le même toit et ils se séparent, je vous renvoi aux  pièces 32 et 34 alors qu'il saisit le JAF en France parce qu'il se sert d'un appartement à paris. Il a une carte de résident américain

EXHIBIT 58 - PAGE 4 OF 6

Aux E.U garde alternée jusqu'au 19 juillet 2023 aux Etats Unis suivant un accord : 2 ordonnances d'un juge américain. Les enfants ne pouvaient pas sortir de l'Etat de l'Oregon. Entre temps JAF de Paris a fixé résidence des enfants au domicile du père, endisant que les enfants viendraient en France à partir de septembre 2023 car il fallait respeter les ordonnance et le temp parental.

Pour vous répondre les instances américaines et françaises se suivaient. L'audience qui a donné lieu à la décision du 21 avril la consoeur qui représentait Madame n'a plaidé que sur l'incompétence territoriale de la jurdiction française sans fournir de pièces au fond.

Les ordonnances américaines n'ont pas été comuniquées au juge français.

J'attire votre attention sur les conséquences exessives et du risque de conséquences très graves sur les enfants concerne le lien famille maternelle / enfant. Je vous invite également à regarder attentivement mes pièces 80, 92 et 93. On adonné une appel watch a une enfant de 9 ans pour qu'elle puisse appeler son père H24. Elle a obligation de donner toutes les adresses où elle va en France. Elle a fait des passeports américains à ses enfants pour pouvoir prendre l'avion en France intra muros avec ses filles. Elle a que 10 jours de congés payé par an.

Pour vous répondre : conséquences manifestement excessives. Atteintes aux droits de la mère circuler librement en france et véto systématique du père.


**Me RICHOUX** : Les parents rédigent un accord ou les parents s'engagent une année en france une année aux E.U. Ca faisait 3 ans que tout le monde vivait en France. Monsieur va dans l'ordinateur de la famille. L'accord pièce 4 et citation directe reprend tout c'est pièce 5. Ce mail reprend le plan de Madame. Il saisit alors le JAF en France, les conclusions de Mme à l'audience du 31 mars où sont détaillées les ordo américaines, le juge français était au courant de tout et a statué sur la question de la litispendance.

Madame a écrit noir sur blanc qu'elle ne respecterair pas la justice française.

A compter du 16 aout 2023 la décision française n'est pas applicable aux Etats Unis.

Monsieur a alors saisi le JAF de Paris en référé qui a rendu un jugement IST. Je vous renvoi ma pièce 70 qui prouve que l'assignation a été remise en main propre le 29 juillet 2023 à 13h17.

Mme n'a fait aucune démarche pour une inscription en Faux car elle est consciente qu'elle a reçu l'acte. Je vous invite a regarder la pièce 86 de la partie adverse. c'est des relevés de CB de 2 jours avant ca peut être un débit différé. Ca ne me dit rien pour le 29. Il y a sur cette pièce 2 lignes biffées en noir. Je vous prodiut en pièce 78 un relevé quasi identique, on voit le détail du vol.

524 code de procédure civile ; 74 cpc les nullités de forme doivent être soulevées avant toute défense au fond. La C. Cass rappelle que cette condition est valable devant la cour d'appel. Mme a conclu au fond mais par sur la nullité de forme devant Cour d'appel à ce jour.
Cette demande de nullité de forme est donc irrecevable.
A supposer cette nullité établie ce qui est faux, elle était là.

Sur les conséquences manifestement excessives : cette semaine n'est pas la semaine de madame, le protocle de sécurité à l'école est mis en place du fait le 23 février 2024 elle a demandé un mandat d'arret international d'extradiction contre monsieur et les filles avec l'assistance du FBI.

Le 28 décembre 2023 , un juge a donné la garde exclusive à Madame. Elle a demandé au juge d'ordonner le retour des filels aux E.U sous astreinte de 500 dollards par jour.

Conséquences manifestement exessives seraient de lever l'EP.

Toutes les conditions n'avaient qu'un seul objectif s'assurer que les décisions françaises soient retranscrites aux E.U. pour le reste elle pouvait faire des contre propositions.

Elle a transmit au procureur à l'orégon le protocole proposé en indiquant que le seul but etait de lui faire perdre son droit de garde des enfants.

Refuser la demande de Mme et se demander si procédure abusive, je vous renvoie a mes conclusions pour le reste.

**Me FARRUGIA** : concernant le message de l'avocat dans l'ordinateur. Elle n'a pas écrit un mail en disant qu'elle respectera le juge français mais qu'elle attend le résultat de la procédure d'appel.
La décision du juge de l'Oregon dans laquelle elle a obtenu la garde n'est pas exécutoire tant qu'on a pas le résultat de la Cour d'Appel. Elle ne compte pas souscrire un enlèvement d'enfant.

Je maintiens ma demande de suspension d'EP.

EXHIBIT 58 - PAGE 5 OF 6

Mme la présidente ... la réunion ... médiation ... que de la décision quelle que soit la décision des parties sur la médiation. Les parties acceptent la réunion d'information .

Les avocats devront faire une note en délibéré pour informer la présidente de la décision de leur client.

Délibéré 23 mai 2024

Le greffier

La présidente

Le 23.05.2024
POUR COPIE CERTIFIÉE CONFORME
Le Greffier

EXHIBIT 58 - PAGE 6 OF 6