IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

In re the Matter of J.P. and E.P:

ARNAUD PARIS,

           Petitioner,

    v.

HEIDI MARIE BROWN,

           Respondent.

Civ. No. 1:24-cv-00648-AA

**OPINION & ORDER**

AIKEN, District Judge.

    This case comes before the Court on Respondent's Motion to Dismiss Petition for Return of Children under the fugitive disentitlement doctrine. ECF No. 20. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

    The facts of this case are lengthy and unfortunate. Petitioner Arnaud Paris and Respondent Heidi Marie Brown are the parents of twin girls, aged nine. Petitioner is a citizen of France and the United States, while Respondent is a citizen of the United States. The children were born in the United States and are citizens of the United States and France. Petitioner, Respondent, and the children lived together at different times in France and in the United States in both California and

Page 1 –OPINION & ORDER

Oregon. The full details of their relationship and its breakdown are not relevant to the present motion.

On July 29, 2022, Respondent and the children relocated from France to Oregon. Petitioner continued to live in France.

In early October 2022, Petitioner and Respondent filed separate petitions for custody. Petitioner filed his petition with the French courts, while Respondent filed a Petitioner for Custody, Parenting Time, and Child Support, as well as Dissolution of Domestic Partnership in the Circuit Court for the State of Oregon in Jackson County, Case No. 22DR17285.

On October 11, 2022, the Oregon state court issued a Temporary Protective Order of Restraint ("TPOR"). Resp. Mot. Ex. 1. The TPOR fixed the children's usual place of residence in Ashland, Oregon and forbid either parent from changing the usual place of residence, placement, and daily routine of the children, including their attendance at the local elementary school. The parties were forbidden from "[l]eaving the state with their children without the written permission of the other party or the permission of the court." *Id.*

On October 20, 2022, Petitioner filed his first petition for return of the children to France under the Hague Convention in *Paris v. Brown*, Case No. 1:22-cv-01593-MC (*Paris I*). That petition was heard by U.S. District Court Judge Michael McShane and, following a hearing, Judge McShane issued a judgment on December 7, 2022, denying the petition and ordering that the children remain in Ashland, Oregon for

the 2022-2023 school year. Resp. Mot. Ex. 2. At the time of the *Paris I* judgment, custody litigation remained ongoing in Jackson County Circuit Court.

On January 6, 2023, Petitioner appealed the judgment in *Paris I*. On January 30, 2023, Petitioner dismissed his appeal of the *Paris I* judgment.

On March 31, 2023, the French court held a hearing on custody of the children based on Petitioner's filing with that court. Respondent believed that the hearing concerned only jurisdiction and so appeared through counsel and did not attend the hearing in person.

On April 21, 2023, the French court granted the parties joint custody of the children.

On May 9, 2023, Petitioner attempted to register the French judgment in Jackson County Circuit Court, Case No. 23DR08269.

On May 30, 2023, Petitioner submitted a petition to the Oregon Supreme Court seeking to vacate the TPOR. On July 11, 2023, the Oregon Supreme Court denied the petition to vacate the TPOR and subsequently denied Petitioner's motion for reconsideration on October 24, 2023. Resp. Mot. Ex. 3. An appellate judgment was entered on February 1, 2024. *Id.*

On July 12, 13, and 18, 2023, a hearing was held in Jackson County Circuit Court on Petitioner's request to register the French judgment and on Respondent's request for the Oregon courts to assert jurisdiction. The hearing recessed on July 18, at the beginning of Petitioner's cross examination. The hearing was to resume on

Page 3 –OPINION & ORDER

July 20, but the court was unavailable and the hearing was continued to August 3, 2023.

On July 22-23, 2023, Petitioner took the children from Oregon to California and then to France, despite the TPOR forbidding him from removing the children from Oregon.

On August 18, 2023, the Jackson County Circuit Court entered judgment on Petitioner's motion to register the French judgment. Resp. Mot. Ex. 4. The circuit court made a number of findings. Significantly, the court found that Petitioner "wrongfully misrepresented the registration of the French judgment to lawful authorities, and, contrary to [the circuit] court's prior, explicit, written, and repeated orders removed the minor children from this state and took them to France." *Id.* at 18. The children were, at that point, in France in violation of the circuit court's orders. The circuit court also found that the French court did not have jurisdiction to make its custody determination and that Respondent was not provided with proper notice of the hearing before the French court. *Id.* at 20-21. The circuit court determined that registration of the French judgment would violate Respondent's rights under the Oregon constitution. *Id.* at 21. "As such, the French court's custody determination is not lawful in this country and in this Court." *Id.* Instead, the Jackson County Circuit Court found that it was the court with jurisdiction "over the minor children under the UCCJEA based on significant connection jurisdiction, as there is substantial evidence of the children's care, protection, training, and personal relationships in Oregon." *Id.* at 23. "The French judgment has never been registered

in Oregon," and "is not a valid order of Oregon and has no legal effect here," and that it had no effect at the time Petitioner "fled with the minor children to France on or about July 22, 2023." *Id.* at 23-24.

The circuit court also found that Petitioner failed to appear at the hearing on August 3, 2023, despite notice "because he was in willful violation of the court's order not to leave the state with the minor children." Resp. Mot. Ex. 4, at 24. More damningly, the circuit court found that Petitioner had "acted in bad faith in this proceeding." *Id.*

On November 14, 2023, Respondent filed a Motion for Remedial Contempt against Petitioner in Jackson County Circuit Court, Case No. 23CN05721, for Petitioner's failure to abide by the TPOR by removing the children from Oregon without her consent or leave of the circuit court.

On December 21, 2023, the circuit court issued an order finding that no other state had jurisdiction over the children and reiterating that Petitioner's attempt to register the French judgment had been denied. Resp. Mot. Ex. 10. Petitioner was ordered to return the children to Oregon no later than December 14, 2023. *Id.* The children were not returned to Oregon.

On December 27, 2023, Petitioner filed a federal civil lawsuit against the Oregon circuit court judge who was presiding over the custody case in the Jackson County Circuit Court in *Paris v. Orr*, Case No. 1:23-cv-01960-MC. The case was assigned to Judge McShane, who had presided over *Paris I*. Petitioner also sought an emergency injunction, which Judge McShane denied on January 30, 2024, citing

the federal court's lack of jurisdiction over state court child custody matters. Judge McShane granted the defendant judge's motion to dismiss for failure to state a claim on February 1, 2024, citing the *Rooker-Feldman* doctrine, *Younger* abstention, sovereign immunity, and judicial immunity.

On December 28, 2023, the Jackson County Circuit Court issued a judgment of custody, parenting time, child support, and a money award in Respondent's favor. Resp. Mot. Ex. 5. In that judgment, Respondent was awarded "sole custody" of the children with limited parenting time for Petitioner. *Id.* at 3. Based on his conduct during the proceedings before the circuit court, Petitioner was not awarded the "the benefit of the provisions included in ORS 107.154 i.e., the rights generally available to noncustodial parents in the State of Oregon." *Id.* at 5. Of note, "[b]ased on [Petitioner's] conduct herein, and his disregard of court orders to the detriment of [Respondent], [Respondent] shall have no duty to provide her exact home address, or her home, work, and mobile telephone number to [Petitioner], except as she chooses." *Id.* Petitioner was found to have "repeatedly harassed [Respondent's] place of work, private businesses, court staff, family members and friends," and so additional restrictions were placed on his ability to contact Respondent or to appear at Respondent's home, place of work, or any other place he had reason to know Respondent would be without Respondent's prior written agreement. *Id.* at 8.

Among the additional terms and restrictions imposed by the circuit court's judgment, the court found that "[d]ue to [Petitioner's] history of violating an active TPOR and parenting time orders issued by this court, as well as lying to authorities,

[Petitioner] should be considered a clear risk of parental abduction." Resp. Mot. Ex. 5, at 13. The additional restrictions were put in place "[d]ue to the high-risk nature of the situation and [Petitioner's] willingness to break criminal statutes." *Id*. at 14.

On February 28, 2024, the circuit court ordered Petitioner to appear in person for a hearing to show cause. Resp. Mot. Ex. 11.

On March 4, 2024, Petitioner was again ordered to appear in person for a hearing to show cause. Resp. Mot. Ex. 12.

On March 7, 2024, Petitioner failed to appear at the hearing on Respondent's motion for remedial contempt. As a result, a warrant was issued for Petitioner's arrest by the Oregon circuit court.

On April 10, 2024, Respondent returned to Oregon with the children. Petitioner asserts that Respondent abducted the children from France. As noted, the circuit court judgment awarded sole custody of the children to Respondent and found that the French courts were without jurisdiction.

On April 16, 2024, Petitioner filed the present Petition for the return of the children pursuant to the Hague Convention.

On April 24, 2024, the Jackson County Circuit Court issued a general judgment of default and money award against Petitioner. Resp. Mot. Ex. 6. In issuing the judgment, the circuit court found that Petitioner had willfully failed to comply with court orders, both by failing to appear and by failing to provide discovery. *Id*. at 2. Petitioner was found in default and Respondent was awarded her attorney

fees and costs, as well as real property "free and clear" of any claim by Petitioner, and a substantial money judgment. *Id.* at 5-6, 8.

## DISCUSSION

Respondent moves to dismiss the Petition under the fugitive disentitlement doctrine. "The fugitive disentitlement doctrine provides that an individual 'who seeks to invoke the processes of the law while flouting them has no entitlement to call upon the resources of the Court for determination of his claims.'" *Cordon v. Tilton*, 515 F. Supp.2d 1114, 1119 (S.D. Cal. 2007) (quoting *Conforte v. Comm'r*, 692 F.2d 587, 589 (9th Cir. 1982)). "Courts have regularly applied this doctrine to dismiss both criminal appeals and related civil proceedings instituted by fugitives." *Cordon*, 692. F.2d at 1119.

The application of the fugitive disentitlement doctrine is discretionary. *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1054-55 (9th Cir. 1991). "The doctrine does not deprive the Court of jurisdiction to hear a plaintiff's claim but instead authorizes their dismissal based on equitable considerations." *Cordon*, 515 F. Supp.2d at 1120. "One who involves the jurisdiction of the court must be willing to abide by its decision if he loses." *Etherly v. Oregon*, No. CV 04-996-PA, 2007 WL 582401, at *1 (D. Or. Feb. 19, 2007). The doctrine applies to plaintiffs who are fugitives from state court proceedings, as well as those of the federal courts. *Yuan v. City of Los Angeles*, 559 Fed. App'x 643, 644 (9th Cir. 2014).

"[F]ugitive disentitlement is an exceptionally harsh sanction, to be disfavored whenever its application is not a matter of necessity." *Mastro v. Rigby*, 764 F.3d 1090,

1095-96 (9th Cir. 2014). The doctrine "should be narrowly applied and subject to significant scrutiny outside of the direct criminal appeal context." *Id.*

The fugitive disentitlement doctrine generally arises in three contexts (1) civil and criminal appeals brought by the fugitive; (2) civil suits brought against the fugitive; and (3) civil suits brought by the fugitive. *Walsh v. Walsh*, 221 F.3d 204, 214 (1st Cir. 2000). In *Walsh*, the First Circuit went on to hold that dismissal of a civil action under the fugitive disentitlement doctrine requires that (1) the plaintiff is a fugitive, (2) his fugitive status has a connection to his civil action; and (3) the sanction of dismissal is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine. *Id.* at 215.

With respect to the first factor, the Court must first determine whether Petitioner is, in fact, a fugitive. *Cordon*, 515 F. Supp.2d at 1120; *see also Etherly*, 2007 WL 582401, at *2 ("Federal courts rarely invoke the fugitive disentitlement doctrine if the person is no longer a fugitive."). Although Petitioner stresses that he has not been charged with a crime, Respondent has demonstrated that on March 7, 2024, the Jackson County Circuit Court issued a warrant for Petitioner's arrest. The warrant was issued after Petitioner failed to appear at a hearing on Respondent's motion for remedial contempt in the underlying custody case. Petitioner has acknowledged the existence of the warrant and the reason for its issuance in his own filings. *See* ECF No. 7, at 4-5 ("[Respondent] obtained from the Judge a warrant for [Petitioner's] arrest in all states just because [Petitioner] was in France under his French judgment refusing to present himself in person in court."). In addition, "courts

generally require clear evidence that the person to be sanctioned has fled or is in hiding." *Etherly*, 2007 WL 582401, at *2. Here, Petitioner took the children to France, contrary to the orders of the Oregon courts, and has remained in France despite the ongoing litigation. The warrant remains outstanding and there is no indication that Petitioner has returned to Oregon to resolve the warrant.

Before invoking the fugitive disentitlement doctrine "courts generally require a nexus between the proceeding to be dismissed and the fugitive status." *Etherly*, 2007 WL 582401, at *2 (citing *Walsh*, 221 F.3d at 215); *see also Mendia v. Garcia*, 165 F. Supp.3d 861, 885 (N.D. Cal. 2016) (holding same). Here, there is no question that such a nexus exists. The warrant was issued as a result of Petitioner's failure to appear at a contempt hearing in the underlying child custody litigation in the Jackson County Circuit Court. The nearness of the nexus is illustrated by a comparison of two child custody cases implicating the fugitive disentitlement doctrine.

In *Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001), the district court confronted a somewhat similar situation. In that case, the parents were Venezuelan citizens, and the mother, Osorio, retained the children in the United States. *Id.* at 1251-52. The father filed a petition for the return of the children to Venezuela, which the district court granted and Osorio was ordered to return the children to Venezuela within ten days. *Id.* at 1252. The children were not returned, and the district court held a hearing at which Osorio was ordered to appear. *Id.* She did not do so, and the district court issued an order to show cause why Osorio should not be held in contempt and set another hearing. *Id.* Osorio did not appear at the new hearing and the

district court found her in contempt. *Id*. The district court issued a bench warrant for Osorio's arrest. *Id*. However, "[d]espite failing to end her contumacious conduct or submit to the court's authority," Osorio appealed the district court's grant of the father's petition. *Id*.

The Eleventh Circuit declined to entertain the mother's appeal based on the fugitive disentitlement doctrine. *Pesin*, 244 F.3d at 1252. In determining that dismissal was the proper remedy, the court found that

> Osorio has repeatedly defied court orders and ignored contempt sanctions and has continued to evade arrest. Her behavior to date leaves little doubt that she would defy an adverse ruling. Moreover, it would be inequitable to allow Osorio to use the resources of the courts only if the outcome is a benefit to her. We cannot permit Osorio to reap the benefits of a judicial system the orders of which she has continued to flaunt.

*Pesin*, 244 F.3d at 1253.

The First Circuit has also considered a case involving, as in the present case, the intersection of the fugitive disentitlement doctrine and the Hague Convention. In *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000), a father petitioned for the return of his two children to Ireland under the Hague Convention. *Id*. at 208. The father had been charged in the United States with attempting to break and enter and with threatening to kill another person in an incident that was not directly related to his custody dispute with the mother of the children. *Id*. at 209. The father was arraigned, but fled to Ireland and had a warrant out for his arrest in the United States. *Id*. The mother joined him in Ireland, but after a protracted period of physical abuse, the mother fled back to the United States with the children. *Id*. at 211. The

father then filed a petition under the Hague Convention for the return of the children to Ireland. *Id.* at 212. The mother contended that the district court should not have heard the petition because the father was a fugitive from justice. *Id.* at 214. The district court declined to apply the doctrine because there was no clear nexus between the warrant for the father's arrest and the Hague Convention petition and because the father had been charged but not convicted of a crime. *Id.* The First Circuit found that the fugitive disentitlement doctrine did not per se bar the father's petition and, on the facts, found that the district court was correct not to apply the doctrine. *Id.* at 216. In particular, the court noted the tenuous connection between the reason for the father's fugitive status and his petition and determined that the connection was "too slim a reed to support such a weighty doctrine." *Id.* at 215.

The facts of this case bear a much greater resemblance to *Pesin* than to *Walsh*. As in *Pesin*, the warrant for Petitioner's arrest is directly related to his contumacious conduct in the underlying Oregon custody proceedings, rather than for some unrelated or only tenuously related criminal conduct. As a result, the Court concludes that two of the *Walsh* factors have been satisfied.

The final factor concerns whether the sanction of dismissal is necessary to effectuate the concerns underlying the fugitive disentitlement doctrine and that factor represents a more nuanced question. In *Degen v. United States*, 514 U.S. 820 (1996), the Supreme Court identified five rationales for application of the fugitive disentitlement doctrine. They are (1) the risk of delay or frustration in determining the merits of the claim; (2) the unenforceability of judgment; (3) the compromising of

a criminal case by the use of civil discovery; (4) the indignity visited on the court; and (5) deterrence. *Id.* at 825-26. Here, the third factor is not implicated as there are no criminal charges involved.

As to the remaining factors, Respondent points the Court to the Virginia Supreme Court's decision in *Sasson v. Shenhar*, 276 Va. 611 (2008). In *Sasson*, the father, Sasson, and mother, Shenhar, were living in Spain with their child when their relationship broke down and Shenhar returned to the United States with the child. *Id.* at 617-18. Sasson filed a petition under the Hague Convention in Virginia state court seeking a return of the child to Spain, as well as a motion to enforce a Spanish custody order. *Id.* at 618. The following day, Shenhar filed a petition seeking custody of the child and an order prohibiting his removal from Virginia. *Id.* Shenhar's petition was granted, and an order was issued forbidding the removal of the child from Virginia. *Id.* A subsequent ruling allowed Sasson to return with the child to Spain. *Id.* at 619. Following further litigation in the Virginia courts, it was ordered the Sasson return the child to Virginia. *Id.* at 620. Sasson refused and a contempt order was issued against Sasson and a capias writ was issued for his arrest. *Id.* at 621. Sasson pressed forward with appeals in the Virginia appellate courts and Shenhar moved to dismiss the appeals under the fugitive disentitlement doctrine. *Id.* The Virginia Court of Appeals determined that the doctrine should be applied because "the connection between Sasson's fugitive status and his appeal is direct and undeniable," and "dismissing Sasson's appeals furthers the goals of the fugitive disentitlement doctrine by discouraging flight from justice, encouraging compliance

with court orders, and promoting the efficient, dignified operation of the courts." *Id.* at 622. The Virginia Supreme Court affirmed, expressly adopting the principles set forth in *Walsh* and *Degen*. *Id.* at 623. In concluding that the fugitive disentitlement doctrine was properly applied, the Virginia Supreme Court found that the record amply supported the Virginia Court of Appeals' determination "that Sasson is unwilling to submit to the jurisdiction of Virginia's courts unless he receives a judgment in his favor." *Id.* at 627-28.

Here, the Court notes Petitioner's history of contempt for and non-compliance with the Jackson County Circuit Court's orders, particularly the TPOR and the order that he appear for hearings. Petitioner fled the country with the children while the hearings on competing jurisdiction, registration of the French judgment, and custody of the children were ongoing and only temporarily recessed. The Court is left with the firm conviction that Petitioner would not abide by any adverse rulings issued by this Court and his past conduct shows a willingness to frustrate the resolution of the merits of claims by flight if he senses that the rulings will not go his way.

With respect to the fourth and fifth factors, indignity to the courts and deterrence of future misconduct, the Supreme Court found that these interests were "substantial." *Degen*, 517 U.S. at 828. And they are implicated in the present case—the record demonstrates Petitioner's history of disobeying unfavorable rulings and his apparent disdain for the courts of Oregon. However, the Supreme Court cautioned that "disentitlement is too blunt an instrument for advancing" those interests, however substantial. *Id.* "There would be a measure of rough justice in

saying that [a petitioner] must take the bitter with the sweet, and participate in the District Court either for all purposes of for none." *Id*. at 829. "But the justice would be too rough," and the inherent power of the courts should be "limited by the necessity giving rise to its exercise." *Id*. The Court has considered and weighed the fourth and fifth rationales for the fugitive disentitlement doctrine, but does not rely upon them in reaching its determination.

Here, much of Petitioner's voluminous and over-large Response brief is given over to attacks on the circuit court judges who presided over the underlying child custody matter. These attacks are not well taken and do little to engender confidence that Petitioner would obey adverse rulings.[1] Petitioner's evidence dissatisfaction with the circuit court's decision is a matter for the Oregon Court of Appeals and is not properly before this Court. The Court is particularly persuaded by the reasoning of *Sasson* and *Pesin*, given their factual similarity to the present case. Weighed together, the Court concludes that dismissal would serve the purposes of the fugitive disentitlement doctrine.

As all three factors weigh in favor of dismissal based on fugitive disentitlement and the Court GRANTS Respondent's motion to dismiss.

---

[1] Respondent reports that Plaintiff has "initiated ethical complaints and investigations into at least three of [Respondent's] lawyers." Resp. Reply Br. at 2. ECF No. 28. As noted, Petitioner also attempted to bring a federal civil suit against the presiding judge in the underlying custody case while that case was ongoing.

## CONCLUSION

Respondent's Motion to Dismiss, ECF No. 20, is GRANTED. The Petition is DISMISSED and all other pending motions are DENIED as moot. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___9th___ day of August 2024.

                                                  /s/Ann Aiken
                                                  ANN AIKEN
                                                  United States District Judge