**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ARNAUD PARIS,

*Petitioner-Appellant*,

v.

HEIDI MARIE BROWN,

*Respondent-Appellee*.

No. 24-4950

D.C. No.
1:24-cv-00648-
AA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann Aiken, District Judge, Presiding

Argued and Submitted August 22, 2025
Portland, Oregon

Filed October 3, 2025

Before: CONSUELO M. CALLAHAN, MILAN D.
SMITH, JR., and SALVADOR MENDOZA, JR., Circuit
Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

**Hague Convention / Fugitive-Disentitlement Doctrine**

The panel (1) reversed the district court's dismissal, pursuant to the fugitive-disentitlement doctrine, of Arnaud Paris's petition under the Hague Convention on the Civil Aspects of International Child Abduction for the return of his children to France; and (2) remanded for adjudication of the petition on the merits.

Paris and Heidi Brown, the children's other parent, lived with the children in France. Brown brought them to Oregon, but Paris asserted that he had obtained a French court judgment, and he brought the children back to France. An Oregon state court granted Brown sole custody, and she brought the children back to Oregon. The Oregon court held Paris in contempt of a restraining order forbidding him from taking the children out of Oregon and issued a warrant for his arrest. He remained in France and filed the Hague Convention petition in the district court.

In determining whether to apply the fugitive-disentitlement doctrine, a district court in this circuit must first consider whether the doctrine should be narrowly applied because the case is not a direct criminal appeal. Second, the court must consider whether the alleged fugitive was in fact a fugitive during the pendency of the action at issue. Third, the court must consider whether dismissal of the action is supported by the traditional

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

justifications of abandonment, deterrence, dignity of the courts, efficiency, and enforceability.

Applying this test, the panel first concluded that the doctrine must be narrowly applied in this civil case. Second, the panel assumed without deciding that Paris qualified as a fugitive. Third, the panel concluded that the fugitive-disentitlement doctrine's five traditional justifications did not necessitate dismissal. As to enforceability, Paris's absence from Oregon was no impediment to carrying out an adverse judgment on his petition. The efficiency factor did not support dismissal because Paris's absence did not delay or frustrate district court proceedings. The dignity factor did not support dismissal because Paris did not flout the judicial authority of the court in which he filed his Hague Convention petition. The district court's interest in deterrence was weak to nonexistent, and the abandonment factor was of little importance in this case. The panel also agreed with other circuits that the parental rights at stake in cases brought under the Hague Convention, as well as the treaty's unique and important goals and purposes, counsel caution before a court extinguishes a fugitive's right to seek the return of his or her children. Accordingly, the panel held that the district court abused its discretion by dismissing Paris's petition based on the fugitive-disentitlement doctrine.

4 PARIS V. BROWN

## COUNSEL

Arnaud Paris (argued), Pro Se, Paris, France, for Petitioner-Appellant.

Katrina A. Seipel (argued) and Katelyn Skinner, Buckley Law PC, Lake Oswego, Oregon, for Respondent-Appellee.

Anna M. Stapleton (argued) and Kelsey Peden, Paul Weiss Rifkind Wharton & Garrison LLP, San Francisco, California; Kannon K. Shanmugam, Damonta D. Morgan, and Regina C. Fairfax, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; for Court Appointed Amicus Curiae.

## OPINION

M. SMITH, Circuit Judge:

This appeal arises from a bitter child custody dispute between two parents living on different continents. Petitioner-Appellant Arnaud Paris and Respondent-Appellee Heidi Marie Brown are the parents of two minor twins, E.P. and J.P., who possess dual French-U.S. citizenship. The parties lived together with their children at various times in Oregon and France. However, after their relationship broke down, the parties filed near-simultaneous petitions for custody in their respective homelands: Mr. Paris in France and Ms. Brown in Oregon, where she resided with the children at the time. The Oregon state court issued a restraining order forbidding Mr. Paris from taking the twins out of Oregon. But after a French court purportedly granted

him permission to do just that, Mr. Paris returned to France with both children.

In Mr. Paris's absence, the Oregon court granted Ms. Brown sole custody, held Mr. Paris in contempt, and issued a warrant for his arrest. He refused to appear and clear the warrant. Shortly afterward, Ms. Brown traveled to France to see her children and returned to Oregon with the twins.

Mr. Paris contends that Ms. Brown violated a French court order by doing so. He therefore petitioned the U.S. District Court under the Hague Convention on the Civil Aspects of International Child Abduction, a multinational treaty requiring signatories like the United States to order the return of children wrongfully removed from their country of "habitual residence." But the district court dismissed Mr. Paris's petition without reaching the merits pursuant to the "fugitive-disentitlement doctrine." Though "exceptionally harsh" and disfavored in civil cases, federal courts can invoke this doctrine to dismiss actions brought by fugitives from justice so long as dismissal is "necessary" to promote the doctrine's policy rationales.

The facts of this case reflect no such necessity. In concluding otherwise, the district court overlooked controlling precedents, causing the court to misapply the fugitive-disentitlement doctrine. Accordingly, we reverse.

## BACKGROUND

### I. Factual Background

#### A. The Parties' Competing Custody Petitions

Arnaud Paris and Heidi Brown are the parents of two minor twins, E.P. and J.P. Mr. Paris is a dual citizen of France and the United States, and Ms. Brown is a citizen of

the United States. The twins are dual citizens of the U.S. and France. Mr. Paris, Ms. Brown, and the twins lived together at various points in Oregon, California, and France.

Over time, Mr. Paris and Ms. Brown's relationship broke down. As of mid-2022, the four family members were all living together in France. But in July 2022, Ms. Brown relocated from France to Oregon and took the twins with her. The parties dispute whether Mr. Paris continued to live in France or instead traveled to Oregon with the intent of living with Ms. Brown and the twins.

A few months later, the parents filed near-simultaneous petitions for custody in their respective home nations. Mr. Paris filed his petition in a French court on October 6, 2022, although it may not have been received until October 7, 2022. Also on October 7, 2022, Ms. Brown petitioned the Circuit Court for the State of Oregon for custody, child support, and a dissolution of domestic partnership.

Shortly after receiving Ms. Brown's petition, the Oregon state court issued a temporary protective order of restraint fixing the twins' usual place of residence as Ashland, Oregon. The order restrained both parents from changing the twins' usual place of residence, interfering with their daily routine, interfering with the other's parenting time, and removing the twins from Oregon without the other's or the court's permission.[1]

---

[1] While the Oregon custody litigation continued, Mr. Paris filed his first petition under the Hague Convention for the children's return to France. The U.S. District Court denied the petition and ordered that the children would remain in Oregon for the 2022-2023 school year. *See Paris v. Brown*, Case No. 1:22-cv-01593-MC (D. Or. Dec. 7, 2022). Mr. Paris's ensuing appeal was dismissed. Ms. Brown does not argue in this Court

In March 2023, a French court held a hearing on Mr. Paris's custody petition, at which he testified. Ms. Brown did not appear and could not appear remotely, though, counsel appeared on her behalf. Ms. Brown has indicated that she did not attend because she believed the hearing would only address the French court's jurisdiction. Three weeks later, based largely on that hearing, the French court awarded the parents joint custody. The French court concluded that the family lived in France and that the twins were domiciled there, so they were subject to the jurisdiction of the French courts. The court also granted Mr. Paris's "request for a ban on the departure of the children from French soil without the authorization of both parents."

Based on this ruling, Mr. Paris sought to register the French judgment in Oregon. He also requested that the Oregon state court proceedings be dismissed for lack of subject-matter jurisdiction. [2]    Ms. Brown opposed registration and urged the Oregon court to exercise jurisdiction. The court held an evidentiary hearing on these matters for multiple days in July 2023 and recessed toward the beginning of Ms. Brown's cross-examination of Mr. Paris. Testimony was set to resume the next month.

## B. Mr. Paris's Alleged Abduction & Subsequent Proceedings

A few days after the hearing recessed, however, Mr. Paris abruptly took the twins from Oregon to France, despite the Oregon state court's temporary restraining order. Ms.

---

that Mr. Paris's prior petition precludes the current one, and amicus curiae contends that his current petition is based on different conduct.

[2] Mr. Paris asked the Oregon Supreme Court to vacate the temporary restraining order, but his request was denied.

Brown characterizes this as an unlawful abduction, while Mr. Paris contends he was acting in accordance with a French court order and with the assistance of a French consulate. He also insists he did not violate the restraining order because a French court had nullified it. In the course of bringing the twins out of the country, Mr. Paris had to explain the legality of his departure to agents from the U.S. Customs and Border Protection, who permitted him to depart with the twins.

Upon returning to France, Mr. Paris requested to appear remotely when the Oregon evidentiary hearing resumed in August 2023. The Oregon state court denied his request, and Mr. Paris did not appear for the remainder of the hearing. The twins remained in France while the proceedings continued. Contemporaneously, a French court ruled that neither parent could remove the twins from French territory without the other's consent.

In August 2023, the Oregon state court concluded that only it had jurisdiction over the parents' custody dispute and thus denied Mr. Paris's request to register the French judgment. The court further concluded that the French proceedings did not substantially conform with the Uniform Child Custody Jurisdiction and Enforcement Act (ORS 109.701) and that Ms. Brown received inadequate notice of the hearing in France. The Oregon court determined that Mr. Paris failed to appear at the continued evidentiary hearing, that he "was in willful violation of the court's orders not to leave the state with the minor children," and that he "acted in bad faith." The court also denied Mr. Paris's motion to dismiss Ms. Brown's custody petition for lack of subject-matter jurisdiction.

PARIS V. BROWN                9

In November 2023, Ms. Brown filed a motion in the Oregon state court to hold Mr. Paris in contempt for violating the restraining order by removing the children from Oregon. The court held a preliminary hearing on Ms. Brown's motion the same day, with Ms. Brown appearing in person and Mr. Paris appearing remotely. During the hearing, the court stated it would not permit Mr. Paris to proceed remotely while holding the twins abroad in violation of the restraining order. It also stated it would not consider Mr. Paris's many requests for relief given his defiance of the court's orders. In the court's view, Mr. Paris had committed "a felony" and was "holding the[] children criminally."

The following month, the Oregon state court ordered Mr. Paris to return the children to Oregon, reiterated that his attempt to register the French judgment in Oregon had been denied, and again ruled that "[n]o other state has jurisdiction." The court concluded that Mr. Paris "remains in France with the minor children in flagrant, willful, contemptuous violation of the Court's orders." Mr. Paris did not comply with the court's order to return the children.

In December 2023, the Oregon state court entered a limited decision in Ms. Brown's custody case, after another hearing at which Mr. Paris did not physically appear and in which he was apparently not permitted to participate remotely. The court found, in relevant part, that Mr. Paris violated the restraining order by taking the children to France and that, since doing so, he had denied Ms. Brown "virtually all parenting time." Among other things, the court awarded Ms. Brown sole custody of the twins and largely stripped Mr. Paris of his noncustodial parental rights pursuant to O.R.S. 107.154. The court again referred to Mr. Paris's conduct as "criminal[]."

Following the custody ruling, in March 2024, the Oregon state court ordered Mr. Paris to appear at two hearings to show cause why he should not be held in contempt. The court denied Mr. Paris's requests to appear remotely. After Mr. Paris failed to appear at either hearing, the Oregon court issued a bench warrant for his arrest. As far as we can tell, the warrant remains outstanding.

## C. Ms. Brown's Alleged Abduction & Subsequent Proceedings

A month after the warrant issued, Ms. Brown removed the children from France without Mr. Paris's permission and returned them to Oregon. French authorities launched an investigation into Ms. Brown's actions.

Shortly thereafter, the Oregon state court entered a default judgment against Mr. Paris, adopting its previous limited judgment granting Ms. Brown sole custody. The default judgment also granted Ms. Brown a dissolution of her and Mr. Paris's domestic partnership, while sanctioning Mr. Paris and striking his pleadings. Mr. Paris appealed the judgment, prompting Ms. Brown to move to dismiss the appeal under the "fugitive disentitlement doctrine," an equitable doctrine that permits courts to refuse to resolve cases or appeals initiated by fugitives from justice. However, the Oregon Court of Appeals denied her motion.

## II. Procedural & Statutory Background

In April 2024, Mr. Paris petitioned the U.S. District Court for the twins' return under the Hague Convention, "a multilateral international treaty on parental kidnapping." *Colchester v. Lazaro*, 16 F.4th 712, 717 (9th Cir. 2021). More than 100 nations, including the United States, adopted the treaty "[t]o address the problem of international child

abductions during domestic disputes." *Monasky v. Taglieri*, 589 U.S. 68, 71 (2020). To implement the United States' obligations under the Hague Convention, Congress enacted the International Child Abduction Remedies Act, codified at 22 U.S.C. § 9001 *et seq*., which grants state and federal courts "concurrent jurisdiction . . . over petitions arising under the Convention." *Colchester*, 16 F.4th at 717.

"Under the Hague Convention, 'a child wrongfully removed from her country of "habitual residence" ordinarily must be returned to that country.'" *Nisbet v. Bridger*, 124 F.4th 577, 583 (9th Cir. 2024) (quoting *Monasky*, 589 U.S. at 70–71). Such removals are "wrongful if done in violation of the custody laws of the child's habitual residence." *Monasky*, 589 U.S. at 72. The "return remedy" is the Hague Convention's "central operating feature." *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The remedy is "provisional," as "it merely 'fixes the forum for custody proceedings' and leaves the merits to the country of habitual residence." *Radu v. Shon*, 62 F.4th 1165, 1169 (9th Cir. 2023) (quoting *Monasky*, 589 U.S. at 72). "Upon the child's return, the custody adjudication will proceed in that forum." *Monasky*, 589 U.S. at 72. Thus, "[a] court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child." *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010). This scheme is designed "to eliminate 'any tactical advantages gained by absconding with a child.'" *Id.* at 510 (quoting *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004)).

Mr. Paris's petition pursuant to the Hague Convention alleged that Ms. Brown "kidnapped" the twins, removed them from France in violation of French court orders, and smuggled them back into the United States. Mr. Paris asked

the district court to issue an order "directing" the twins'
"prompt return" to France, which he maintains is their
"habitual residence."

As she did with Mr. Paris's appeal in state court, Ms.
Brown moved the district court to dismiss Mr. Paris's Hague
Convention petition pursuant to the fugitive-disentitlement
doctrine. Mr. Paris countered that the doctrine should not
apply here, given that Ms. Brown herself abducted the
children and evaded French authorities. The district court
granted Ms. Brown's motion and dismissed Mr. Paris's
petition. While the court acknowledged that disentitlement
was "exceptionally harsh," it nevertheless deemed the
sanction appropriate. Applying the test set out in *Walsh v.
Walsh*, 221 F.3d 204 (1st Cir. 2000), the district court
determined that Mr. Paris was a fugitive and that dismissal
was necessary to "effectuate the concerns" underlying the
doctrine. On the latter point, the district court relied on Mr.
Paris's "history of contempt for and non-compliance with"
the Oregon state-court's orders, leaving the federal district
court with a "firm conviction" that he "would not abide by
any adverse rulings" that the district court issued.

Appearing *pro se*, Mr. Paris timely appealed the district
court's dismissal order in this Court. Ms. Brown then moved
to dismiss this appeal, too, based on the fugitive-
disentitlement doctrine. A panel of our Court denied her
motion but permitted Ms. Brown to renew the argument at
the merits stage. The panel also noted that the appointment
of pro bono counsel would be helpful in resolving the issues
presented, so the Court appointed as amicus curiae attorneys
from Paul, Weiss, Rifkind, Wharton & Garrison LLP. The
matter was heard on August 21, 2025, and was submitted the
same day.

PARIS V. BROWN                    13

**JURISDICTION & STANDARD OF REVIEW**

We have appellate jurisdiction under 28 U.S.C. § 1291. We review a district court's application of the fugitive-disentitlement doctrine for abuse of discretion. *Mastro v. Rigby*, 764 F.3d 1090, 1095 (9th Cir. 2014). A district court abuses its discretion "when it makes an error of law" in applying the doctrine. *Id.* at 1097.

**ANALYSIS**

As a sanction for Mr. Paris's contempt for Oregon state court orders, the federal district court dismissed Mr. Paris's petition for the return of his children. In so doing, the district court applied a test articulated by the U.S. Court of Appeals for the First Circuit. But our Circuit has a test of its own, and it required the district court to "narrowly" apply the fugitive-disentitlement doctrine in civil cases like this one. The court did not do so. The chief flaw in the district court's analysis, however, lies in its conclusion that dismissal was "necessary" to promote the policy rationales underlying fugitive disentitlement. We disagree. Applying the precedents that control this dispute to the unique facts presented, the severe sanction of disentitlement cannot be justified. Reversal is warranted.

**I.   The Fugitive-Disentitlement Doctrine**

**A.   Legal Principles**

The district court dismissed Mr. Paris's petition pursuant to the Hague Convention on the pleadings based on the fugitive-disentitlement doctrine. This doctrine is a manifestation of federal courts' "inherent power" to "protect their proceedings and judgments in the course of discharging their traditional responsibilities." *United States v. Terabelian*, 105 F.4th 1207, 1214 (9th Cir. 2024) (quoting

*Degen v. United States*, 517 U.S. 820, 823 (1996)). When the conditions justifying the doctrine exist, a court can dismiss an action or appeal initiated by a "fugitive from justice." *Id.* (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993)).

Over the last century, courts have articulated several rationales supporting the doctrine. "First, the doctrine exists to 'prevent the entry of unenforceable judgments against absent criminal defendants.'" *Terabelian*, 105 F.4th at 1214 (quoting *Mastro*, 764 F.3d at 1090). "Second, an appellant's escape 'disentitles' her 'to call upon the resources of the Court for determination of her claims'"—akin to a theory of "abandonment or waiver." *Id.* (first quoting *Degen*, 517 U.S. at 824; then quoting *Mastro*, 764 F.3d at 1095 (cleaned up)). "Finally, the doctrine 'serves an important deterrent function and advances an interest in efficient, dignified'" judicial proceedings. *Id.* (quoting *Ortega-Rodriguez*, 507 U.S. at 242).

Courts fashioned this principle to preclude criminal defendants from appealing their sentences while simultaneously evading capture and confinement. *See, e.g.*, *Smith v. United States*, 94 U.S. 97, 97 (1876); *see also Ortega-Rodriguez*, 507 U.S. at 239–42 (discussing the doctrine's history). In civil proceedings, however, the doctrine's policy rationales tend to have less sway, so it "should be narrowly applied and subject to significant scrutiny." *Mastro*, 764 F.3d at 1096.

As the district court recognized, fugitive disentitlement is "an exceptionally 'harsh sanction,'" "disfavored" unless the facts necessitate its application. *Id.* at 1096. Courts "do not lightly impose" the doctrine, *Bhasin v. Gonzales*, 423 F.3d 977, 987–88 (9th Cir. 2005), and it "should be applied

only in exceptional circumstances" warranting dismissal. *Terabelian*, 105 F.4th at 1217.

These are key instructions from the Supreme Court's unanimous decision in *Degen v. United States*, 517 U.S. 820 (1996), reversing summary judgment for the government in a civil-forfeiture action. *Id.* at 821–22. There, the defendant sought to oppose the action while concurrently refusing to return to the United States and face charges for drug crimes and money laundering. *Id.* Despite the Court's "disquiet at the . . . defendant reposing in Switzerland, beyond the reach of our criminal courts, while at the same time mailing papers to the court in a related civil action and expecting them to be honored," the Court held the district court's power to extinguish the defendant's right to challenge his property's forfeiture "limited by the necessity giving rise to its exercise." *Id.* at 828–29. While the government had an interest in preventing the defendant from exploiting the broad scope of civil discovery to gain an "improper advantage in the criminal matter," this concern presented no "necessity" justifying "the harsh sanction" of disentitlement. *Id.* at 826–27. Rather, the district court had "alternative means" of protecting the government's interests, such as discovery sanctions. *Id.*

On our most recent occasion to consider the doctrine, we set out "three critical questions" that courts in this Circuit must answer "in determining whether to apply the doctrine." *Terabelian*, 105 F.4th at 1217. "First, is the appeal a direct criminal appeal?" *Id.* If not, the doctrine "should be narrowly applied." *Id.* (citing *Mastro*, 764 F.3d at 1096). Second, was the alleged fugitive in fact "a fugitive during the pendency" of the action at issue? *Id.* (quotations and alterations omitted). "And third, do the traditional justifications of abandonment, deterrence, dignity of the

courts, efficiency, and enforceability support dismissal?" *Id.*
(citing *Degen*, 517 U.S. at 824; *Mastro*, 764 F.3d at 1095).
Courts must address these questions in view of "the totality
of the circumstances." *United States v. Van Cauwenberghe*,
934 F.2d 1048, 1055 (9th Cir. 1991).

### B. Application

Rather than applying *Terabelian*'s three-part test, the
district court applied the First Circuit's similar but not
identical test from *Walsh v. Walsh*, 221 F.3d 204 (1st Cir.
2000). One key difference is that *Terabelian* first queries
whether the proceeding is a "direct criminal appeal," as that
context is the fugitive-disentitlement doctrine's heartland.
105 F.4th at 1217. Where—as here—the matter is not a
criminal appeal, the doctrine "should be narrowly applied
and subject to significant scrutiny." *Id.*; *Mastro*, 764 F.3d at
1096. There is no dispute that Mr. Paris's petition under the
Hague Convention is civil in nature. Although the district
court recognized the doctrine's limited application in civil
matters, the court does not appear to have accorded this
factor much, if any, weight. Our precedents require more.
*See Mastro*, 764 F.3d at 1096; *Terabelian*, 105 F.4th at 1217.

*Terabelian*'s second prong asks whether the party
against whom disentitlement is sought "was a fugitive"
during the relevant action's pendency. 105 F.4th at 1217.
This inquiry aligns with the first *Walsh* factor, which the
district held to support dismissal.[3]  We take no position on

---

[3] In making this determination, the district court relied on Mr. Paris's
failure to return to Oregon and resolve the outstanding arrest warrant.
Mr. Paris contends that conclusion was erroneous, and amicus curiae
likewise argues that Mr. Paris was not a "fugitive" because he left the
country before the warrant issued, has not been charged with a crime,
and his whereabouts are well-known. For her part, Ms. Brown maintains

the matter, as we can resolve this appeal without determining whether Mr. Paris qualified as a "fugitive" for purposes of fugitive disentitlement. Assuming without deciding that he qualified, Mr. Paris is still entitled to reversal because of the district court's answer to the third "critical question."

That question, *Terabelian* directs, is whether the fugitive-disentitlement doctrine's traditional justifications of enforceability, efficiency, dignity of the courts, deterrence, and abandonment necessitate dismissal. 105 F.4th at 1217. This prong approximates the third *Walsh* factor that the district court analyzed and again held to support disentitlement. But rather than considering how caselaw has elucidated and applied these factors, the district court relied heavily on two out-of-circuit cases that it regarded as factually analogous: the Virginia Supreme Court's opinion in *Sasson v. Shenhar*, 667 S.E.2d 555 (Va. 2008) and the U.S. Court of Appeals for the Eleventh Circuit's opinion in *Pesin v. Rodriguez*, 244 F.3d 1250 (11th Cir. 2001). For reasons we explain below, both cases are distinguishable on the facts. And, contrary to the district court's conclusion, disentitlement was not necessary to vindicate any of these five interests.

### 1. Enforceability

The first traditional justification courts have offered for disentitling fugitives is that courts should generally seek to "avoid making decisions that could not be enforced." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1092 (9th Cir. 2003) (quoting *United States v. Gonzalez*, 300 F.3d 1048,

---

that Mr. Paris is a fugitive because he fled Oregon in violation of the restraining order and remains there despite the outstanding warrant. The panel has no occasion to resolve this dispute because, for the reasons below, it will not change the outcome.

1051 (9th Cir. 2002)).  These concerns are at their pinnacle
when a fugitive's whereabouts are unknown.  "[S]o long as
the party cannot be found, the judgment on review may be
impossible to enforce."  *Degen*, 517 U.S. at 824; *see also
Antonio-Martinez*, 317 F.3d at 1093 ("Because no one has
any clue where Antonio-Martinez is, his petition has the
same 'heads I win, tails you'll never find me' quality that
justifies disentitlement in other contexts.").

This case poses no risk of thrusting Ms. Brown into the
sort of lose-lose scenario that the "enforceability" factor
aims to prevent.  Both she and the district court know exactly
where Mr. Paris is located: he remains in Paris, France,
where he regularly communicates with both the state and
federal courts presiding over his matters.  To our knowledge,
he has taken no measures to conceal his whereabouts.  More
fundamentally, Mr. Paris's absence from Oregon is no
impediment to carrying out an adverse judgment on his
petition.  The twins are currently in Oregon with their
mother.  As a result, an order denying Mr. Paris's petition on
the merits, thus rejecting his request to order the twins'
return to France, would simply retain the status quo.  The
"enforceability" prong thus lends Ms. Brown no assistance.
*See Mastro*, 764 F.3d at 1096 n.5 ("[T]he record does not
suggest that Linda's absence impedes the enforcement of a
judgment against her."); *cf. Degen*, 517 U.S. at 825 (no
"enforceability" concern in civil-forfeiture matter "[s]ince
the court's jurisdiction over the property [was] secure
despite Degen's absence").[4]

---

[4] While Mr. Paris's foreign residence might at first glance seem to raise
enforceability concerns, that is the norm in Hague Convention cases.  To
some extent, "all cases under the Convention raise [enforceability]
problems since, by definition, one of the parties lives in a foreign

The district court identified "the unenforceability of
judgment" as one of the disentitlement doctrine's policy
rationales but did not proceed to analyze the issue or
consider the lack of enforceability problem here.    Ms.
Brown, however, contends that Mr. Paris's absence from
Oregon might jeopardize the district court's enforcement of
"other potential case rulings," such as an order "to appear in
person at trial" or an "order requiring Mr. Paris to produce
discovery."   Perhaps, but such hypothetical, downstream
concerns do not require dismissal.    Just as the district court
in *Degen* had "alternative means" of preventing the alleged
fugitive from abusing civil discovery, 517 U.S. at 827, the
district court here would also have alternate means of
enforcing such orders.    At the current posture, however,
disentitlement is not required to further any legitimate
interest Ms. Brown has in preventing enforceability
problems.

### 2. Efficiency

The "efficiency" factor does not support dismissal either.
This factor considers mostly whether the alleged fugitive's
flight or absence has stymied or delayed the operation of the
courts.    *See, e.g.*, *Ortega-Rodriguez*, 507 U.S. at 245;
*Terabelian*, 105 F.4th at 1217.    It generally supports
dismissal where the fugitive's absence gives rise to a "flurry
of extraneous matters," such as extensive efforts to recapture
the fugitive, and thereby requires the court to "divert its
attention from the merits of the case before it." *Ortega-
Rodriguez*, 507 U.S. at 245 (quotations omitted); *see
Terabelian*, 105 F.4th at 1217 ("efficiency" prong favored

---

jurisdiction." *See Walsh*, 221 F.3d at 216.  What matters here is that, on
the record presented, dismissal is not *necessary* to address any concerns
about enforcing an adverse judgment against Mr. Paris.

dismissal where the government went great lengths and expended substantial resources to locate and extradite defendant while her appeal sat pending).

In assessing this factor, courts tend to consider the prejudice to the party seeking disentitlement, if any. *See Degen*, 517 U.S. at 825 (holding there was "no risk" of "delay or frustration in determining the merits of the government's forfeiture claims" because the court possessed the subject property); *United States v. Sudthisa-Ard*, 17 F.3d 1205, 1207 (9th Cir. 1994) (dismissing appeal where defendant's "thirteen years as a fugitive" between conviction and appeal caused loss and destruction of evidence, precluding the government from retrying case in the event of reversal).

This case raises none of those concerns. Mr. Paris's absence has not delayed or frustrated the district court proceedings. Nor has it prompted Ms. Brown or the court to expend resources tracking him down. Again, his location is known to all stakeholders. Nor is this a case where the alleged fugitive's physical absence will thwart the proceedings—as mentioned, a Hague Convention petitioner's absence from the venue state is common to such proceedings. *See Walsh*, 221 F.3d at 216.

The district court reasoned that Mr. Paris's "past conduct shows a willingness to frustrate the resolution of the merits of claims by flight if he senses that the rulings will not go his way." Yet Mr. Paris is already in France—he is not capable of "frustrat[ing]" the proceedings "by flight." In the event he disregards future orders by the district court, the court will have a variety of less severe measures at its disposal to manage its proceedings and sanction Mr. Paris, if necessary.

But on the current record, concerns over the court's efficient operation do not merit disentitlement.

Ms. Brown asserts that Mr. Paris's "fugitive status" places him "entirely beyond judicial control, thus creating a situation severely prejudicial" to her. Yet beyond predicting that Mr. Paris will ignore adverse decisions by the district court, she fails to substantiate this point. Nor can we foresee much, if any, prejudice to Ms. Brown should her prediction prove true because, again, she currently has custody of both children. *Cf. Degen*, 517 U.S. at 825. Next, Ms. Brown contends this case is an "extraneous" matter, diverting courts' "attention from the merits of the parties' custody battle in Oregon state courts." She is mistaken. This is not the sort of "extraneous" matter that courts hold to support dismissal. Far from an extradition proceeding undertaken by government officials for the purpose of recapturing the fugitive, *Terabelian*, 105 F.4th at 1217, Mr. Paris initiated this case himself under a treaty that seeks to facilitate the return of children wrongfully removed from their home country. *Nisbet*, 124 F.4th at 583. His petition has little, if anything, to do with his alleged fugitive status. That the petition and the parties' custody dispute in Oregon involve an overlapping corpus of facts does not render the former "extraneous" for fugitive-disentitlement purposes.

### 3. Dignity

The indignity visited upon the judicial system by Mr. Paris cannot support disentitlement either. This factor, together with deterrence (discussed below), are undoubtedly "substantial" interests. *Degen*, 517 U.S. at 828. But as the district court recognized, the U.S. Supreme Court has made clear that "disentitlement is too blunt an instrument for advancing them" on their own. *Id.* The court thus did "not

rely upon" the interest in judicial dignity "in reaching its
determination," though, it nonetheless deemed the factor
"implicated in the present case." Under the circumstances
presented, we conclude that it does not support
disentitlement either.

An affront to the court's dignity supports disentitlement
where the fugitive flouts the judicial authority of the court
contemplating disentitlement. *See Ortega-Rodriguez*, 507
U.S. at 245–46; *Mastro*, 764 F.3d at 1096. At first blush it
might seem odd that a fugitive's contempt for one court is
insufficient for another to apply the doctrine, but the
Supreme Court has made this point crystal clear and
explained its thinking. In *Ortega-Rodriguez*, the Court
concluded that an appellate court could not disentitle a
defendant based on his "contemptuous disrespect" directed
at a trial court before initiating appeal. 507 U.S. at 245–46.
The Court reasoned that only the court whose authority the
fugitive disrespected has the power "to defend its own
dignity, by sanctioning an act of defiance that occurred
solely within its domain." *Id.* at 246.

We similarly affirmed in *Mastro* that, under the facts
presented, "disregard for the authority of a different court
[did] not constitute a 'necessity' capable of 'justifying the
rule of disentitlement'" 764 F.3d at 1096–97 (district court
erred in holding that dignity interests supported dismissal
where defendant flouted authority of criminal court but not
the bankruptcy court whose order was on appeal (alterations
omitted)). Our sister circuits likewise hold that if the court
applying the disentitlement remedy is not the one whose
authority the fugitive flouted, the court's interest in judicial
dignity is usually insufficient to justify such a severe
sanction. *See United States v. Anagnos*, 853 F.2d 1, 2 (1st
Cir. 1988); *Lazaridis v. Wehmer*, 288 F. App'x 800, 803 (3d

Cir. 2008); *March v. Levine*, 249 F.3d 462, 470 (6th Cir. 2001).

This limitation applies here. Mr. Paris never defied the district court, which is the court that ultimately disentitled him of his right to petition under the Hague Convention. Instead, he disrespected and disregarded the Oregon state court by violating its restraining order and refusing to address the bench warrant it issued. While we in no way condone Mr. Paris's behavior, precedent compels the conclusion that disentitlement cannot rest on a general interest in respect for judicial dignity. *Ortega-Rodriguez*, 507 U.S. at 246; *Mastro*, 764 F.3d at 1096. That rings especially true here, since the Oregon Court of Appeals, which heard Mr. Paris's appeal of the Oregon state court's orders, declined to apply disentitlement.

### 4. Deterrence

As just explained, the court's interest in deterring escape is inadequate by itself to justify disentitlement. *Degen*, 517 U.S. at 828. And as with the "dignity" factor, the district court regarded the "deterrence" factor "implicated" in this case but did not predicate its dismissal order on it.

In any event, the court's interest in deterrence here is weak to nonexistent. This factor aims to discourage fugitives from evading the "reach of the law," as the "prospect of disentitlement provides a strong incentive to maintain contact" with the relevant authorities. *Antonio-Martinez*, 317 F.3d at 1092–93. Like the "dignity" factor, a court's interest in deterring flight is at its peak where the fugitive has evaded the authority of the court considering disentitlement. *See Ortega-Rodriguez*, 507 U.S. at 247 ("Once jurisdiction has vested in the appellate court, . . . then any deterrent to escape must flow from appellate

consequences, and dismissal may be an appropriate sanction by which to deter. Until that time, however, the district court is quite capable of defending its own jurisdiction."). Here, Mr. Paris *is* "maintain[ing] contact" with the relevant authorities, and, again, there is no evidence that he has offended *the district court's* authority. Rather, Ms. Brown argues only that he violated and ignored orders by the Oregon state court.

Other courts suggest the deterrence factor seeks to discourage "flight from criminal prosecution" by not only the defendant, but "others," too. *Degen*, 517 U.S. at 828; *see also Terabelian*, 105 F.4th at 1217 (holding that deterrence favored dismissal of direct criminal appeal by fugitive who evaded the government for six months while her appeal sat pending because, among other things, disentitlement would "deter similar behavior by future defendants").

But this consideration does not help Ms. Brown. While we acknowledge that affirming dismissal here might have some slight value in discouraging would-be transgressors from violating restraining orders or ignoring bench warrants in the future, this factor alone is insufficient to support dismissal. *Degen*, 517 U.S. at 828. Moreover, the only binding case we identified relying on a broad interest in general deterrence, rather than an interest in deterring the specific litigant at bar, arose from a direct criminal appeal. *Terabelian*, 105 F.4th at 1217; *see also United States v. Awadalla*, 357 F.3d 243, 246–47 (2d Cir. 2004) (dismissing criminal appeal in part to "deter similarly situated parties from absconding"). This case, by contrast, is a civil matter, where fugitive-disentitlement doctrine "should be narrowly applied." *Terabelian*, 105 F.4th at 1217 (quoting *Mastro*, 764 F.3d at 1096).

### 5.  Abandonment

Next is the issue of abandonment.  This prong is based on the view that a fugitive should not be permitted to "'call upon the resources of the [c]ourt' whose very authority he is flouting." *Mastro*, 764 F.3d at 1095 (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (per curiam)).  The principle approximates a theory of "abandonment or waiver." *Id.*; *see Parretti v. United States*, 143 F.3d 508, 511 (9th Cir. 1998) (en banc) ("By fleeing the jurisdiction of the United States" while his appeal was pending, "Parretti forfeited his right to appellate review under the fugitive disentitlement doctrine.").

This factor is of little importance here.  Again, Mr. Paris seeks to invoke the power of the federal courts, not the Oregon state courts whose authority he flouted.  Nor did he initiate this action until after he returned to France.  Unlike a criminal defendant who flees the country during the pendency of his appeal, *see, e.g.*, *Parretti*, 143 F.3d at 511, Mr. Paris cannot be said to have abandoned or waived his right to seek relief under the Hague Convention—relief he did not seek until after departing from Oregon.

### 6.  Other Considerations

In evaluating whether the traditional justifications necessitate disentitlement, the Supreme Court has also considered the rights that the defendant seeks to vindicate.  Noting the doctrine's severity, the *Degen* Court observed that the defendant there had a "right" to "defend his property" against forfeiture—a "corollary to the plaintiff's right to sue."  517 U.S. at 828 (citing *McVeigh v. United States*, 78 U.S. 259, 267 (1870)).

Our sister circuits have likewise considered, in this very
context, the rights at stake when assessing the propriety of
disentitlement. The First Circuit's decision in *Walsh v.
Walsh* involved an Irish petitioner who sought his children's
return from Massachusetts under the Hague Convention,
despite an outstanding arrest warrant there. 221 F.3d at 208–
09. Affirming the district court's order rejecting
disentitlement, the court stated that "applying the fugitive
disentitlement doctrine would impose too severe a sanction
in a case involving parental rights." *Id.* at 216. The court
continued: "Parenthood is one of the greatest joys and
privileges of life, and, under the Constitution, parents have a
fundamental interest in their relationships with their
children." *Id.* (citing *Troxel v. Granville*, 530 U.S. 57 (2000)
(plurality)). Barring "a parent who has lost a child from even
arguing that the child was wrongfully removed to another
country," the court observed, was simply "too harsh" on the
facts presented. *Id.* The Sixth Circuit reached the same
conclusion when it held that, considering the "fundamental
rights at issue" in a matter arising under the Hague
Convention, "disentitlement will generally be too harsh a
sanction." *March*, 249 F.3d at 470.

We agree that the parental rights at stake in cases brought
under the Hague Convention, as well as the treaty's unique
and important goals and purposes, counsel caution before a
court extinguishes a fugitive's right to seek the return of his
or her children.[5] This factor, too, undermines the district
court's decision.

---

[5] We decline to address Mr. Paris's contention that fugitive
disentitlement is wholesale "inapplicable" to the Hague Convention. As
amicus curiae aptly explained at oral argument, this case can be decided
on narrower grounds.

\* \* \*

All told, the district court abused its discretion by
dismissing Mr. Paris's petition based on the fugitive-
disentitlement doctrine. *See Mastro*, 764 F.3d at 1096–97
(district court abused discretion by committing an "error of
law" when it applied the fugitive-disentitlement doctrine
contrary to *Degen*). Perhaps "[t]here would be a measure of
rough justice" in requiring Mr. Paris to "take the bitter with
the sweet," such that he must "participate" in judicial
proceedings "for all purposes or none." *Degen*, 517 U.S. at
829. But like in *Degen*, "the justice would be too rough," as
"[t]here was no necessity to justify the rule of
disentitlement."[6] *Id.* Such justice would be "particularly
rough" in this case, given that "parental rights are at stake."
*Walsh*, 221 F.3d at 216.

The district court's reliance on out-of-circuit authorities
does not merit a different outcome. Neither the Virginia
Supreme Court's decision in *Sasson* nor the Eleventh
Circuit's decision in *Pesin* can countermand binding
precedents like *Degen*, *Ortega-Rodriguez*, *Mastro*, and
*Terabelian*, which establish the framework governing
assertions of fugitive disentitlement. The facts in *Sasson*,
moreover, presented a much stronger case for applying the
doctrine than the facts here. Most importantly, the parent
barred from appealing the denial of his Hague Petition
remained abroad with his child, thus "clearly interfer[ing]
with [the other parent's] parental rights." 667 S.E.2d at 564.
The disentitled parent had also repeatedly defied "the same
judicial system" that ordered disentitlement—namely, the

---

[6] For the same reason, Ms. Brown's renewed motion to dismiss Mr.
Paris's appeal in this Court under the fugitive-disentitlement doctrine is
denied.

28                        PARIS V. BROWN

Virginia state courts. *See id.* at 560. Both facts were
likewise present in *Pesin*. *See* 244 F.3d at 1253. Precedent
renders both facts significant, *see Degen*, 517 U.S. at 825;
*Ortega-Rodriguez*, 507 U.S. at 245–46; *Mastro*, 764 F.3d at
1096 & n.5, and yet neither exist in this case.

## CONCLUSION

For the reasons stated, we reverse the district court's
order dismissing Mr. Paris's petition under the Hague
Convention. We remand this matter to the district court to
adjudicate Mr. Paris's petition on the merits.[7]

**REVERSED and REMANDED**.[8]

---

[7] Mr. Paris's request that we "[d]irectly resolve" his Hague Convention
petition is denied. So too are his similar requests that we "make findings
of fact" or "order relief without remand." We appreciate that Mr. Paris
wishes to expedite the process given his separation from his children; but
we know of no authority granting this Court jurisdiction to resolve his
petition in the first instance, and Mr. Paris has provided us none. We
express no opinion on the merits of Mr. Paris's petition.

[8] Each side shall bear its own costs on appeal.