Katelyn D. Skinner, OSB No. 105055
Email: kds@buckley-law.com
Katrina Seipel, OSB No. 164793
Email: kas@buckley-law.com
Buckley Law, P.C.
5300 Meadows Road, Suite 200
Lake Oswego, OR  97035
Telephone:  503-620-8900
Fax:  503-620-4878
Of Attorneys for Respondent Heidi Brown

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

Medford Division

In re the Matter of J.P. and E.P.:

ARNAUD PARIS,

      Petitioner,

  and

HEIDI MARIE BROWN,

      Respondent.

Case No.: 1:24-cv-00648-AA

RESPONDENT'S TRIAL MEMORANDUM

The Convention on the Civil Aspects of International Child Abduction,
Done at the Hague on 25 Oct 1980
International Child Abduction Remedies Act, 22 USC § 9001 *et seq.*

Respondent Heidi Brown ("Mother"), by and through her attorneys, Katelyn D. Skinner, Katrina Seipel, and Buckley Law, PC, hereby submits the following Trial Memorandum in anticipation of the trial in the above-titled cause, scheduled to take place February 26-27, 2026, with additional reserved dates on March 2-3, 2026, before the Honorable Ann L. Aiken. Petitioner Arnaud Paris ("Father") filed a Petition for Return of Children Under the Hague Convention on the Civil Aspects of International Child Abduction and Request for Show Cause Order ("Petition

for Return") on April 16, 2024. As elaborated herein, Father's Petition is without merit and should be dismissed.

## STATEMENT OF RELEVANT FACTS

Mother and Father are the parents of two minor children: J.P. and E.P., both age 11. This action is not the first between these parties brought in this Court under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Abduction Convention") regarding these children. Father filed his first Petition under the Hague Abduction Convention on October 20, 2022, ("First Hague Petition") at Case No. 1:22-cv-01593-MC. That prior action initiated by Father after Mother brought the children to the United States on July 29, 2022, following an agreement between the parties made in France for the children to spend the 2022-2023 school year in Oregon, but Father later reneging on the agreement and filing for their return to France. Trial in that matter was held on December 5-7, 2022, before the Honorable Judge Michael McShane and at the conclusion of that trial, this Court ruled that, at the time of the alleged wrongful removal on July 29, 2022, France was the children's habitual residence.  However, the Court did not order their return to France finding that there had been no wrongful removal because Father had consented to the children coming to and residing in the United States. This Court further stated during the oral ruling in December 2022 that "the children are certainly creating a habitual residence in the United States without any great impediment."

Prior to Father having filed the First Hague Petition on October 22, 2022, Mother filed a Petition for Dissolution of Domestic Partnership and Custody, Parenting Time, and Child Support ("custody action") on October 7, 2022, in the Jackson County Circuit Court for the State of Oregon, Case No. 22DR17285, contemporaneously with a Motion for Temporary Order of Restraint in the same matter. On October 11, 2022, Honorable Judge David J. Orr of the Jackson County Circuit Court signed a Temporary Order of Restraint ("TPOR"), which provided, in part, that both parties were prohibited from leaving the state of Oregon with J.P. or E.P. without the written permission

of the other party or the permission of the court. The TPOR was entered on the record the following day, October 12, 2022. After Father filed the First Hague Petition, the Oregon custody action was held in abatement beginning on November 30, 2022, pending the outcome of the federal court proceedings. Following the dismissal of the First Hague Petition on December 7, 2022, a Notice of Removal from Abatement Status was filed on December 8, 2022, and the TPOR was fully enforceable from that point forward. It is also worth noting that Father obtained a judgment from the courts in France, dated April 21, 2023, which awarded both parties with joint legal custody, and Father made several attempts to register that foreign judgment in Oregon state courts, but each attempt failed.[1]

   The children continued residing in Ashland, Oregon, attending the local school, while litigation continued in the Oregon custody action, which also addressed the custody, parenting time, and child support for the children subject to this action. As the Oregon state action continued, Father remained in the United States and the parties exercised equal parenting time with a week on, week off schedule pursuant to the TPOR. However, on July 22, 2023, Father abducted the children from the United States and removed them to France without permission of Mother or the Jackson County Circuit Court and thereafter refused to return them to Mother in Oregon, only allowing Mother to have physical parenting time in France. Despite Father's wrongful removal of the children, the Oregon custody action continued forward.

   On December 28, 2023, Honorable Judge David J. Orr of Jackson County Circuit Court signed and entered the Limited Judgment for Custody, Parenting Time, and Child Support; and Money Awards ("Limited Judgment"). The Limited Judgment found (i) that Oregon has subject matter jurisdiction pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act ("UCCJEA"), specifically under the provisions of ORS 109.741(1)(b), on the issues regarding the

---

[1] Father filed petitions to register the foreign France judgment in Jackson County Case Nos. 23DR08269, 25DR01689, and 25DR01693; and Multnomah County Case No. 23DR16534. All petitions were denied. Father has appeals currently pending in Jackson County Case Nos. 25DR01689 and 25DR01693.

custody, parenting time, and child support for J.P. and E.P., and (ii) that Father violated the TPOR when he removed the children to France without obtaining the required permission. Therein, the Limited Judgment awarded Mother with sole legal custody of J.P. and E.P. and further awarded Father limited contact with the children, comprised of weekly telephone calls.

Even though the Jackson County Circuit Court has awarded Mother sole legal custody and sole physical parenting time with J.P. and E.P., Father continued his refusal to comply, despite having subjected himself to the personal jurisdiction of the Oregon state court. In order for Mother to see her children after their abduction to France in July 2023, Mother was forced by Father to travel to France to exercise any parenting time with the children. In April 2024, Mother was in France on one such trip to spend time with her daughters, but instead of returning home to the United States alone as she had previously done, on April 13, 2024, Mother exercised her custodial rights awarded to her by the proper court in Oregon, and brought the children back to their habitual residence in the United States. In the week following Mother and the children's return to Oregon, Mother's custody determination was fully incorporated in the General Judgment of Default; and Money Award ("General Judgment"), signed by Honorable David J. Orr on April 17, 2024, and entered on April 24, 2024. To date, the General Judgment remains fully enforceable as to these parties and their children.

<u>**APPLICABLE LAW AND ARGUMENT**</u>

I.    **Petitioner's *prima facie* case**

The Hague Abduction Convention seeks "to secure the prompt return of children wrongfully removed or retained in any Contracting State." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010). As such, the Convention applies only when there has been a wrongful removal or retention of a child. Under Article 3 of the Convention, a removal or retention is considered wrongful when it is in breach of a parent's rights of custody, actually being exercised, under the law of the state the child was habitually resident in immediately prior to their removal or retention. The burden to

establish a wrongful removal or retention falls on the petitioner and must be proved by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A). If the petitioner meets their burden, the burden then shifts to the respondent to prove an affirmative defense.

In analyzing a petitioner's *prima facie* case, the Court must make four determinations, in order: (A) First, the Court must determine when the removal or retention took place; (B) Second, the Court must determine the child's habitual residence immediately prior to such removal or retention; (C) Third, the Court must determine whether the removal or retention breached the petitioner's custody rights according to the law of the child's habitual residence; (D) Last, the Court must determine whether the petitioner was actually exercising his custody rights at the time of removal or retention. *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 270-71 (3d Cir. 2007).

### A.    When the removal or retention took place

Mother stipulates that she left France with J.P. and E.P and returned to Oregon on April 13, 2024.

### B.    The child's habitual residence immediately prior to the removal

In determining a child's habitual residence, the Court must consider the totality of the circumstances specific to the case at hand, not categorical requirements such as an actual agreement between the parents. *Monasky v. Taglieri*, 140 S. Ct. 719, 728 (2020). A child's residence is "habitual" only when the residence is more than transitory. *Id.* at 726. Other relevant factors for courts to consider include the place the child considers home, the length of time the child has resided in the location claimed to be the habitual residence, and the intentions of the child's caregivers surrounding the family's residence. *Rodriguez v. Molina*, 608 F. Supp. 3d 791, 799 (S.D. Iowa 2022). Additionally, the child's immigration status and language proficiency in the claimed habitual residence are also relevant factors to consider. *Monasky*, 589 U.S. at 78. Of note, "[h]abitual residence is intended to be a description of a factual state of affairs, and a child *can* lose its habitual attachment to a place even without a parent's consent." *Mozes v. Mozes*, 239

F.3d 1067, 1081 (9th Cir. 2001). If, upon considering all relevant factors and circumstances, the Court concludes that the country from which the child was removed was not the country of the child's habitual residence, the Convention does not apply, and the Petition must be dismissed. *Id.* at 1081.

J.P. and E.P. were not habitual residents of France on April 13, 2024. In fact, Mother will present evidence at trial of the children's habitual life in the United States. The court in their ruling on the First Hague Petition determined France was the children's habitual residence as of July 29, 2022. The children resided in the United States from July 29, 2022, forward, and from that point began establishing their new habitual residence in the United States. The children have attended school in Ashland, Oregon, participated in various sports and activities, and established new personal relationships, entwining their lives into the local community in the Ashland, Oregon area. The children's presence in France from July 22, 2023 to April 13, 2024, was a temporary absence and was without the consent of Mother. Moreover, as to be elaborated on at trial, only one of the children's parents may now determine where the children reside, that parent being Mother due to ther lawful grant of sole custody.

### C.    Whether the removal breached the petitioner's custody rights according to the law of the children's habitual residence

The Court looks to the Convention to determine whether a petitioner has a "right of custody" and to laws of the country of habitual residence to determine the extent of Petitioner's rights. *Abbott*, 560 U.S., at 1. Under the Hague Abduction Convention, "rights of custody" include "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention Article. 5(a). When Mother returned to the United States with J.P. and E.P. on April 13, 2024, Father did not have rights of custody to the children pursuant to Limited Judgment entered by the Jackson County Circuit Court on December 28, 2023, because the United States had become the children's new habitual residence as of July 29, 2022, and Mother

was granted sole legal custody of the children by a proper court in the United States, and that award of sole legal custody gave only Mother the right to determine where the children may reside. The Court will receive copies of both the Limited Judgment and General Judgment indicating as much at trial. Father will argue that he had rights of custody pursuant to the judgment he obtained in France, but since France was no longer the habitual residence of the children, analysis of Father's rights under the laws of France are improper for this court's consideration.

Because Father has no custody rights to J.P. or E.P., he has no "right to determine the child's place of residence", their removal from France by Mother was not wrongful, and Father's Petition must be dismissed.

### D.    Whether the Petitioner was actually exercising his custody rights at the time of removal

Should the Court find that Father did indeed have custody rights to J.P. and E.P., Mother concedes that Father was then exercising said rights on April 13, 2024.

## II.    Respondent's affirmative defense: Article 13(b) – Grave Risk Exception

In the event that the court finds France was the children's habitual residence as of the time of removal, and that the removal was wrongful and in breach of Father's rights of custody, this court should refuse to return the children to France because of Mother's two asserted affirmative defenses.

Under Article 13(b) of the Hague Convention, a court may refuse to return a child to his habitual residence if it determines there is a grave risk that the child's return would expose him to physical or psychological harm, or otherwise place him in an intolerable situation. The Perez-Vera Report[2] contains a considerable discussion of the history and purpose of the grave risk exception. Perez-Vera explains that "the interest of the child in not being removed from its habitual residence

---

[2] https://assets.hcch.net/docs/a5fb103c-2ceb-4d17-87e3-a7528a0d368c.pdf

… gives way before the primary interest of any person in not being exposed to physical or psychological danger or being placed in an intolerable situation." Para. 29. Courts of the United States have denied returns in Hague Convention cases on countless occasions based on the grave risk exception. In *Baran v. Beaty*, the Eleventh Circuit confirmed that the district court was not required to find that the child had previously been physically or psychologically harmed; it was required to find only that returning him would expose the child to such harm. 526 F.3d 1340 (11th Cir. 2008).

Mother will present evidence demonstrating that returning J.P. and E.P. to France would place them back into an environment characterized by coercion, intimidation, and psychological instability. The evidence at trial will show that Father has repeatedly used threats, manipulation, and controlling behavior toward Mother, including conduct designed to isolate, intimidate, and exert power through both interpersonal and legal means. Mother will present expert testimony from Dr. Landon Poppleton who will provide a framework for understanding how coercive control, a recognized form of intimate partner violence, may create conditions that place children at risk even in the absence of overt physical violence. The court will hear how violence between intimate partners encompass not only physical abuse, but also psychological aggression, economic control, intimidation, and isolating behaviors that subordinate the will of another person and destabilize the family system. These dynamics, when present, can directly impact children through exposure, fear, and disruption to their sense of safety and stability, and returning the children to France will have exactly that impact.

## III.    Respondent's affirmative defense: Article 13 – Mature Child Objection

Pursuant to Article 13 of the Hague Abduction Convention, a court may refuse to return a child to their habitual residence if it finds that (1) the child objects to being returned and (2) has attained an age and degree of maturity at which it is appropriate to take account of the child's views. Having been applied in countless cases across the country, this exception is

rooted in the autonomy of the child. *Rodriguez v. Yanez*, 817 F.3d 466, 475 (5th Cir. 2016). "[C]hildren are not inanimate objects—they are people with agency of their own." *Id.* This exception thus allows a sufficiently mature child to interpret his own interests. *Id.* "[T]he drafters of the Convention simply deemed it inappropriate to return a mature child "against its will"—whatever the reason for the child's objection. In such cases, the child's autonomy trumps the Convention's interest in preventing wrongful removals." *Id.* at 475-76.

There is no bright line rule as to the age a child must reach in order for his views to be considered in a Hague Convention case. *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007). "[A]n eight-year-old child is not necessarily too young for his or her views on return to be considered." *Escobar v. Flores*, 183 Cal. App. 4th 737, 751 (2010). In *Escobar*, the trial court's refusal to return an 8-year-old to Chile when the child was held to be mature enough by simply communicating his objection to being returned was affirmed. *Id.* at 752. *See also Anderson v. Acree*, 250 F. Supp. 2d 876 (S.D. Ohio 2002) (holding an eight-year-old girl to be of sufficient age and maturity to permit the court to consider her views); *Raijmakers-Eghaghe v. Haro*, 131 F. Supp. 2d 953 (E.D. Mich. 2001) (rejecting the argument that courts cannot as a matter of law take into account the views of an eight-year-old child).

Similarly, there are no established objective criteria courts must consider when assessing maturity under this exception. In *Simcox v. Simcox*, the Court considered the child being "preoccupied, disinterested and detached; in short, a typical eight-year-old boy who strongly desired to be anywhere but in a Judge's chambers answering questions." 511 F.3d 594, 604 (6th Cir. 2007). In *Dalsgaard v. Montoya*, No. 8:11-CV-2204-T-23TGW, 2011 WL 5037223 (M.D. Fla. Oct. 24, 2011), the Court considered the child having very little to say to anyone about her parents' dispute and her preferences. She expressed her preference in head nods and one-word sentences only. *Id.* In *Carnelli v. Paz*, the child was found to be mature when he expressed well-reasoned preferences, contrasting his happy mood in his current

school and with his current friends against his prior residence. No. CIV. 10-3083 SRC, 2011 WL 1983360 (D.N.J. May 19, 2011). And, in *In re D.A.*, the Court held the child to be mature when he was poised, comfortable with adults, engaged with the Court, was perceptive, bright, forthright, rational, friendly, credible, and serious about his preferences. No. 14-CV-5836 PKC, 2015 WL 2344079 (E.D.N.Y. May 14, 2015).

The evidence at trial will show that the children in this matter, being eleven years old, are sufficiently mature enough for the Court to consider their views and objections to being returned to France. Both children demonstrated the age-appropriate cognitive and emotional functioning contemplated by Article 13. They were interviewed individually, confirmed their understanding of the interviewer's role and limits of confidentiality, demonstrated the ability to distinguish truth from fantasy, and presented as articulate, thoughtful, and free from observable cognitive or emotional impairment. As Dr. Poppleton will testify, there have been no observed signs of developmental delay and their reports and presentation are consistent with what one would expect from children of their age and circumstances. Importantly, their objections to returning to France were not vague, impulsive, or the product of superficial preference. Rather, both children articulate specific, reasoned bases for wishing to remain in Ashland, and for objecting to returning to France, including: differences in living space and privacy, academic concerns about falling behind in France, stronger educational support in Oregon, established strong friendships, community ties, and meaningful extracurricular involvement in activities such as aerial arts that were unavailable to them in France. They also expressed a desire to maintain relationships with both parents and spoke respectfully about each, undermining any suggestion that their views are the product of coaching or wholesale rejection of their father.

Their reasoning mirrors the types of well-considered preferences courts have credited in cases such as *Carnelli* and *In re D.A.*, contrasting educational environments, peer

relationships, emotional wellbeing, and stability. The children's objections are grounded in concrete developmental, academic, and social considerations, not transient dissatisfaction. Under Article 13, where children of sufficient age articulate rational, experience-based objections to return, their autonomy warrants serious weight. The evidence demonstrates that J.P. and E.P. have attained an age and degree of maturity at which it is appropriate for this Court to take account of their views and to decline return on that basis.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court must refuse to return J.P. and E.P. to France and immediately dismiss Father's Petition for Return. Petitioner will fail to meet his burden to establish a wrongful removal under the Convention. The evidence at trial will show that the children's habitual residence had shifted to the United States after July 29, 2022, and that Mother acted within her lawful custodial rights in returning the children to Oregon. Even if the Court were to conclude that Petitioner establishes a prima facie case, Respondent will demonstrate that multiple independent exceptions under the Convention apply and preclude return.

DATED: February 18, 2026

Katelyn D. Skinner, OSB No. 105055
Email: kds@buckley-law.com
Katrina Seipel, OSB No. 164793
Email: kas@buckley-law.com
Buckley Law, PC
5300 Meadows Road, Ste. 200
Lake Oswego, OR 97035
Tel: 503-620-8900
Of Attorneys for Respondent

<u>CERTIFICATE OF SERVICE</u>

I certify that this document was served by electronic service  through the CM/ECF system and by e-mail, upon Christopher J. Riley at christopher.riley@millernash.com, Incainti Sofia McDonald at sofia.mcdonald@millernash.com, and Jakini Auset S. Ingram at Jakini.ingram@millernash.com on this 18th day of February, 2026.

Katelyn D. Skinner, OSB No. 105055
Of Attorneys for Respondent
kds@buckley-law.com